```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF KENTUCKY
 2                      LEXINGTON DIVISION

 3  MODERN HOLDINGS, LLC,          . Docket No. CV 13-405
        AND GAY BOWEN,             .
 4                                 .
            Plaintiffs,            . Lexington, Kentucky
 5                                 . December 6, 2013
            v.                     . 1:30 p.m.
 6                                 .
    CORNING, INC.,                 . TRO Hearing
 7                                 .
    ROYAL PHILIPS ELECTRONICS,     .
 8  N.V. KONINKLIJKE AND           .
    PHILIPS ELECTRONICS NORTH      .
 9  AMERICA CORPORATION,           .
10      Defendants.                .
    . . . . . . . . . . . . . . . .

11
                   TRANSCRIPT OF PROCEEDINGS
12      BEFORE THE HONORABLE GREGORY F. VAN TATENHOVE
                   UNITED STATES DISTRICT JUDGE
13
    APPEARANCES:
14
    For the Plaintiffs:   Mr. Richard A. Getty and Ms.
15                           Jessica Katherine Winters
                           The Getty Law Group
16                         250 West Main Street
                           1900 Lexington Financial Center
17                         Lexington, KY 40507

18  For the Defendant:    Messrs. M. Stephen Pitt, George
    Corning, Inc.           L. Seay, Jr., and George
19                           J. Miller
                           Wyatt, Tarrant & Combs LLP -
20                           Lexington
                           250 W. Main St.
21                         Suite 1600
                           Lexington, KY 40507
22
    Royal Philips         Mr. David Andrew Owen
23                         Bingham Greenebaum Doll, LLP
                           300 W. Vine Street, Suite 1100
24                         Lexington, KY 40507

25
```

```
1  APPEARANCES (CONTINUED):

2  Court Reporter:        K. Ann Banta, RPR, CRR
                          101 Barr
3                         Lexington, KY 40507
                          (502) 545-1090
4
   Proceedings recorded by mechanical stenography,
5  transcript produced by computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    Friday afternoon session,

 2                    December 6, 2013, 1:30 p.m.

 3                         -  -  -

 4          THE COURT:  Thank you, sir.  Madam (sic)

 5  Clerk, would you call the pending case, please.

 6          THE CLERK:  Yes, Your Honor, Lexington civil

 7  action no. 13-405, Modern Holdings and others v.

 8  Corning, Inc., and others, called for hearing on the

 9  motion for TRO.

10          THE COURT:  Thank you.  Counsel, would you

11  state your appearances, please.

12          MR. GETTY:  Good afternoon, Your Honor,

13  Richard A. Getty and Jessica K. Winters on behalf of

14  plaintiffs.

15          THE COURT:  Mr. Getty, Miss Winters, good

16  afternoon.

17          MR. PITT:  Good afternoon, Your Honor, I am

18  Steve Pitt here on behalf of the defendant Corning,

19  Inc., and with me are my partners George Seay and

20  George Miller.

21          THE COURT:  Mr. Seay, Mr. Miller, Mr. Pitt,

22  nice to have you here as well, sir.

23          MR. OWEN:  Judge, David Owen here on behalf

24  of the Philips defendants.

25          They have been listed as Royal Philip
```

1  Electronics, N.V. Koninklijke in a pleading, so it is

2  a couple of different entities.

3        THE COURT:  Okay, thank you for appearing,

4  Mr. Owen.

5        This matter is called on my docket.  The

6  plaintiff has filed a motion for injunctive relief or

7  temporary restraining order and preliminary injunction

8  initially in this case.

9        In a rather remarkable turn of events I am

10  the fourth judge to be on this case within days of a

11  complaint being filed, and so it is now, having worked

12  hard to try to find some reason to recuse and not

13  finding any, I think I will be the judge presiding

14  over this particular -- particular matter.

15        The original TRO and preliminary injunction

16  motion was not ruled on by my predecessors.

17        There has now been an amended request for

18  emergency relief.

19        I understand the plaintiffs' arguments

20  completely, and so I am going to turn to you first,

21  Mr. Pitt, and I want to actually -- you have not had

22  the chance to respond representing the defense of

23  Corning.

24        And I am pleased to hear from any of the

25  other attorneys with the other defendants, but I

1 really want to direct some questions and also hear

2 from you first, if I might.

3        Let me just make sure that I understand kind

4 of where this is, and I want to say a word about the

5 procedural posture of this case.

6        I really don't view this as a falling under

7 the rubric of a temporary restraining order or

8 preliminary injunction.

9        If -- I think the parties would agree that if

10 we were in a season of discovery, this really is more

11 of a discovery or more of a dispute about access to

12 property perhaps under Rule 34 or the request for a

13 protective order in order to try to gain these

14 samples.

15        And I'll turn to you in a moment, Mr. Getty,

16 please, thank you.

17        And so that's really how I'm thinking about

18 it, and so I am glad to note that's where the

19 plaintiffs are.

20        I am not thinking about this in the framework

21 of our typical analysis and injunctive relief.

22        I am thinking about this more as a discovery

23 dispute, would commend the defense for kind of

24 recognizing and cooperating as it relates initially in

25 terms of some taking of some soil samples.

1          The relief being sought here is compensatory

2  damages, punitive damages and some relief related to

3  the medical -- alleged medical problems of what would

4  be perhaps certified as a class at some point in the

5  future.

6          The relief being sought here is not the

7  preservation of a smokestack or a mixing room, but

8  those issues, factually, are predicate to the

9  gathering of the samples.

10          Now, I understand yesterday there was some

11  sample gathering that took place, and as I understand

12  it the dispute now is over whether or not the

13  locations for the sample gathering that are

14  appropriate to be made available were entirely made

15  available, whether video footage and photographs

16  should be allowed, whether cell phones should be

17  allowed during the taking of the sampling and -- and

18  again, as I say, whether all the areas that need to be

19  sampled are -- are being made available.  Am I up to

20  speed now on this case?

21          MR. PITT:  I think you are, Your Honor, with

22  one exception.

23          I don't believe there was actually any

24  sampling done yesterday.

25          THE COURT:  Okay.

1        MR. PITT:  I think this was more of a walk-
2 around to review the facility there to see what
3 sampling, when and where or where the plaintiffs
4 wanted to take samples.
5        THE COURT:  Okay.
6        MR. PITT:  And that was all that was
7 contemplated yesterday.
8        And Your Honor, it -- things are -- we are
9 catching them faster than we can string them here.
10        We did file a response that I think came in
11 about 1:05.  The court probably hasn't had an
12 opportunity to look at it.
13        I dictated it earlier this morning, got in my
14 car and drove to Lexington and my partners saw that it
15 got filed, so it's kind of like one step out of the
16 Dictaphone; but we do have an extra copy if the court
17 would like to look at it.
18        THE COURT:  Okay, I have sent my law clerk
19 for a copy, but if you have a copy --
20        MR. PITT:  We have an extra copy and we have
21 provided copies to the other parties, and I think they
22 have seen it before they got here anyway.
23        If I may provide a copy, or actually I have
24 got a couple here if anyone else would -- would need a
25 copy.

1        THE COURT:  Thank you.

2        MR. PITT:  I really don't, Your Honor, think

3  there is an emergency.

4        I don't -- I think this is a discovery

5  dispute that merely needs some massaging to get the

6  parties to where they should reasonably be.

7        THE COURT:  You concede that samples need to

8  be taken.

9        MR. PITT:  We concede that we are not sure

10  that they do need to be taken, but we think it's

11  been --

12        THE COURT:  You have already agreed to allow

13  it.

14        MR. PITT:  We have agreed to allow it.  I

15  think the plaintiffs are entitled to take them.

16        I do think there has been a substantial -- my

17  client, as the court knows by now, has not -- did not

18  own and operate this plant for a thirty-year period

19  from 1983 until now.  They still are not operating

20  it.

21        They are -- they bought the plant this year

22  with the idea of completely renovating, gutting it,

23  tearing down those smokestacks that the court has

24  mentioned and the mix house there and getting a lot of

25  that stuff off site and renovating the plant because

1 they plan to hire 100, 200 people there within a year

2 or so for some new manufacturing that will take place

3 there so --

4          THE COURT:  Okay.

5          MR. PITT:  -- that has been ongoing since

6 around October 1 for several weeks, the renovation

7 work on the building there.

8          THE COURT:  Is -- let me just interrupt you

9 for a moment.

10          Is there any work that would be considered

11 remedial in which the company is being required to

12 conduct because of a state agency, regulatory process

13 or a federal regulatory process?

14          MR. PITT:  No, Your Honor, not Corning.  Now,

15 there is substantial remediation work as I understand

16 it, and Mr. Owen can speak to that better than I on

17 behalf of Philips.

18          Philips has entered into an agreed order with

19 the state environmental cabinet back in 1992, and

20 there has been some supervision and interaction there

21 for many years.

22          And we understand there has been a lot of

23 sampling and testing, state approved, state supervised

24 testing and that there is remediation going on on the

25 part of the former 32-acre plant site that Corning did

1  not buy.

2          In other words, Corning, there were 32 acres,

3  Philips retained a substantial amount of the acreage

4  where there may have been some landfills, some former

5  surface impoundments and that sort of thing, some out

6  falls to remediate under the remedial action plan that

7  the state approved and we understand that to be

8  ongoing now.

9          There is no state required or other required

10  environmental remediation that Corning is going

11  through now.

12          This -- what Corning is doing in the building

13  is not environmental remediation, it is renovation

14  which includes cleaning the building.

15          You know, you are going to clean grease, you

16  are going to clean dirt, you are going to clean

17  residue that's been there for who knows how long.

18          THE COURT:  I suppose the plaintiff could say

19  toxic chemicals that could harm plaintiffs.

20          MR. PITT:  Of course there is no doubt about

21  it in just about any manufacturing facility toxic

22  chemicals are used, it's a question of how they are

23  handled and what the dose is and the amount of the

24  exposure.

25          And of course in our case here, let me say

1 there is, as Your Honor is aware, a companion case

2 that was filed by Mr. Getty on behalf of plaintiff

3 named Elbert Cox, I believe, in which Corning has not

4 been named.

5          Philips -- the Philips entities have been

6 named.

7          THE COURT:  I am not aware of that case.

8 What jurisdiction is that --

9          MR. PITT:  It's been -- I think it's been

10 assigned to Your Honor, if I am following the email

11 traffic.

12          Someone can correct me if I am wrong.  I

13 do not have the case no. on the copy of the complaint

14 I have got, but it is a --

15          THE COURT:  Was it filed at the same time?

16          MR. PITT:  I think so, the same day, Your

17 Honor.

18          MR. GETTY:  One number difference, one is 104

19 and 105 or 105 and 106.

20          MR. PITT:  That case is a purported class

21 action by Elbert Cox and other former employees of

22 Philips alleging that they were exposed over years of

23 employment at the plant by Philips to toxic

24 substances.

25          And, you know, while one could imagine that

1 Philips might raise defenses such as Workers'

2 Comp. and that sort of thing, that's for another day.

3 Corning's not in that case, and the case that

4 we are here on today is, as the court points out, a

5 property damage case in which one local plaintiff

6 purports to be a class representative for property

7 owners within a five-mile radius of the plant and

8 another plaintiff, a lady who lives in Florida who

9 moved to Florida from Danville in the 1980s, claims

10 that she was -- lived near the plant during the time

11 that Corning and Philips both ran it and that she is

12 -- she has multiple sclerosis as a part of -- as a

13 reason and is a class -- appropriate class

14 representative.

15 THE COURT:  But what have you agreed to?

16 There was an agreement here to allow something to

17 occur yesterday, what was that agreement?

18 MR. PITT:  We agreed, Your Honor -- we filed,

19 as the court knows, our response to the original TRO

20 motion on -- on Wednesday -- on Tuesday, I believe,

21 the 3rd.

22 The hearing, the scheduling hearing was set

23 by Judge Reeves for the next morning, the 4th.

24 And we didn't know if the TRO motion would be

25 taken up or not.  We didn't know if Judge Reeves would

1 recuse himself or not.

2          So we did file a response which we -- the

3 court would be able to review from the file in which

4 we have incorporated by reference today.

5          But then when we got to court on -- on

6 Wednesday morning and right before -- before the

7 hearing and after the hearing with Judge Reeves, the

8 parties consulted and we agreed on certain things.

9          Back the day before Thanksgiving, when the

10 lawsuit was filed and when the ex parte motion was

11 filed, we found out about it and Mr. Getty and

12 Mr. Miller were in contact, and that resulted in a --

13 in a November 27 letter, Wednesday a week ago, from

14 Mr. Getty to Mr. Miller setting out what they wanted

15 to do, what claimants wanted to do.

16          They said they would like the sample, both

17 smokestacks, the mix house inside and out including

18 the roof, areas in the lead production line in the

19 building, and then area -- those are the first three

20 items.

21          Items 4, 5 and 6 are item -- are on property

22 that Philips controls and would not involve Corning.

23          Item 7 mentions areas around the perimeter of

24 the mix house and the lead production line.

25          Item 8 mentions all -- any and all roof

1 drains.

2      I -- I can provide the copy -- the court with

3 a copy of that letter if necessary.

4      THE COURT:  Is it referenced in your

5 response?

6      MR. PITT:  It's referred to, it's not

7 attached because we didn't have time to --

8      THE COURT:  That's fine.

9      MR. PITT:  -- to get that in.

10      THE COURT:  You are free to tender it if you

11 choose, but I am not going to request it.

12      MR. PITT:  Okay, so what we agreed to is that

13 on Thursday, the -- the plaintiffs could send

14 representatives to walk around the plant, look around

15 in order to determine what sampling they needed to do

16 on these items in Mr. Getty's letter.

17      And we -- we had -- there -- Corning has --

18 is a big company and has risk management and other

19 liability and insurance requirements and that sort of

20 thing, so -- and security issues, they needed to know

21 who was going to be there, who they worked for and

22 that sort of thing and what -- what they were going to

23 do, and we were -- we exchanged some emails on that.

24      And then yesterday at 1:30, the plaintiffs'

25 representatives appeared there.

1          Everybody under normal protocol for Corning

2 has to go through a safety training about thirty

3 minutes long before they go in the building.

4          They did that, Mr. Seay who was there did

5 that.

6          Everybody under company policy has to leave

7 their cell phones and cameras at the -- at the guard

8 shack.

9          THE COURT:  Who has the authority to make an

10 exception to that policy?

11          MR. PITT:  Well, someone within the security

12 department at Corning, and had we known, as I stated

13 last night to Mr. Getty in another email that they

14 were going to show up and want to take pictures, we --

15 I don't know that we could have gotten it done by --

16 by yesterday or today, but it can be done.

17          And it will come to that shortly because we

18 are willing to work with them I think on every --

19 every issue that they have.

20          Mr. Seay had to give his phone up yesterday

21 as well, that's just protocol.

22          There -- the other issue -- other thing that

23 arose yesterday is that the plaintiffs indicated that

24 they wanted to bring in scissor lifts and a crane

25 maybe and other elevation devices in order to allow

1  their -- their representatives to get up into the

2  higher areas of the -- of the building there, and they

3  were told no, you can't do that because we have got

4  liability problems and OSHA problems with -- with your

5  bringing in that kind of equipment and, you know,

6  we'll get back to you on that.

7           And indeed we do, and we have come back to

8  them as I got back with counsel last night and said,

9  you know, if you will tell us what you are bringing in

10 and if you will supply Corning with an insurance

11 policy that would hold -- indemnify and hold harmless

12 Corning from any accidents or injuries that might --

13 your representatives, the samplers may have in the

14 building there we can work that out.

15          It may take two or three days, but we can

16 work that out; and we are willing to do that.

17          As of the week -- the day before

18 Thanksgiving, fortuitously because of the Thanksgiving

19 holiday weekend there, no work of any material nature

20 was done.

21          When everybody circled back on Monday after

22 Thanksgiving and in-house people at Corning were fully

23 engaged with the lawsuit being filed and we had

24 conference calls and that sort of thing as you might

25 imagine, we made the decision that, well, let's

1 cooperate with the plaintiffs, let's voluntarily stop

2 this work.

3         It's going to cost us but, you know, we can

4 live with that for a few days if we can get this

5 behind us and everybody get along and so --

6         THE COURT:  And when did the work stop?

7         MR. PITT:  The work -- the two chimneys had

8 already come down substantially.

9         There may be 4 or 5 feet of each one of them

10 still there at the base, but all the brick are there

11 in the -- either in containers or in piles.

12        That hasn't been moved.  It needs to be moved

13 so that our folks can get to the next stage.

14        But you know, we can live with two or three

15 days or even a week maybe before that has to happen

16 because that mix house needs to come down.

17        We -- so anyway, that -- we told them, get us

18 -- tell us what you want to bring in there

19 machinerywise and give us an insurance policy,

20 something to protect us, and we'll get that worked

21 out.

22        Last night, I got a telephone call from

23 Mr. Getty and which we -- Mr. Getty and I have known

24 each other for thirty or more years, worked on several

25 things, and I consider him a friend and we can talk

1 candidly with each other.

2        And we did, and he told me that he was going

3 to file this amended temporary restraining order.

4        And I told him, well, I am getting ready to

5 send you an email telling you how we can get all this

6 resolved, I think.

7        But you know, he said, well, I'll go ahead

8 and file it and maybe we can get it resolved.

9        So a little later on after I got some dates

10 straightened out with the client about when they

11 absolutely had to have any sampling finished by, then

12 I sent the email.

13        Mr. Getty and I then talked again at 11:20

14 last night, and in that conversation, I -- Mr. Getty

15 said we are not going to have the folks -- the

16 schedule had been for them to be there to do the

17 actual sampling of the brick and inside the building

18 at 8:00 this morning.

19        We were told that they would not be there at

20 8:00 this morning and that they would not be there

21 until after the court held a hearing on -- because of

22 the camera issue, they wanted to take photographs and

23 videos.

24        And we submit, Your Honor, that -- and I

25 think that Mr. Getty would concede this, that a

1 primary reason for the taking of videos and

2 photographs in the plant is not for this case, it's

3 for the Elbert Cox case which is the employee case

4 that only Philips is a party in.

5          But even then, we understand that they may

6 want to take those photographs and they may want to

7 take them before any further washing, changing in the

8 building is done, and we are willing to forebear on

9 that and we are willing to stop our washing.

10          Now, you know, concededly before this lawsuit

11 was filed there had been a substantial cleaning effort

12 going on in that building, so we can't represent that

13 before the lawsuit was filed that walls weren't

14 washed, floor wasn't washed and that sort of thing.

15          THE COURT:  Sure.

16          MR. PITT:  So that's -- that's where we are.

17 I was -- I then at 11:30 called my -- and awakened my

18 -- the in-house counsel at Corning which I am not sure

19 augurs well for my continuing to represent them in

20 this case.

21          But in any event told her the circumstances

22 and that we have -- we had -- Corning had two

23 environmental consultants from Weston Environmental in

24 New York down here just for the plaintiffs' testing,

25 and they had their -- they had Corning's environmental

1  -- the head of their environmental department flew

2  in.

3       And it was going -- it was Thursday night,

4  Mr. Getty said nobody's going to be there until after

5  we have a hearing.

6       We weren't even sure we were going to have a

7  hearing.  We knew the weather was going to be bad.

8       So we decided to send those folks back home,

9  and all the workers who have been working there for a

10  contractor named Bierlein were also sent home.

11       Some of those work -- live away from here,

12  some of them live in the central Kentucky area.

13            THE COURT:  Sure.

14            MR. PITT:  So we did not expect anything to

15  be done at the plant today.

16            THE COURT:  Today.

17            MR. PITT:  Today.  But we are willing and

18  everybody, you know, our environmental people have

19  gone back to New York.

20            THE COURT:  Sure.

21            MR. PITT:  But we are willing Monday,

22  Tuesday, Wednesday, whenever they want to come in,

23  give us a plan, tell us what you want to do, bring in

24  your cameras and what have you.

25            But you know, we want, and I think they are

1 agreeable to, a confidentiality order that we could
2 present to the court for the court's consideration
3 that would render any photographs and videos taken
4 confidential for the purposes of their sampling and
5 perhaps later on could be used, if necessary, in one
6 or both of the two cases.

7         But Corning is -- in renovating this plant
8 over there is concerned about competitors and that
9 sort of thing.

10        That -- we don't -- Corning does not want
11 pictures of the inside of that plant appearing on the
12 front page of The Advocate over in Danville or the
13 Herald-Leader or the Courier Journal because that's
14 not necessary and that's why we would like to have a
15 confidentiality agreement.

16        They claim they need the photographs for each
17 sample that is taken.

18        I am no expert in sampling, but I have --
19 going back into 1985, I have represented, been
20 involved in several big PCB class actions in multi-
21 plaintiff suits and Rubbertown suits in Louisville in
22 front of Judge Heyburn and worked with many sampling
23 companies, environmental companies and we have
24 contacted some even since this has arisen last night.

25        Nobody does that.  Nobody takes photographs

1  of their samples.

2          THE COURT:  What's the prejudice to you of

3  the photographs --

4          MR. PITT:  Nothing, Your Honor, I don't think

5  there is any prejudice, but this goes to the necessity

6  of it.

7          But if that -- but we do think we would

8  like -- and they are going to split -- I think they

9  have agreed to split photographs with us, whatever

10 they photograph we can have a copy of.

11         We have agreed that whatever they sample they

12 will split with us and Philips whenever that happens

13 within the plant.

14         THE COURT:  Let me see if I can summarize

15 kind of what you are willing to do going forward over

16 the next several days.

17         They asked for the ability to take photos and

18 video footage, and you said given the reasonable

19 request for protective order that would protect the

20 confidentiality of that information, you all would

21 certainly allow that to occur.

22         MR. PITT:  Yes.

23         THE COURT:  They have asked for cell phones

24 to be present despite -- I have a policy, none of you

25 have your cell phones, but I waive that all the time

1  for good cause.

2          They want to have cell phones brought in so

3  that if they find a circumstance and need to make a

4  call to a consultant perhaps who is not physically

5  present they can do it in realtime.

6          MR. PITT:  Correct.

7          THE COURT:  Would you allow that?

8          MR. PITT:  Your Honor, we -- it's against

9  corporate policy, and it's no further than Your Honor

10 to halfway to the end of the courtroom there for them

11 to walk out to the guard shack and get their cell

12 phone if they need it.

13         We would prefer to continue doing it that way

14 because cell phones have -- in this day and time have

15 cameras on them, and it's just -- it's corporate

16 policy.

17         I don't think it would be the end of the

18 world if they took one cell phone in there.

19         But I also don't think it would be the end of

20 the world for them to have to walk 50 feet to use

21 their cell phone so --

22         THE COURT:  And then the final request that

23 they have in this context relates to access to certain

24 areas.

25         There is a suggestion that -- that they are

1  not being allowed access to everywhere including the

2  worst case areas in terms of being able to collect

3  samples and take photographs and video.

4           MR. PITT:  I neglected to address that, Your

5  Honor, if I could.

6           THE COURT:  Please.

7           MR. PITT:  I think they are primarily

8  complaining about two areas, one is the mix house and

9  the other is a --

10          THE COURT:  Furnace.

11          MR. PITT:  -- a furnace.  Now, the lead

12  furnace is a confined area.  It's a furnace.  It's

13  dangerous to get into that furnace.

14          They asked to get in -- there are OSHA issues

15  with getting in a furnace like that.

16          We told them yesterday that we -- we just

17  could not let them in there because of liability

18  purposes, but if we can get the -- the proper

19  insurance coverage and that sort of thing, I think

20  that would be -- that could be worked out as well.

21          And as far as the mix house, and I think

22  there is -- I get a different story from Mr. Seay and

23  others on the scene yesterday, I believe that they

24  were allowed to go in the mix house.

25          There was one entrance to another part that

1 the Corning people prohibited them from going into

2 because it had a big red danger sign on it.

3        They were told when they came back today they

4 would -- Corning would be able to open another

5 entrance that would let them go into that mix house,

6 so there is no problem in them getting into the mix

7 house.

8        They couldn't get in it yesterday, but when

9 they come back they can.

10        THE COURT:  There are circumstances in which

11 you would allow access to both of those instances.

12        MR. PITT:  Correct.

13        THE COURT:  All right, I want to hear from

14 Mr. Owen because I think you your client may have some

15 different equities and interests here, and this would

16 give you the opportunity to respond to the request.

17        And I guess I would begin with the general

18 question which is would your client be amenable to the

19 same kind of access and kind of the same spirit of

20 cooperation that the Corning defense is articulating?

21        MR. OWEN:  Well, I think we are in a

22 completely different position.  We have already worked

23 out an arrangement.

24        I think there are no issues, there is not an

25 injunction pending against us.

1          THE COURT:  Right.

2          MR. OWEN:  I don't think there are any issues

3 that are outstanding based on the email exchanges I

4 have observed.

5          MR. GETTY:  They have cooperated

6 tremendously.  We have everything arranged with

7 Philips.

8          We understand what's to be done and how it's

9 to be done, who is going to be there.

10         In fact, they are walking the perimeter with

11 the Philips property today, one of his representatives

12 along with our experts.

13         THE COURT:  The Philips property seems to

14 pose far fewer complications than the Corning property

15 does in terms of this.

16         I don't know if that -- I am just starting to

17 learn about the details of this, but --

18         MR. OWEN:  It's a very complicated property

19 in all respects, Your Honor.

20         THE COURT:  It seems.

21         MR. OWEN:  The short answer is I don't think

22 there are any issues.

23         I came today because we are a party.  I came

24 today to monitor -- I don't think there is anything

25 outstanding.

1           THE COURT:  I think the one thing I would

2   want you to think about, and it doesn't sound like

3   this is an issue, is the representation that the

4   photos and videos really are about the lawsuit

5   involving your property.  I may have misunderstood

6   that.

7           MR. OWEN:  I understood that's what Mr. Pitt

8   said.

9           I wasn't sure if he was saying that the

10  agreement with Mr. Getty, counsel, was that we would

11  get a copy of the photos and the video.

12          If it was intended to exclude those from us,

13  we want them.

14          THE COURT:  Mr. Getty's a generous man, I

15  know he would provide them.

16          MR. GETTY:  From the very outset we proposed

17  and we thought everyone was in agreement -- I know

18  Philips was -- any samples we take are going to be

19  split three ways, Philips gets them, Corning gets

20  them, any photographs or video that's taken, everybody

21  gets them.

22          Even if someone were to take a -- our experts

23  have an understanding that whatever photograph,

24  whatever video under any means, by any means, cell

25  phone, camera, whatever, it gets turned over to us and

1 to both sides' lawyers.

2          THE COURT:  Okay, that's pretty clear,

3 Mr. Owen.

4          MR. OWEN:  It needs to be clear, Judge,

5 because there are really two points in the sampling.

6 The photographs are obviously simple.

7          But when you split samples everybody gets the

8 dirt or the substance and there is a sample and there

9 is a result of that sample and I understand then that

10 everything's going to be exchanged, we will all get a

11 sample and we'll all exchange the results of those

12 samples.  Is that the understanding?

13          MR. GETTY:  That's my understanding, and I

14 think David probably is aware of this.

15          Our experts apparently talked to someone from

16 Philips, I think it's Brian Johnson and my colleague,

17 Jessica Winters, they have a lot of communication,

18 they are the two people who have been dealing with the

19 Philips matters primarily.

20          But Philips is going to do some remediation,

21 soil remediation.

22          They are going to remove I think it's either

23 two or three feet.

24          We are going to drill down beyond two or

25 three feet, so we will -- we will drill both through

1 the first couple that they are going to remove but

2 down below, and they are going to get samples and

3 Corning will get samples of everything that we drill.

4      THE COURT:  Okay, anything else on behalf of

5 your clients?

6      MR. OWEN:  Nothing else, Judge, I just wanted

7 to make sure I understood what the agreement was.

8      THE COURT:  Yes, good.  Mr. Pitt?

9      MR. PITT:  Your Honor, may I make a couple

10 other remarks before I have to yield the floor?

11      THE COURT:  Please, and you won't have to

12 yield it permanently.

13      MR. PITT:  Thank you, Your Honor.  I would

14 point out that Brian Johnson from Mr. Owen's firm was

15 at the hearing on Wednesday morning, and he and one of

16 the Philips environmental consultants from ARCADIS,

17 Mr. Gillespie, were at the plant, at the facility

18 yesterday and were involved in the walk-around that

19 occurred.

20      And it's not my understanding at this point

21 that we -- at least Corning has agreed to provide

22 results of the sampling.

23      I assume we would -- we might have to do that

24 under discovery anyway, so that very well might

25 happen.

1           But that has not been expressly discussed

2   with my in-house counsel, so I can't commit to that

3   now.

4           But we have agreed to split the samples and I

5   think to send them to three different labs.

6           We don't want them all going to the same

7   place, and I think we have agreed to disclose what

8   labs the other is going to use and it will be sent to

9   three different places.

10          THE COURT:  We are really here under the

11  notion that discovery of matters in the nature of

12  discovery need to go ahead and take place now because

13  of the renovation work and remedial work that's taken

14  place on the property, and so it's kind of preserving

15  the status quo where it is now for these matters to be

16  litigated at some point in the future.

17          And I would -- I would agree, I am not going

18  to allow us to kind of get pulled into full scale

19  discovery here.

20          If there is a few discrete things that need

21  to be done now in terms of gathering samples or taking

22  some photographs or the way things that are configured

23  that are about to be changed, I think that's

24  appropriate.

25          I think the defense for the defendants is

1  working well to try to accommodate those requests

2  within, you know, some -- some fair restrictions, but

3  I am not going to require the parties to agree to

4  exchange.

5         We could litigate that if we need to in the

6  context of discovery.

7         MR. PITT:  Thank you, Your Honor.  I did want

8  to make clear that, as we have to Mr. Getty, both last

9  night and -- and this morning before the hearing

10 started, that as -- a show of our willingness in

11 further accommodation and also not to do anything that

12 would thwart their efforts or cause any concern for

13 them that evidence of some sort may be destroyed, we

14 have sent the workers home, the Bierlein workers and

15 others.

16        I have a commitment to me from my client and

17 I think I can make the commitment to the court that

18 there will be no changes in the facility out there

19 until Monday or Tuesday or Wednesday or whenever the

20 plaintiffs can get their folks in there.

21        We don't want to deprive them of any ability

22 to sample whatever is there now.

23        THE COURT:  Okay.

24        MR. PITT:  We would only get ourselves in

25 trouble if we do that, and we don't want to get in

1  trouble so we are willing to do that and we can make

2  that commitment.

3        There is no need for them to bring everybody

4  out there, make everybody go out there at 4:00 this

5  afternoon and start this and go into Saturday on this

6  weekend with this weather like it is.

7        This could be, we think, worked out at a more

8  reasonable pace next week.

9        So that would be I think, Your Honor, the

10 additional comments I would make.  Thank you, Your

11 Honor.

12       THE COURT:  Thank you, Mr. Pitt.

13       Well, Mr. Getty, this -- it appears that in

14 the coming days there will be the opportunity to

15 achieve the relief you are seeking from the court.

16       I guess the question is what else do you need

17 from me?  What do you have -- what relief are you

18 asking for the court?

19       This is not a preliminary injunction context,

20 this is not a temporary restraining order context, you

21 have got representations by members of the Bar and

22 counsel who understand the common law duty to preserve

23 evidence who are making very reasonable requests for

24 accommodation and really have addressed every one of

25 your specific requests and are willing to meet those

1 specific --

2          MR. GETTY:  Well, they haven't really --

3          THE COURT:  Hold on, and they are willing to

4 meet those specific requests.

5          You can say they haven't done that yet, but

6 there is some process that has to unfold here.

7          They have represented that they will work

8 with you as representatives of potential plaintiffs in

9 this case, the plaintiff and potential class in this

10 case to accomplish what seems to be a reasonable thing

11 to accomplish and actually in the interest of all

12 parties.  What else do you need from me?

13          MR. GETTY:  Well, it's --

14          THE COURT:  It's Friday afternoon, let's go

15 home.

16          MR. GETTY:  I'll try and be very brief.  What

17 this really is about as described by the court is

18 accurate.

19          It's really not a TRO, it's about a

20 preservation of evidence and access to the facility.

21          We still have some issues about access and a

22 few other things that -- that probably -- is that

23 echoing?

24          THE COURT:  Not here.

25          MR. GETTY:  Okay, it sounded like it was.

1  That probably need to be addressed.

2          And we have some concerns, I mean, first of

3  all, I don't think we have any problems at this point

4  or concerns with Philips.

5          I think they have worked very diligently with

6  us and I think we have worked out very smoothly all

7  the details.  Mr. Pitt --

8          THE COURT:  Is the Philips property simply

9  land or is it --

10          MR. GETTY:  I think there are some structures

11  on it outside --

12          THE COURT:  But are the structures at issue?

13  You are really focused on land.

14          MR. GETTY:  They will be.  There will be.  I

15  believe there are some outlying buildings --

16          THE COURT:  But right now it's just about the

17  land.

18          MR. GETTY:  Yes, essentially.

19          THE COURT:  It could be about other things in

20  the future.

21          MR. GETTY:  Right.

22          THE COURT:  So that's far less complicated

23  than the issues you have with Corning.

24          MR. GETTY:  It is, and we still have a

25  question of access.

1           Our experts and we have engineering and

2    environmental experts, we have industrial hygiene

3    experts, we have a whole raft of experts, laboratory

4    people.

5           We agreed at the outset we would do all split

6    samples.

7           From the standpoint of any core drills or

8    samples that we take, I would have no problem with

9    everybody, you know, that you sent it to your labs or

10   your third parties, everybody provides all the

11   information to everybody else.

12          It sounds to me like Corning is maybe not

13   going to be in agreement with that, and that may be an

14   issue that you will have to address down the line; but

15   I would have no problem with that.

16          We do have a problem in that after the

17   Thanksgiving holiday, we had understood no one was

18   going to be in the building.  It's a holiday.

19          I actually had to be in Europe in Italy in

20   our office there for business over the Thanksgiving

21   weekend, but others in my office were monitoring this

22   site.

23          And what was a concern to us was over the

24   weekend the lights were on, there was a vacuum truck

25   there --

1          THE COURT:  The owners of the property turned

2    the lights on over the weekend?

3          MR. GETTY:  No, they had a truck there and

4    they had workers there over the weekend with some sort

5    of vacuum truck.

6          I don't know whether they were power washing

7    or what they were doing, we have asked for an

8    explanation of it.  We have never gotten it.

9          So you know, maybe there is a little bit of

10   undue paranoia on our part, but it's there.

11          I had talked to Steve yesterday, Steve and I

12   have always in other cases --

13          THE COURT:  It's helpful for the record,

14   counsel, if you will refer to your counsel, other

15   counsel in the case by their last name.

16          MR. GETTY:  Mr. Pitt.

17          THE COURT:  Yeah, thank you.

18          MR. GETTY:  We are long good friends, that's

19   why I refer to him as Steve.

20          THE COURT:  Good.

21          MR. GETTY:  We have always been able to work

22   together, Mr. Pitt and I, and we accomplished a lot I

23   think in our conversations prior to yesterday and last

24   evening.

25          I had thought and made it pretty clear that

1  our people were going to be there and that we wanted

2  access to the facility to see it today.

3          Our concern is -- and this is probably partly

4  because the vacuum truck having been there over the

5  holiday, I wanted my experts to simply be able to walk

6  through it this afternoon -- and they are down there

7  now with the Philips people doing other things -- to

8  simply make sure that the condition of the building,

9  the facility inside, on Monday, when they go back to

10 start sampling, was identical to what it was today.

11         THE COURT:  Well, but this work has been

12 ongoing since October 1st as I understand it, I mean,

13 this has been an ongoing process and so it's hard to

14 see the prejudice that comes with continued work over

15 a 24-hour period.

16         MR. GETTY:  Well, the mix house, other parts

17 of the facility, this is the other issue, I -- we

18 believe our experts should have full and complete

19 access to the facility.

20         You know, for example on the sampling, they

21 have said, well, you tell us where you want to

22 sample.

23         We talked to our experts this morning, Miss

24 Winters and I, and they said we can tell you

25 generally, but we have to have access to wherever we

1  want to sample.

2          We'll -- we'll document where we want to

3  sample, and they tell me they have to have a

4  photographic, under their protocol they have to have a

5  photograph of where they did and they have to mark it.

6          THE COURT:  Are you willing to agree to some

7  kind of protective order for confidentiality?

8          MR. GETTY:  Sure.

9          THE COURT:  That's Mr. Pitt's request, and

10  that needs to be worked out, so you are going to get

11  that.

12          MR. GETTY:  I told Mr. Pitt last night to

13  draft it, get it to me this morning and I would sign

14  it.

15          Or we can draft it, if it means we do it, it

16  gets done more rapidly, we will do it.

17          But here's what the experts say.  My expert

18  says I have got to be able to get up there, you know,

19  they have already washed certain portions of this

20  facility.  But even if the areas where they have

21  washed --

22          THE COURT:  Fair enough, fair enough.  Are

23  you willing to address the liability issues if

24  somebody gets hurt on a lift and falls and that kind

25  of thing?

1            MR. GETTY:  Sure, I told them I would give

2    them a release.

3            THE COURT:  So they are willing to let you

4    get up there, check.  Is that right, Mr. Pitt?

5            MR. PITT:  Yes, Your Honor, a release won't

6    do it, though, because I don't think Mr. Getty can

7    release a claim that an environmental worker that

8    works for a consulting firm might have.

9            I think we need an insurance policy that

10   covers liability for the duration of this --

11           THE COURT:  Are you willing to do that?

12           MR. GETTY:  I am sure they are all covered by

13   Workman's Compensation, I am sure any expert that will

14   go there will sign a release for Corning saying they

15   won't hold them responsible if they get hurt doing

16   their expert work.

17           We told them that days ago, that's always

18   been our position, I don't know what other insurance

19   policy, I mean, we are certainly not going to have to

20   go out and buy another insurance policy to cover us if

21   somebody gets hurt or have our experts --

22           THE COURT:  You guys are friends and good

23   lawyers, I am sure you can work out the details of

24   that.

25           MR. GETTY:  Okay.

1          THE COURT:  It needs to be worked out, if

2    they are going to allow access to higher up --

3          MR. GETTY:  Anywhere.

4          THE COURT:  I just want to make sure,

5    Mr. Pitt, I am not trying to mischaracterize where the

6    defense is on this.

7          MR. PITT:  Yeah, ladders, any elevation

8    equipment is used for other than people standing on

9    the floor, and I think even if they are standing on

10   the floor and get hurt they can sue Corning

11   potentially.

12         The -- Corning's -- any Workers' Comp.

13   coverage that Corning has is not going to cover

14   employees of a consulting firm.

15         THE COURT:  That's a fair request.  That can

16   be resolved.

17         Corning needs to understand there is a way to

18   resolve that.

19         The plaintiff needs to understand it's a fair

20   request and needs to accommodate that request in a way

21   that's legally protective for Corning, but that's --

22   that's not an impasse, that can be resolved.

23         MR. GETTY:  And I hope you understand,

24   Your Honor, what my expert's telling me is there may

25   be areas where there were very hazardous substances

1  they have already power washed or cleaned them.

2            THE COURT:  Well --

3            MR. GETTY:  But they want access to the high

4  areas, they want to be able to look at them, they want

5  to be able to use a lift or a ladder, there may be a

6  nook or a cranny where we can still get a good sample.

7            THE COURT:  Okay, so there is a path towards

8  allowing that to occur.

9            MR. GETTY:  Right, and we wanted a simple

10  walk-through today so that they could simply observe

11  the condition of the facility.

12            I thought I had made it pretty clear to Steve

13  that we would have people there in the afternoon, and

14  we were hopeful that we would get a hearing either

15  late this morning or early afternoon but that they

16  would be there.

17            I don't know if they sent these people all

18  back I guess because of the weather.

19            THE COURT:  I think that's fair.  I have got

20  requests to close courthouses at this point, and it's

21  really a moot issue given the representation of

22  Corning that the work is not going to continue into

23  next week.

24            MR. GETTY:  As long as --

25            THE COURT:  Even until Wednesday of next

1 week, there is no representation beyond that as I

2 understood what Mr. Pitt said, the work's going to

3 stop, allow some time to work out the details of this

4 and allow you to have not unfettered access, this is

5 property that they own.

6          They are the owners of this property.  They

7 have a responsibility given the litigation to allow

8 you access, and they have given you access under what

9 seem to be reasonable -- reasonable conditions.

10          MR. GETTY:  Well, when I say unfettered I am

11 not saying -- I mean, if my expert says I need to go

12 up there in that corner and I want to sample it, I

13 need to look at it first, he needs to be able to do

14 that.

15          I don't want to be in a position where we are

16 quibbling later on.

17          I would like the court to enter an order that

18 says we have reasonable and complete access to the

19 facility so that, you know, full sampling can take

20 place.

21          THE COURT:  Let me -- let me just see if

22 Mr. Pitt has any objection -- I am not going to -- I

23 don't know that I need to enter an order, but I think

24 the scenario that Mr. Getty's fairly bringing to

25 everybody's attention is a scenario in which they have

1  identified this particular area for testing, the

2  expert says you know what, I really need to get up

3  there, the issues with regard to liability have all

4  been addressed, and Corning -- the concern is that

5  Corning would say, well, no, you can't get up there

6  because you didn't preidentify it.

7          MR. GETTY:  Right.

8          THE COURT:  You have just now discovered

9  that's a spot you need to go.

10         MR. GETTY:  That's exactly right, Your Honor.

11         THE COURT:  So if that seems reasonable and

12 you are willing to operate that way, then we can just

13 simply state that on this record and I think that is

14 how we will unfold.

15         If you have concerns about that though I want

16 to give you the chance, Mr. Pitt, right now --

17         MR. PITT:  I would not anticipate once we

18 have a full sampling plan and know where they want to

19 go, I would not anticipate any Corning representative

20 telling them they can't climb a ladder and take a

21 sample from the elevated place as long as we have some

22 sort of insurance of liability protection.  We cannot

23 waive OSHA claims.

24         THE COURT:  That's fine, and you have -- I

25 agree with you on that, I think you deserve to have

1  that worked out.

2          I think -- I think this is a little bit of a

3  different scenario, this is -- here's our plan, but in

4  the midst of the sampling, in the testing, the expert

5  says, well, we talked about this location.

6          But I really need to go to a different

7  location now that I have seen it and I would like to

8  have a sample there, I don't -- I would hope that

9  Corning would not take kind of a legalistic approach

10 and say sorry, it wasn't on your list.

11         Yes, we have addressed the liability issues

12 and we are not worried about that, but gotch you, you

13 didn't list that so you can't take the sample.

14         MR. PITT:  Your Honor, I would not anticipate

15 that happening.

16         If we had -- I am just picking a number out

17 of the air -- 25 places, 50 places where they wanted

18 to sample and they came in after getting there, they

19 say they need 10 more, I wouldn't anticipate we would

20 raise any objection to that.

21         THE COURT:  Okay.

22         MR. PITT:  If it's going to blossom into 200

23 or something like that, that would be different.

24         THE COURT:  I think that would be different.

25         MR. PITT:  In terms of getting in this

1  afternoon, that's what yesterday was for.  They had

2  their folks in there yesterday walking around.

3              THE COURT:  That's a moot point.  I

4  understand you are frustrated by that, Mr. Getty, you

5  now have the time early in the week that seems to me

6  it was very reasonable to accomplish what I think is a

7  fair request.

8              MR. GETTY:  Their assurance that nothing is

9  going to happen today is fine with me.  I mean, I am

10 okay with that, Your Honor.

11             THE COURT:  Okay.

12             MR. GETTY:  What my experts, so the court and

13 Corning and everyone understands, what my expert says

14 is, you know, we'll have a sampling plan and that will

15 tell them generally where we are going to do and

16 generally what we are going to do.

17             But I can't predetermine exactly where I am

18 going to do it.

19             I may want to go over here a little bit more

20 and do it in a -- really a different area but, you

21 know, that's adjacent to or close to where I expected

22 to do it initially, and I just want the flexibility

23 there understood that we are not going to be

24 ritualistic and legalistic to use your phrase where we

25 are told, no, you can't go over there or no, you can't

1 get up there or you can't use certain equipment or

2 whatever.

3         I mean, we will provide the insurance, and in

4 terms of the furnace and the mix house, I am sure

5 these experts are schooled enough they will know if

6 they need protective equipment, they will have it.

7         THE COURT:  And I think Corning has fairly

8 articulated conditions that allow access to that and

9 more importantly has now conceded enough time, a

10 reasonable amount of time given the cost that they

11 incur with delay as reported in the pleadings as well.

12         MR. GETTY:  Right.  Workers routinely went

13 into this furnace for maintenance all the time so it

14 shouldn't be a problem.

15         THE COURT:  I think that really focuses on

16 what I would think would be the plaintiffs' biggest

17 concern is how it relates to access.

18         Its second concern which relates to being

19 able to take photographs and video in the context

20 again of a confidentiality agreement or protective

21 order can be addressed.

22         It's okay to walk a little bit to make a

23 phone call with a cell phone and respect the corporate

24 policies as it relates to cell phones.

25         And so I mean, I don't know, do you want to

1 respond to that, if you feel like that's just highly

2 prejudicial to you --

3          MR. GETTY:  What I want, I mean, here's the

4 way -- and I am just a lawyer.  I have to rely on what

5 the experts say, and that's why I hired them.

6          But what my expert tells us is, Richard, if I

7 am looking at something and I want to talk to somebody

8 in the lab or somebody in the back office I need to be

9 talking to them looking at it because he may say,

10 well, what about this and I can respond then, I don't

11 need to be walking back and forth, I need to be able

12 to talk to them right then realtime on site; and I

13 don't think there is going to be a lot of instances of

14 that.

15          THE COURT:  I think if that were to occur

16 Mr. Pitt said, well, one cell phone, you know, is --

17 they have access to a cell phone on an as-needed

18 basis, that may not be a problem.  Is that a fair

19 characterization?

20          MR. PITT:  I think that's fair, Your Honor.

21 If that comes up, and I wouldn't anticipate it, but if

22 it does, we can make sure they can take the cell phone

23 in, make the call, take it back out where it was and

24 that shouldn't take five minutes.

25          THE COURT:  Okay, I think, Mr. Getty, we have

1 addressed your requests.

2          I am going to kind of from a procedural

3 standpoint deny the ex parte motion for a TRO and for

4 a preliminary injunction which was filed at record no.

5 2 and is in essence still pending on the docket as

6 moot.

7          I am going to further deny plaintiffs'

8 amended and renewed emergency motion for a temporary

9 restraining order and preliminary injunction directing

10 the preservation of evidence filed at record no. 18

11 also as moot since there is a concession that this is

12 not a -- a context really that is amenable to

13 resolution by a temporary restraining order or

14 preliminary injunction.

15          I am going to consider an oral motion for a

16 protective order to have been made unless you would

17 object to that, Mr. Getty.

18          MR. GETTY:  No, certainly not.

19          THE COURT:  Consistent with the rule --

20          MR. GETTY:  I will confirm the making of it

21 now.

22          THE COURT:  -- with Rule 26(c) and we'll --

23 we'll consider the defense having responded to that,

24 and I am going to hold that in abeyance, I am not

25 going to rule on that either way, in essence will be

1 pending in front of me; and we can return to it if

2 necessary.

3          But once these matters have been addressed,

4 then it will be denied as moot as well since it

5 appears to me the defense has very reasonably asked

6 for some protections, some concessions in order for an

7 orderly procedure as it relates to this gathering of

8 samples and preserving the evidence in this particular

9 case and then we can go from there and, with any luck,

10 this will unfold in an orderly fashion and I won't see

11 any of you for awhile.

12          MR. GETTY:  Your Honor, technically under the

13 rules, would that be not only an oral motion for

14 protective order but also a motion to compel on our

15 part?  Compel certain discovery I guess.

16          THE COURT:  It could be, I need to look at

17 the scheduling order in this case.

18          My practice is to defer discovery matters to

19 the magistrate judge, and I am really -- have a strong

20 incentive to do that as soon as I possibly can in this

21 case.

22          So you certainly can make that motion as part

23 of the record as well and we'll take that under

24 advisement.

25          MR. GETTY:  Do you know who -- since we are a

1  Lexington case --

2          THE COURT:  Judge Wier would be the

3  magistrate judge in this case.

4          Mr. Owen.

5          MR. OWEN:  Yes, Your Honor, this may already

6  have been addressed and I have not been a party to the

7  conversations, but would we receive notice to be

8  present for the sampling?

9          THE COURT:  Sure.

10          MR. GETTY:  Sure, I understood that would be

11  the case.

12          MR. PITT:  We had agreed, they were present

13  yesterday, it was contemplated they would have

14  representatives today, split samples and that.

15          From the Corning standpoint at least that

16  would be applicable.  One other thing, Your Honor, if

17  I might.

18          THE COURT:  Please.

19          MR. PITT:  We talked about a confidentiality

20  agreement on the photographs and that sort of thing,

21  and assuming we get the language agreed to and

22  submitted to Your Honor, is that something that would

23  routinely come before Your Honor that Your Honor would

24  know about or would -- would -- would the court give

25  us leave to let the court know that it's there and

1 that it might be helpful for the court to consider it

2 before the folks go on the site?

3          THE COURT:  Well, I don't think there is

4 necessarily any requirement that I approve it if the

5 parties are comfortable with it.

6          If you are asking for my approval of it, I

7 mean, I am pleased to hear from either side on that.

8          MR. GETTY:  I would contemplate that we would

9 do a protective -- a confidentiality and protective

10 order, we would agree to the terms and then we would

11 submit it to you ultimately for signature.

12          THE COURT:  Or an order as opposed to an

13 agreement, then yes, you would need to tender it to

14 me.

15          MR. GETTY:  I always understood we would do

16 an order of some sort.

17          MR. PITT:  Under these circumstances would

18 the court give us leave to let chambers know when it's

19 submitted?  I know the court's --

20          THE COURT:  Yes.

21          MR. PITT:  -- got many other cases besides

22 this one and it might not come up.

23          THE COURT:  I am trying to be sensitive with

24 regard to the time concerns in this particular case.

25          What I would do is just simply file it in the

1  record once it is an agreed order, and then we will be

2  able even over the weekend to monitor that and

3  certainly turn to it first thing on Monday morning.

4          If it comes to me as an agreed order, I'll

5  enter it promptly and then it will be part of the

6  record and it would be appropriately part of the

7  record I think given kind of a pending motion for an

8  overall protective order or compelled under 26(c).

9          MR. GETTY:  I think what we have outlined

10  today either through the court or discussions we have

11  had is pretty much what it's going to say.

12          THE COURT:  Well, you all work it out, reach

13  an agreement and then as long as it's agreed and there

14  are no surprises, then I'll review it and enter it

15  promptly so you can proceed promptly.

16          Mr. Getty, are there any other matters that I

17  can address to help keep this moving forward?

18          MR. GETTY:  I don't think so, and my much

19  smarter, better-looking colleague has just nodded her

20  head no, so --

21          THE COURT:  Thank you, Mr. Getty.

22          Mr. Pitt, anything on behalf of your client?

23          MR. PITT:  Nothing further, Your Honor, thank

24  you.

25          THE COURT:  Mr. Owen?

1          MR. OWEN:  No, Your Honor.

2          THE COURT:  All right, hope everyone has a

3    good weekend.  We will stand adjourned.

4          (The further hearing in this matter was

5    concluded at 2:27 p.m.)

6                         - - -

7                      CERTIFICATE

8          I certify that the foregoing is a correct

9    transcript from the record of proceedings in the

10   above-entitled matter.

11   s/  K. Ann Banta                 12-9-13
     K. Ann Banta, RPR, CRR           Date
12

13

14

15

16

17

18

19

20

21

22

23

24

25