UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| MODERN HOLDINGS, LLC, | ) | |
| GAY BOWEN, GREENLEAF PLANT | ) | |
| FOOD WHOLESALE, INC., and | ) | |
| BOBBIE LEMONS | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No.: 13-405-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CORNING INCOPORATED, | ) | **ORDER** |
| KONINKLIJKE PHILIPS, N.V., and | ) | |
| PHILIPS ELECTRONICS NORTH | ) | |
| AMERICA CORPORATION, | ) | |
| | ) | |
| Defendants. | | |

*** *** *** ***

This environmental mass tort lawsuit alleges that Defendants Corning Incorporated and

Philips Electronics,[1] as owners and operators of a glass manufacturing facility in Danville,

Kentucky, intentionally or negligently emitted and disposed of hazardous chemicals during the

sixty years of the Facility's operation, polluting the groundwater, air, and soil within a five-mile

radius.  As a result of this contamination, area residents allege that they suffered personal

injuries, including illnesses such as Multiple Sclerosis, and area landowners allege property

damage.[2]  Corning and Philips filed motions to dismiss the Plaintiffs' complaint for failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6).  [R. 44, 45].  The motions will be

GRANTED in part and DENIED in part as explained below.

---

[1] Plaintiffs also sued Philips' parent company, Koninklijke Philips, N.V. (KPNV).  In a separate order at Docket Entry 109, the Court granted Defendant KPNV's motion to dismiss for lack of personal jurisdiction.

[2] A sister case, *Cox, et al. v. Philips Electronics North America Corporation, et al.*, No. 5:13-cv-00406-GFVT, is a putative class action toxic tort lawsuit brought by Philips' former employees against Philips and KPNV.

I

Defendants Corning Incorporated and, later, Philips Electronics North America owned and operated the Danville, Kentucky glass manufacturing facility at issue in this case. Corning constructed the Facility in 1952 and operated its glass manufacturing business there until 1983, when it sold the site to Philips. [Second Am. Class Action Compl., R. 108 at ¶¶ 31-32, 36].[3] From 1983 to 2011, Philips manufactured various glass products for the lighting industry on the site. [*Id.* at ¶¶ 32-33, 37-38]. It sold the Facility back to Corning in 2013. [*Id.* at ¶ 33].

Plaintiffs, initially defined as individuals and corporations who resided or owned property within a five-mile radius of the Facility between 1952 and 2013, identify a number of hazardous substances used in the course of the Facility's operations, including asbestos, mercury, arsenic, lead, and PCB compounds (among others). [*Id.* at ¶¶ 12, 41].[4] The complaint alleges that Corning and Philips illegally dumped these hazardous substances in nearby fields, area streams, and sites now owned by Modern Holdings and other area landowner-plaintiffs. [*Id.* at ¶¶ 46-54]. It also alleges that Defendants improperly maintained their "settling ponds" (filtration systems used to collect chemical run-off) and allowed lead dust and other hazardous substances to accumulate on the roof of the property and wash into the Clarks Run watershed, a source of drinking water for the region. [*Id.* at ¶¶ 55-56]. According to the complaint, chemicals in wastewater discharge units known as "outfalls" exceeded applicable statutory limits, [*id.* at ¶¶

---

[3] In a separate Order issued contemporaneously with this Opinion, the Court granted the Plaintiffs' Motion for Leave to Amend the Complaint. [R. 107]. For the reasons set forth in that Order, the Court considers the Second Amended Class Action Complaint throughout this Opinion.

[4] The Complaint alleges that Defendants used and released asbestos, mercury, arsenic, beryllium, cadmium, chromium, lead, tin, zinc oxide and other heavy metals, thallium, percholoroethene (PCE), 1-Trichloroethane (TCA), methylene chloride, PCB compounds, benzene, toluene, vanadium, benzo(b)flouranthene, benzo(a)pyrene, ethylbenzene, and chlorinated fluorocarbons (CFC), 2-Butanone (MEK), silica, and ethanolamine. [Second Am. Class Action Compl., R. 108 at ¶ 41].

57-58], and tests recently conducted on the Facility's grounds indicated the presence of heavy metals in the soil, air, and inside the building itself.  [*Id.* at ¶¶ 126-41].  Preliminary tests in the area also indicated elevated concentrations of lead, TCE, DCE, and arsenic in groundwater and surface water samples, [*id.* at ¶¶ 142-45], as well as lead and arsenic concentrations significantly above industrially accepted soil levels.  [*Id.* at ¶¶ 84-85].

Plaintiffs' complaint sets forth counts for nuisance; trespass; negligence, gross negligence, and recklessness; strict liability for an ultra-hazardous activity; battery; fraudulent concealment; negligent misrepresentation; negligent infliction of emotional distress; and "medical monitoring."  [R. 108].  These can be grouped into three categories.  First, Plaintiffs allege that toxic exposure has caused them physical and emotional injury, including cancer, autoimmune deficiencies, respiratory problems, dermatitis, and central nervous system problems. [*Id.* at ¶ 69].  Certain Plaintiffs' decedents have also suffered wrongful death. [*Id.* at ¶ 71]. Plaintiffs' trespass, nuisance, battery, and strict liability claims allege that their property has been damaged, resulting in diminution in property values, loss of the use and enjoyment or their property, loss of the use of their groundwater, and damaging "stigma associated with being located in the vicinity of the site."  [*Id.* at ¶ 70].

Finally, in their fraudulent concealment and negligent misrepresentation claims, Plaintiffs allege that Defendants knowingly and intentionally permitted the dumpings described above and "failed in their statutory duties to inform state and/or federal regulatory agencies" of this activity. [*Id.* at ¶ 58; *see also id.* at ¶¶ 67-69, 79-80, 207-08].  This conduct allegedly prevented regulatory authorities from discovering the extent of the emissions.  [*Id.* at ¶ 76].  Had the Defendants fully disclosed the presence of these substances and the health risks and property damage associated

with contamination, Plaintiffs claim, they would not have continued to live or own property in the area.  [*Id.* at ¶¶ 48, 211].

Corning and Philips have filed Motions to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  [R. 44, 45].  At the parties' request, the Court heard oral argument on this and other related motions on February 9, 2015.  [R. 83].   Although Philips' initial briefs were confined to the claims of strict liability, battery, negligent misrepresentation, and fraudulent concealment, as well as two threshold standing issues, the Court granted its oral motion during the hearing to adopt and join all of Corning's arguments.[5] [R. 83].

On March 13, 2015 – nine months after the motions to dismiss stood fully briefed and over one month after oral arguments – Plaintiffs filed a "Revised Response" to Corning's Motion to Dismiss.  [R. 102].  While this eleventh-hour revision is less than timely under the circumstances, *see* 5 Charles A. Wright, Federal Practice & Procedure § 1194 (3d ed.) (noting that submission of amended motions or responses is permissible, but "is particularly inappropriate after briefs have been interposed by the opposing parties, oral arguments have been heard, or other forms of reliance have been built up on the basis of the original motion"), Corning promptly submitted a reply to the revised response, [R. 103].  The Court has considered all the briefs, including these revised responsive documents.

## II

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a

---

[5] In its brief, Philips also joined in Corning's Motion to Strike Plaintiffs' Class Allegations. [Philip's Mot. Dismiss, R. 45-1 at 15]. That issue is addressed in a separate Order issued contemporaneously with this Memorandum Opinion, at Docket Entry 111.

complaint which fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, as is now well

known, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While a plaintiff need not provide

"detailed factual allegations," she must advance more than "a formulaic recitation of the

elements of a cause of action."  *Id.* (citing *Twombly*, 550 U.S. at 555).  A court reviewing a

12(b)(6) motion must "accept all the Plaintiffs' factual allegations as true and construe the

complaint in the light most favorable to the Plaintiffs," *Hill v. Blue Cross & Blue Shield of

Mich.*, 409 F.3d 710, 716 (6th Cir. 2005), but it is "not bound to accept as true a legal conclusion

couched as a factual allegation."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Ultimately, a plaintiff

must "plead[] factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

A

Two threshold standing issues must be addressed at the outset. First, Philips argues that

Plaintiff Gay Bowen lacks standing to bring claims against them. Plaintiffs concede that Ms.

Bowen moved away from Danville prior to Philips' purchase of the site on August 31, 1983, so

her injuries cannot be attributed to Philips.  [R. 45-1 at 5; R. 53 at 14].  As against Philips and

KPNV, then, Ms. Bowen's claims must be dismissed.  Ms. Bowen is not dismissed as against

Corning, however.

Philips also argues that Corporate Plaintiff Greenleaf Plant Food Wholesale lacks

standing to maintain suit because it was administratively dissolved by the Secretary of State before the complaint was filed.  A corporate entity may be administratively dissolved if it fails to comply with certain requirements, including the filing of an annual report.  Ky. Rev. Stat. (KRS) § 14A.7-010(a). Once administratively dissolved, the entity still exists, but only for the purpose of winding up and liquidation.  KRS § 14A.7-023(3).  It cannot bring a lawsuit against others while under this status.  *E.g., Diktic, Inc. v. Somerset Refinery, Inc*., 2003 Ky. App. Unpub. LEXIS 1025, *6-7, 2003 WL 21673962 (Ky. Ct. App. July 18, 2003).  However, Greenleaf has since notified the Court that it has been reinstated, [R. 74], and this reinstatement relates back to the effective date of the administrative dissolution.  KRS § 14A.7-030(3)(a)-(b).  Philips' motion to dismiss Greenleaf on this ground is therefore denied as moot.

B

In their nuisance claim, Plaintiffs allege that the hazardous substances from the Facility were discharged "into the air and groundwater, and thereby into Plaintiffs' [properties]," causing damage and interference with their use and enjoyment of the property.  [Second Am. Class Action Compl., R. 108 at ¶¶ 146-59].  Defendants argue that Plaintiffs have failed to plausibly plead interference with their properties and to specify the nature and quantity of the substances that caused their harm.

A nuisance "arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage."  *Smith v. Carbide & Chems. Corp*., 507 F.3d 372, 379 (6th Cir. 2007) (quoting *City of Somerset v. Sears*, 313 Ky. 784, 233  S.W.2d 530, 532 (Ky. 1950)).  In essence, a nuisance claim turns on interference with the use and enjoyment of land.

6

*Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859, 864 (W.D. Ky. 2009).  A nuisance can be private or public under Kentucky law.  A private nuisance affects only an individual or limited number of individuals, while a public nuisance affects the public at large.  *Merrick v. Diageo Americas Supply, Inc.*, 5 F. Supp. 3d 865 (W.D. Ky. Mar. 19, 2014).  Here, Plaintiffs claim is one for private nuisance.  *See id.*

Two elements are required in a nuisance claim: "(1) reasonableness of the defendant's use of his property, and (2) the gravity of harm to the complainant."  *Louisville Ref. Co. v. Mudd*, 339 S.W.2d 181, 186 (Ky. 1950).  A plaintiff must show "[a]ctual physical interference with or harm to the [his] property," *Smith*, 507 F.3d at 381 (citing *McGinnis v. Tenn. Gas Pipeline Co.*, 25 F.3d 1049 (6th Cir. May 31, 1994) (unpublished)), but proof of negligence is not required, *Dickens*, 631 F. Supp. 2d at 865 (citing *Lynn Min. Co. v. Kelly,* 394 S.W.2d 755, 758 (Ky. 1965)).  A plaintiff must also show that the private nuisance caused her damages.  The measure of compensatory damages depends on whether the nuisance was "permanent,"[6] or "temporary."[7]  However, damages may not be awarded "for annoyance, discomfort, sickness, emotional distress, or similar claims for a private nuisance."  KRS § 411.560(3).

Defendants first argue that Plaintiffs do not specify what substances interfered with their property rights, but merely "claim generally that unidentified substances have migrated onto their properties" based on information and belief.  [Corning's Mot. Dismiss, R. 44-1 at 7].  The complaint alleges that the hazardous substances have been discharged into the air and water and have migrated onto and "physically invaded" Plaintiffs' property.  [Second Am. Class Action Compl., R. 108 at ¶¶ 152-53].  Accepting these allegations as true, Plaintiffs' allegations

---

[6] KRS §§ 411.530, 411.560.
[7] KRS § 411.540.

regarding the type and extent of emissions are sufficiently specific to satisfy *Twombly*. *See, e.g.*, *Merrick*, 5 F. Supp. 3d 865 (finding that Plaintiff's nuisance claim, which alleged that "whiskey fungus" from the defendant's distillery had clung to homes, businesses, and vehicles and could only be removed with costly cleaning measures, set forth a sufficiently specific level of interference to survive a motion to dismiss).

Plaintiffs also pled on information and belief that "more than a minute quantity, the extent of which is presently unknown," caused their harm.  Attacking their information-and-belief pleading, Corning also contends that, as a matter of law, a discharge of a minute or unspecified quantity of chemicals is insufficient to state a claim.  While pleading on information and belief cannot insulate a plaintiff at the 12(b)(6) stage,[8] *Iqbal* did not render pleading on information and belief entirely ineffectual.  *E.g.*, *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . . ."). Plaintiff has set forth sufficient factual allegations to allow the Court to reasonably infer not only that these substances existed in the surrounding environment, but that "a real and appreciable" amount of these particulates invaded plaintiffs' property.  *See Smith*, 507 F.3d at 381.  The information-and-belief pleading is particularly appropriate allegation here, where technical information regarding the amounts of emissions is either in the control of the defendant or would require its cooperation through discovery.  *See, e.g.*, *Arista Records*, 604 F.3d at 120.

Finally, the Defendants argue that Plaintiffs' damages and injury allegations cannot

---

[8] *See In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014).

establish the harm element in a nuisance claim.  The complaint alleges that the harm to Plaintiffs' properties arises from "the stigma of being closely connected to the site," as well as their "expos[ure] . . . to potential legal and environmental liabilities."  [Second Am. Class Action Compl., R. 108 at ¶¶ 156, 159].  The nuisance statute provides that "[n]o damages shall be awarded for annoyance, discomfort, sickness, emotional distress, or similar claims for a private nuisance."  KRS § 411.560(3); *see Smith*, 507 F.3d at 379; *cf. Morgan v. Hightower*, 163 S.W.2d 21 (Ky. Ct. App. 1942) (refusing to allow recovery in trespass for damage to the reputation of plaintiff's property based on a suicide that occurred there).  Instead, the only "damages allowable for a private nuisance" relate to the diminution in value.  KRS § 411.560(1)(a)-(b).  To the extent Plaintiffs seek damages for stigma and potential liability to third persons through these allegations, such damages are not permitted under the statute and must be dismissed.  However, Plaintiffs also allege that as a result of the alleged invasion of their properties, their property values have diminished, they have lost the use of their groundwater, and they have lost the use and enjoyment of their property.  These are viable bases for recovery in nuisance.  KRS § 411.560(1)(a)-(b); *see also Smith*, 507 F.3d at 379 (suggesting that loss of use of groundwater may be a viable basis for recovery on nuisance action, depending on resolution of fact issue by the court below on remand).  Plaintiffs' nuisance claim therefore survives Defendants' motion to dismiss.

## C

In their trespass claim, Plaintiffs allege that Defendants' activities caused "particulates, air contaminants, and other Hazardous Substances" to invade and damage their properties. [Second Am. Class Action Compl., R. 108 at ¶ 162].  Trespass is an intended or negligent

encroachment onto another's property, without the consent of the landowner. *Rockwell Int'l Corp. v. Wilhite,* 143 S.W.3d 604, 619-20 (Ky. Ct. App. 2003). "To support an action for trespass, an object or thing must actually enter the person's property and harm it." *Dickens*, 631 F. Supp. 2d 859, 864-65 (W.D. Ky. 2009). Although "not every touching of the land interferes with the right to exclusive possession of the property," *Smith v. Carbide & Chems. Corp.*, 298 F. Supp. 2d 561, 567 (W.D. Ky. 2004) (trial court op.), Kentucky courts have recognized that airborne particulates or other invisible chemical contamination may still be actionable in trespass if they harm the property. *Mercer v. Rockwell Int'l Corp*., 24 F. Supp. 2d 735, 743 (W.D. Ky. 1998). Contrary to Defendants' contentions, the fact that the chemicals were invisible and imperceptible does not, in and of itself, preclude Plaintiffs' trespass claim.

However, it is not enough to show that these chemicals were merely present on the land; rather, Plaintiffs must demonstrate that "a hazard is presented by the [chemicals] in the concentrations found on the land[s] in question." *Wilhite*, 143 S.W.3d at 621; *see also Mercer*, 24 F. Supp. 2d at 745 (stating that, in the context of an alleged trespass of imperceptible airborne substances, "the only way to demonstrate harm to the property is to show that the substance, as it is on the property, is hazardous"). Plaintiffs claim that the discharged substances migrated onto their land, and they seek damages for (among other things) the loss of the use and enjoyment of their properties, the loss of use of groundwater, and restoration costs. [Second Am. Class Action Compl., R. 108 at ¶¶ 168-74]. While their complaint is less explicit about the extent of the "hazards presented by the chemicals" on their land, it can be reasonably inferred from Plaintiffs' allegations – particularly those relating to restoration costs and loss of the use of groundwater – that some permanent damage to the land may have occurred as a result of the presence of these

10

substances.  *Wilhite*, 83 S.W.3d at 522 (noting that a landowner may be entitled to compensation for permanent injury to its property, loss of crops, livestock).  Accepted as true, the health issues cited by Plaintiffs demonstrate that the concentration of these substances was not insignificant and was plausibly hazardous.  *Mercer*, 24 F. Supp. 2d at 744 (noting that the presence of a health hazard is a viable basis for harm in a trespass action).

Defendants next argue that Plaintiffs' allegations of injury based on a decrease in property values, "stigma," or potential liability to third parties are not actionable in trespass. "Injury" and "damages" are two entirely separate elements of a cause of action, each of which must be established.  *Wilhite*, 143 S.W.3d at 618.  While only an *actual harm* is cognizable for an injury in a trespass claim, the components of *damages* raise a different question.  *Id.*  The allegations that Defendants attack relate to damages.  *Mercer*, 24 F. Supp. 2d at 743 ("Decreased fair market value is not harm to the property, it is only a means of measuring the harm;" and "Kentucky law will not allow recovery for stigma absent some physical harm to the property."). These damages questions will turn on whether, at a later stage in this case, the Plaintiffs can demonstrate actual harm.  For now, however, they have stated a claim for trespass under Kentucky law.

Finally, Corning argues that, in order to state a claim for trespass, the Plaintiffs must allege that the defendants had specific intent to use the Plaintiffs' properties "as a depository for [the] chemicals."  [R. 60 at 8].  But the intent element of trespass merely requires that an intentional act produce the unpermitted invasion.  "Actual knowledge of wrongdoing [need not] be affirmatively pled in order to maintain an action for intentional trespass."  *Merrick*, 5 F. Supp. 3d at 880 (citing *Hammonds v. Ingram Indus., Inc.,* 716 F.2d 365, 371 (6th Cir. 1983)).

Moreover, "[t]he trespass may also be innocent, in that the trespasser believes he or she has a right to be on the land of another." *Id.* Plaintiffs need not plead that the Defendants intended to invade each Plaintiff's property. Rather, it is sufficient to plead – as Plaintiffs have – that the Defendants intended to operate a facility that, in the course of its operations, emitted the substances in question, some of which invaded and caused permanent harm to their land. [Second Am. Class Action Compl., R. 108 at ¶¶ 162, 166]. Plaintiffs have plausibly pled their trespass claim.

D

Defendants next challenge Plaintiffs' negligence claim. To state a claim for negligence, a plaintiff must show that the defendant owed him a duty, that the defendant breached that duty, and that the breached caused the plaintiff's injury. *Dickens*, 631 F. Supp. 2d at 864 (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)).

Defendants argue that Plaintiffs have not plead sufficient facts to make it plausible that either Defendants' activities were a substantial factor in causing their injuries. As to the Individual Plaintiffs, and (as against Corning) Plaintiff Bowen in particular,[9] Defendants argue that the temporal disconnect between their ownership of the Facility and the plaintiffs' recent discovery of their illnesses, as well as the speculative causal nature of diseases like multiple sclerosis, make a causal link attenuated at best. And, as to the Corporate Plaintiffs, Corning argues that the complaint sets forth no factual allegation that Corning's activities caused tangible harm to those properties.

While Plaintiffs must eventually prove that the Defendants' activities over this thirty-year

---

[9] As indicated above, Plaintiff Bowen's claims against Philips have been dismissed, but her claims against Corning remain intact.

period were substantial factors in causing their illnesses, Plaintiffs have plausibly pled causation

to survive this motion to dismiss.  Citing sampling tests, Plaintiffs have alleged that the

hazardous substances used by Corning and Philips were emitted into soil, groundwater, and the

air; that, as residents or facilities located within a five-mile radius of the Facility, they ingested or

were exposed to these chemicals; and that, allegedly consistent with medical studies linking

these chemicals and these diseases, this exposure caused their illnesses.  [Second Am. Class

Action Compl., R. 108 at ¶¶ 180-81, 46-66].

        Corning points to *Wood v. Wyeth-Ayerst Laboratories*, 82 S.W.3d 849, 857 (Ky. 2002),

which upheld the trial court's 12(b)(6) dismissal of a negligence claim for insufficient pleading

of the causation element.  But *Wood* is distinguishable.  In that Fen-Phen case, the plaintiff had

used the drug but, as she fully conceded, never experienced any physical illness or symptoms in

connection with her exposure.  Since her complaint was entirely lacking any allegation of actual

injury, she could not state a claim for negligence.  Here, however, Plaintiffs have set forth

allegations to allow the Court to reasonably infer that they have experienced actual physical

injury, either to their person or their property, and that Defendants' activity caused that injury.

Accepting these factual allegations as true, it must be said that the Plaintiffs have sufficiently

pled both causation and injury for their negligence claim.

E

        Plaintiffs allege that Corning and Philips are strictly liable for their property damages

since they were engaged in an ultra-hazardous activity.  They contend that Defendants' use,

storage, treatment, and disposal of hazardous substances at the Facility permitted those

substances to "migrate off-site" and cause contamination.  [Second Am. Class Action Compl., R.

108 at ¶ 194]. Specifically, they claim that Defendants dumped these substances on their site and neighboring fields, which allegedly seeped into the groundwater and soil; they also allowed settling ponds to overflow during rainstorms and flow into adjacent Clark's Run Creek. [R. 37 at ¶¶ 46-48, 55].

No reported Kentucky case has expressly decided whether the use, disposal, and resulting emission of hazardous chemical substances in the course of manufacturing activity constitutes an "ultra-hazardous" activity. In evaluating this undecided question of Kentucky law, this Court "must make the 'the best prediction, even in the absence of direct state precedent, of what the Kentucky Supreme Court would do if it were confronted with [the] question.'" *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citation omitted). Federal courts sitting in diversity are to "proceed with caution" when making such a pronouncement about state law. *Id.* (citation omitted).

Under Kentucky law, "[s]trict liability for property damage only applies where the defendant engages in an ultra-hazardous dangerous activity." *Dickens*, 631 F. Supp. 2d at 863-64. An activity is ultra-hazardous if "the very operation itself is, and is known and recognized to be, inherently dangerous at its inception." *Randall v. Shelton*, 293 S.W.2d 559, 561 (Ky. 1956).[10] Kentucky has almost exclusively applied strict liability for ultra-hazardous activities to blasting. *Stathers v. Garrard Cnty. Bd. of Educ.*, 405 S.W.3d 473, 479 (Ky. Ct. App. 2012); *Island Creek Coal Co. v. Rodgers*, 644 S.W.2d 339, 348 (Ky. Ct. App. 1982); *Wolf Creek*

---

[10] Although a handful of federal Kentucky cases have off-handedly cited the Restatement (Second) of Torts §§ 519-520, *e.g.*, *Smith*, 507 F.3d 372, it does not appear that any Kentucky state court has expressly adopted Section 520 factors from the Second Restatement. This is significant, since the Second Restatement "enlarges the circumstances under which the rule of strict liability will apply." *Yommer v. McKenzie*, 257 A.2d 138 (Md. 1969) (citing William Prosser, et al., Torts § 77 (3d ed. 1964)). While the Second Restatement uses the term "abnormally dangerous activity," the First Restatement and Kentucky case law apply strict liability to "ultra-hazardous" activity.

*Collieries Co. v. Davis*, 441 S.W.2d 401, 403 (Ky. 1969). A related line of water rights cases holds landowners strictly liable when their upstream activities cause flooding that damages lower riparian landowners' properties. *Inland Steel Co. v. Isaacs*, 143 S.W.2d 503, 505 (Ky. 1940); *Beaver Dam Coal Co. v. Daniel*, 227 Ky. 423, 13 S.W.2d 254, 255 (Ky. 1929).

Kentucky courts have applied the doctrine's "public function" exception fairly broadly to exempt a number of activities from the scope of strict liability. In accord with the rule in most other jurisdictions, the exception covers public service activities such as transmission of electricity,[11] as well as transportation of flammable or dangerous chemicals.[12] But it has also been applied to exempt the operation of gas pipeline from the scope of strict liability, *Workman v. Columbia Natural Res.,* 864 F. Supp. 638, 642 (E.D. Ky. 1994) (holding that operation of a natural gas pipeline is a matter of common usage and public service),[13] demonstrating a fairly narrow application of the doctrine.

The definition from *Randall*, as well as a handful of federal Kentucky cases, offer guidance on how the Kentucky Supreme Court would approach the activity in question here. In

---

[11] *Bryant v. Tri-Cnty. Elec. Membership Corp.*, 844 F. Supp. 347, 349 (W.D. Ky. 1994); *G & K Dairy v. Princeton Elec. Plant Bd.*, 781 F. Supp. 485, 490 (W.D. Ky. 1991); *Kentucky Utilities Co. v. Auto Crane Co.*, 674 S.W.2d 15, 18 (Ky. Ct. App. 1983); *see also Lamb v. Martin Marietta Energy Sys.*, 835 F. Supp. 959, 971 (W.D. Ky. 1993) (stating in dicta that Kentucky would not recognize a cause of action in strict liability for uranium enrichment plant's contamination of area groundwater, air, and soil, since "the activity is carried on in pursuance of a public necessity").

[12] *Johnson v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 73719, *2, 2008 WL 4427211 (W.D. Ky. Sept. 25, 2008) (refusing to find that Kentucky's doctrine of strict liability applied to CSX's transportation of flammable liquids, which derailed and caused chemical fire and chemical exposure); *Collins v. Liquid Transporters*, 262 S.W.2d 382 (Ky. 1953) (transportation of gasoline by tanker on public highways was not an ultra-hazardous activity).

[13] Federal courts sitting in Kentucky have also declined to apply strict liability to the operation of a gas pipeline, but without mention of the public function exception. *Cantrell v. Marathon Ashland Pipe Line, LLC*, 2005 U.S. Dist. LEXIS 45192, *1, 2005 WL 1570652 (E.D. Ky. June 30, 2005) (declining to apply strict liability to defendant oil pipeline for leakage of an underground tank since "no Kentucky case has extended strict liability to the transmission of oil through pipelines"); *but see Smith v. Mid-Valley Pipeline Co.*, 2007 U.S. Dist. LEXIS 33179, *8, 2007 WL 1309612 (E.D. Ky. May 4, 2007) (noting that no court has applied strict liability to "transmission" of oil through pipelines, but allowing plaintiff's strict liability claim forward at the motion to dismiss stage).

15

*Dickens v. OxyVinyls*, the defendant corporation manufactured polyvinyl chloride that allegedly released noxious odors and particulates into the air.  631 F. Supp. 2d 859.  At summary judgment, the Western District of Kentucky noted that the plaintiffs had failed to demonstrate any evidence that chemical particles had caused harm to their properties.  More importantly, our sister court also stated that it "[found] no ultra hazardous activity at issue."  *Id.* at 864.  The evidence demonstrated that the defendant manufacturer could, and had, used reasonable care to control the amount of chemical emitted from its facility.  *Id.*  The court also noted that "the release of chemicals of this type is far different from blasting activities and flooding from polluted streams," since those activities "touch the land and physically alter it."  *Id.*

In an unreported case, the Sixth Circuit affirmed this Court's determination that the Kentucky Supreme Court would not apply a strict liability standard to a gas station's storage of gasoline in underground storage tanks, which had leaked and contaminated soil on the plaintiff's land.  *Hahn v. Chevron, U.S.A.*, 60 F.3d 828 (6th Cir. 1995) (unpublished).  The *Hahn* Court relied on *Arlington Forest Associates v. Exxon Corp.*, 774 F. Supp. 387 (E.D. Va. 1991), which held that "[when] maintained, monitored, and used with due care, underground gasoline storage tanks present virtually no risk of injury from seepage of their contents. . . . Sound tanks, timely replacement of impaired parts, modern corrosion control techniques, and adequate testing for leakage can eliminate all but a tolerably small amount of risk."  *Arlington Forest Assoc.*, 774 F. Supp. at 390.  The Sixth Circuit agreed with that reasoning, emphasizing that "in cases similar to the one at bar, Kentucky courts have declined to extend the strict liability doctrine to seemingly hazardous activity that can be conducted safely."  *Hahn*, 1995 U.S. App. LEXIS 17528 at *5 (citations omitted).

16

Indeed, the ability to reduce or avoid a hazard with due care weighs heavily in the Court's analysis in this case.  As Judge Posner explained in *Indiana Harbor Belt Railroad Company v. American Cyanamid Company*, 916 F.2d 1174 (7th Cir. 1990), this consideration is fundamental in distinguishing matters suited for strict liability from those better addressed by common law negligence:

> The baseline common law regime of tort liability is negligence. When it is a workable regime, because the hazards of an activity can be avoided by being careful (which is to say, nonnegligent), there is no need to switch to strict liability. Sometimes, however, a particular type of accident cannot be prevented by taking care but can be avoided, or its consequences minimized, by shifting the activity in which the accident occurs to another locale, where the risk or harm of an accident will be less . . . , or by reducing the scale of the activity in order to minimize the number of accidents caused by it . . . . By making the actor strictly liable -- by denying him in other words an excuse based on his inability to avoid accidents by being more careful -- we give him an incentive, missing in a negligence regime, to experiment with methods of preventing accidents that involve not greater exertions of care, assumed to be futile, but instead relocating, changing, or reducing (perhaps to the vanishing point) the activity giving rise to the accident.

*Id.* at 1177 (citations omitted); *see also Hahn*, 1995 U.S. App. LEXIS 17528 at *5 (quoting *Arlington Forest Assoc.*, 774 F. Supp. at 390) ("'[S]trict liability is reserved for selected uncommon and extraordinarily dangerous activities for which negligence is an inadequate deterrent or remedy.'").  Importantly, the strict liability doctrine does not require that all risk be eliminated by the exercise of due care.  As the *Arlington Forest Associates* Court put it: "Absolute safety is not required.  Rather, the risk must be reducible by due care to a point where the likelihood of harm is no longer high."  774 F. Supp. at 390 (citations omitted).

The strict liability claim here arises out of the use and disposal of by-products from Defendants' manufacturing process.  Plaintiffs rely on *New Jersey Department of Environmental Protection v. Ventron*, 468 A.2d 150 (N.J. 1983), for the proposition that a manufacturing plant's

17

use and disposal of toxic by-product (in that case, mercury) is an abnormally dangerous

activity.[14]  But this is a fact-sensitive question, and other jurisdictions have held that the risks

associated with disposal of toxic chemicals can be avoided through the exercise of due care.

*O'Connor v. Boeing N. Am.*, 2005 U.S. Dist. LEXIS 46226, *62-66 (C.D. Cal. Aug. 18, 2005)

(holding that use of reclaimed water, which contained the toxic chemical tricholorethyline

(TCE), to cool rocket engine test stands is not an ultrahazardous activity); *Outlet City, Inc. v.*

*West Chem. Prods., Inc.*, 60 Fed. App'x 922 (3d Cir. 2003) (unpublished) (applying New York

law) (affirming the trial court's decision that manufacturer's use and storage of toxic chemicals

was not an abnormally dangerous activity); *In re Burbank Envt'l Litig.*, 42 F. Supp. 2d 976, 983

(C.D. Cal. 1998) ("While there is a high risk of harm of disposing of chemicals in the ground

near a highly populated area, the act of using solvents to clean metal parts in an industrial site

[is] not an ultrahazardous activity" since the chemicals are widely used and can be used safely

with due care.); *Nielsen v. Sioux Tools, Inc.*, 870 F. Supp. 435, 442 (D. Conn. 1994) (declining to

extend strict liability to manufacturer's use, generation, and disposal of chemicals, where the

waste was deposited in an underground storage tank and on the ground); *Schwartzman, Inc. v.*

---

[14] Two other cases on which Plaintiffs rely are not controlling on this Court.  First, they cite *Fletcher v. Tenneco, Inc.*, 816 F. Supp. 1186, 1192 (E.D. Ky. 1993), which affirmatively held that Kentucky would recognize a strict liability claim arising from the contamination of their land and livestock polychlorinated biphenyl (PCB) used in the defendant's natural gas pipeline operations.  However, this opinion was withdrawn by the court, rendering it devoid of any precedential value.  *E.g.*, 77 C.J.S. Reports § 3 ("A published opinion should be withdrawn only if in error or for other good cause.").

Plaintiffs also rely on *Smith v. Carbide & Chemicals Corp.*, 507 F.3d 372 (6th Cir. 2007).  In that case, the defendant uranium enrichment facility produced air emissions, liquid discharges, and waste that contaminated area groundwater, air, and soil.  After a two-paragraph analysis, the trial court granted summary judgment to defendant uranium enrichment facility because plaintiff had not adduced proof of "actual harm." *Smith*, 298 F. Supp. 2d at 573 (trial court op.).  On appeal, the Sixth Circuit reversed, holding that the Restatement Second does not require proof of physical harm to land; the court remanded the case, since it found that the plaintiffs had shown a genuine issue of material fact regarding harm to their property.  507 F.3d at 382.  But neither the trial court nor the Sixth Circuit ever expressly addressed whether such an activity was cognizable under Kentucky strict liability doctrine – the issue currently before this Court.

*Gen. Elec. Co*., 848 F. Supp. 942, 945 (D.N.M. 1993) (holding that New Mexico Supreme Court would decline to apply strict liability to handling, storage, and disposal of petroleum products and hazardous waste in unlined ditches because, despite the substantial degree of risk when mishandled, the risks can be eliminated through the exercise of reasonable care); *Greene v. Product Mfg. Corp*., 842 F. Supp. 1321, 1327 (D. Kan. 1993) (holding that defendant's metal fabrication activity, which includes the use of the TCE was not abnormally dangerous since the chemical is a commonly used solvent that "poses virtually no threat to environment" when properly used).

These cases are persuasive for two reasons.  First, they adhere to the principle that "ultrahazardousness or abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities."  *Indiana Harbor Belt*, 916 F.2d at 1181.  Plaintiffs vehemently argue that the hazardous substances used by the Defendants are so dangerous that they automatically warrant strict liability – but it is the Defendants' manufacturing and disposal activity that is the proper focus of the Court's analysis.  Second, these cases are in accord with Kentucky state courts' instruction that only those activities that are "inherently dangerous at their inception" may qualify as ultra-hazardous.  *See Randall*, 293 S.W.2d at 561.  Moreover, many environmental laws at the state and federal level – indeed, laws that are cited in the Plaintiffs' complaint itself, [Second Am. Class Action Compl., R. 108 at ¶ 42] – are premised on the notion that proper handling and disposal of these hazardous substances can minimize the risks associated with their use.  *See Schwartzman*, 848 F. Supp. at 945.  In light of these considerations and the restrictive scope of existing Kentucky state court opinions, the Court is persuaded that the Kentucky Supreme Court would decline to extend the doctrine of strict liability to the use,

19

treatment, and disposal of the hazardous substances used in Corning's and Philips'

manufacturing operations.  Accordingly, Plaintiffs' strict liability claim must be dismissed.

F

Defendants also attack Plaintiffs' battery claim.  Under Kentucky law, "a battery is any

unlawful touching of the person of another, either by the aggressor, or by any substance set in

motion by him or her."  *Powell v. Tosh*, 929 F. Supp. 2d 691, 707 (W.D. Ky. 2013) (citing *Vitale*

*v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000)).  Citing *Powell*, Defendants argue that Plaintiffs have

not alleged sufficient facts to show that the defendants' activity amounted to an "intentional

touching" – a required element of a battery claim.[15]

In *Powell*, the plaintiff landowners brought a battery claim against their neighbor, a hog

farm operation, alleging that the hazardous and noxious particulates emitted in the course of the

farm's operations constituted an intentional touching.  The defendant hog farm moved for

summary judgment, arguing that the record revealed no evidence that it had acted with the

requisite intent.  *Id.* at 707.  Judge Russell of the Western District of Kentucky agreed.  Noting

that battery requires "an intent to make contact with the person, not [merely] the intent to cause

harm," *id.* at 707 (citing *Vitale,* 24 S.W.3d at 657-58), the court concluded that there was no

evidence that the farm "raise[d] hogs or ventilate[d] the barns *with the purpose of releasing*

*odors into the surrounding community.*"  *Id.* at 708 (emphasis added).

Plaintiffs point out that the Court's decision in *Powell* was a summary judgment opinion,

---

[15] Despite stating in its initial motion that "exposure to chemicals does not constitute a touching under Kentucky law," [*e.g.*, Philips' Mot. Dismiss, R. 45-1 at 9], Philips clarifies in its Reply that it "did not argue that a particulate touching cannot categorically form the basis for a battery."  [Philips Reply Mot. Dismiss, R. 56 at 6-7]. Instead, it contends that "Plaintiffs have not alleged the intent necessary to maintain such a claim."  [*Id.*]  Corning makes a similar argument. [Corning Reply Mot. Dismiss, R. 60 at 11-12].

and that, upon the *Powell* plaintiffs' motion to amend their complaint, the court had previously found that the plaintiffs had a least stated a claim for battery.  *Powell v. Tosh*, No. 09-cv-121-TBR, Mem. Op. & Order, R. 200 (May 3, 2011) (unpublished) (attached as Exhibit A in Pl.'s Resp. to Philips' Mot. Dismiss).  Judge Russell noted that "other courts have allowed claims based on particulate touching to proceed" past the motion to dismiss stage.  *Powell*, 929 F. Supp. 2d at 707; *see also Powell*, No. 09-cv-121-TBR, Mem. Op. & Order, R. 200.  But the case upon which the *Powell* court relied to reach that decision is a state court case operating under a lenient notice pleading standard.  *Id.* (citing *Leichtman v. WLW Jacor Commc'ns*, 92 Ohio App. 3d 232, 234 (Ohio Ct. App. 1994) ("Because it is so easy for the pleader to satisfy the standard of [Ohio Civ. R. 8(A), few complaints are subject to dismissal")).  Under the regime of *Twombly* and *Iqbal*, however, this court must apply a more exacting standard.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (requiring that a court must cast aside "legal conclusion[s] couched as [] factual allegation[s]," and plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  The *Powell* Court's unpublished decision on this point, in and of itself, is not determinative for this Court.

The complaint alleges that Defendants "intentionally and willfully caused a direct, harmful, and/or offensive contact with the Plaintiffs and thereby committed battery upon such Plaintiffs."  [Second Am. Class Action Compl., R. 108 at ¶ 203].  This particular allegation is a legal conclusion "couched as a factual allegation," which this Court is not bound to accept.  *Iqbal*, 556 U.S. at 570 (citing *Twombly*, 550 U.S. at 555).  Elsewhere in their Complaint, however, Plaintiffs allege that defendants intentionally dumped hazardous substances into the air, nearby fields, the Clarks Run watershed, and onto the properties that are now owned by

21

Plaintiffs.  [*E.g.*, Second Am. Class Action Compl., R. 108 at ¶¶ 46-48, 50, 54-56].  Accepting these allegations as true, as the Court must at this stage, it can be reasonably inferred that the defendants conducted their operations and used hazardous substances "with the purpose of releasing [particulate matter] into the surrounding community."  *Powell*, 929 F. Supp. 2d at 708. While the question of intent may or may not be an issue as this action progresses, the Plaintiffs' battery claim survives this motion to dismiss.

G

Defendants attack the negligent misrepresentation claim for both failure to state a claim and failure to plead with particularity under Rule 9(b).  In their 12(b)(6) argument, Defendants contend that Plaintiffs' negligent misrepresentation is not viable in the context of a personal injury and property damage action like this one. They insist that "Kentucky law limits negligent misrepresentation claims to instances where a party is in the business of 'supplying false information for the guidance of others in their business transactions.'" *Baird v. Bayer Healthcare Pharms., Inc.*, 2013 U.S. Dist. LEXIS 156667, *9, 2013 WL 5890253 (E.D. Ky. Oct. 31, 2013) (citing *Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, No. 06-141-HRW, 2007 U.S. Dist. LEXIS 72286, 2007 WL 2903231, at *7 (E.D. Ky. Sept. 27, 2007)); *see also Presnell Const. Mgrs, Inc. v. EH Constr., LLC*, 134 S.W3d 575, 580 (Ky. 2004) (adopting Restatement (Second) of Torts § 552(1) (1977)).  According to Defendants, the lack of a direct business or contractual relationship precludes the Plaintiffs' claims.

Plaintiffs ostensibly offer two theories for this claim: They allege that they have relied both directly and indirectly on defendants' statements in their business transactions with third parties. First, according to Plaintiffs' representations in oral argument, the complaint alleges that

Defendants were directly involved in transactions with, and directly made misrepresentations to adjoining landowners.  Second, Plaintiffs allege that Corning and Philips are under "statutory and common law duties to disclose to . . . Plaintiffs[] the nature and extent of the Hazardous Substances generated by the Facility which have either migrated off-Site, or been intentionally dumped off-Site by Defendants."  [Second Am. Class Action Compl., R. 108 at 53].  Because the Defendants allegedly falsified or failed to disclose this information into the public record, Plaintiffs claim they were prevented from making informed decisions about the purchase, sale, or lease of their respective properties.  [Pls' Revised Resp. to Corning's Mot. Dismiss, R. 102 at 22-23; *see* Second Am. Class Action Compl., R. 108 at 53-54].  Had they known of this information, they allege that they would have taken safety precautions or would not have "continu[ed] to reside or own property within the affected area."  [*Id.* at 54].  Under a generous reading of the complaint, then, the makers of the representation – Corning and Philips – falsified or failed to fully disclose information to "local, state and federal authorities," [*id.* at 53]; the Plaintiffs relied, in turn, on that information when they decided to continue to reside or own their properties.

First, Plaintiffs have not identified – and the Court cannot find – any allegation stating or supporting an inference that direct transactions and direct misrepresentations occurred between the adjacent landowners and Defendants.  The complaint sets forth a number of allegations regarding environmental and property damage to adjacent landowners, [*e.g.*, *id.* at ¶¶ 46-48, 50, 54-56, 83-86], but it is entirely devoid of any suggestion that one of the adjacent landowner-plaintiffs and one of the Defendants engaged in a business transaction together.  Without any factual allegations supporting this theory, this basis for their negligent misrepresentation claim must fail.

Plaintiffs' indirect reliance theory fares no better.  It is true that the Restatement does not

require that a plaintiff be harmed in *direct* business transactions with a defendant. Restatement (Second) of Torts § 552 cmt. g (1977) ("[D]irect communication of the information to the person acting in reliance upon it is not necessary."); *see also id.* at illustr. 4 (providing that liability may lie where a real estate agent negligently supplies misinformation about the lots to a Real Estate Board's listing, on which a buyer relies). Indeed, *Presnell*, cited by Defendants, is in accord with this rule. That case involved a dispute between a contractor and the general manager. These parties did not engage in a direct business transaction and were not in privity (each had contracted separately with the owner). After the contractor incurred delay damages because of the manager's "faulty information" regarding the project schedule, it brought a negligent misrepresentation claim against the manager. The Kentucky Supreme Court held that – notwithstanding the lack of a direct contractual relationship – the manager owed a duty to the contractor under § 552. Nevertheless, while *Presnell* and the Restatement's illustration may contemplate that parties in a misrepresentation claim need not be in privity, they are not analogous to the attenuated indirect relationship alleged by Plaintiffs.

In fact, one federal court sitting in Kentucky expressly found that a similarly attenuated relationship and indirect reliance was insufficient to maintain a negligent misrepresentation claim. *Goldman Servs Mech. Contracting, Inc. v. Citizens Bank & Trust Co.*, 812 F. Supp. 738, 742 (W.D. Ky. 1992). The plaintiffs in *Goldman* were federal sub-contractors who were guaranteed payment under a prime contractor's payment bond. An employee at the defendant bank negligently signed a certificate of sufficiency naming a third-party – who was ultimately insolvent – to serve as surety on the bond. When the plaintiffs went unpaid, they claimed that the employee's signature amounted to a negligent misrepresentation to them that the surety was

qualified.  Judge Johnstone found that the plaintiffs were not the intended recipients of this information, which was never directly or even indirectly communicated to them.  *Id.* at 743.  The court granted summary judgment because their convoluted theory of causation – that they "relied on the payment bond and therefore on the surety and therefore on the information in [a surety approval form] and therefore on the certificate of sufficiency" – "is far too attenuated to be the basis of liability."  *Id.*  The same kind of indirect relationship plagues Plaintiffs' claim.  Government regulatory bodies – not individual property owners contemplating real estate transactions – are the intended recipients of environmental reporting data, and the far-removed relationship here cannot sustain "a credible claim of reliance."  *Id.* at 742.

Moreover, the Restatement and Kentucky law are clear that a duty only extends to "one who, *in the course of his business, profession or employment*, *or in any other transaction in which he has a pecuniary interest*, supplies false information for the guidance of others in their business transactions."  *Presnell*, 134 S.W.3d at 580 (citing Restatement (Second) of Torts § 552(1) (1977)) (emphasis added).  Defendants are not in the business of supplying information about environmental conditions, and unlike the *Presnell* defendant's obvious pecuniary interest in the larger construction project in which both parties were involved, Plaintiffs offer no factual allegations about what pecuniary interest Defendants might have in Plaintiffs' real estate transactions.  Plaintiffs have pointed to no authority embracing the kind of indirect duty alleged here.  The Court accordingly declines to extend the negligent misrepresentation cause of action to this attenuated relationship, and Plaintiffs cannot state a plausible claim for negligent misrepresentation.  Having dismissed the claim on this ground, the Court need not address Defendant's argument under Federal Rule of Civil Procedure 9(b).

H

Defendants also argue that Plaintiffs' fraudulent concealment[16] claim must be dismissed

for failure to state a claim or, alternatively, failure to plead with particularity under Federal Rule

of Civil Procedure 9(b).  To state a claim for fraud by omission, a plaintiff must show that:

> (1) the defendant had a duty to disclose the material fact at issue; (2) the
> defendant failed to disclose the fact; (3) the defendant's failure to disclose the
> material fact induced the plaintiff to act; and (4) the plaintiff suffered actual
> damages as a consequence.

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (citing

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc*., 113 S.W.3d 636, 641 (Ky. Ct. App. 2003).

Defendants argue that Plaintiffs' claim must fail because, as a matter of law, they owed Plaintiffs

no duty to disclose.  Kentucky recognizes a duty to disclose in four circumstances: (1) where a

confidential or fiduciary relationship exists; (2) where a duty is provided by statute; (3) where a

defendant has partially disclosed material facts to the plaintiff but created the impression of full

disclosure; and (4) where one party to a contract has superior knowledge and is relied upon to

disclose the same. *Id.* (citations omitted).

The facts as alleged do not indicate that any fiduciary relationship existed between these

parties, and no contractual relationship was present.  Although the complaint references a

"statutory . . . duty to disclose," [Second Am. Class Action Compl., R. 108 at ¶ 206],[17] and cites

a number of statutes in support of the negligence per se claim, [*id.* at ¶ 42], it never identifies a

---

[16] Fraudulent concealment is more commonly referred to as "fraud by omission" in Kentucky. *Morris Aviation, LLC v. Diamond Aircraft Indus.,* 730 F. Supp. 2d 683, 697 (W.D. Ky. 2010), *abrogated on other grounds by Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011).

[17] Although allegations in a response are not the focus in a motion to dismiss, Plaintiffs' Response also fails to elucidate any specific statutory duty and only vaguely states that the defendants "had a duty under various local, state, and federal laws."  [R. 52 at 32; R. 102 at 22].

particular statute, regulation, or ordinance giving rise to a duty *owed to Plaintiffs*.  However, contrary to Defendants' arguments, facts regarding the third *Giddings* scenario have been sufficiently pled in the complaint.  Accepted as true and read together, plaintiffs' factual allegations make it reasonable to infer that Defendants disclosure of facts to state and local governmental authorities "created the false impression of full disclosure" for Plaintiffs.  While this allegation is insufficient under Kentucky law to establish a negligent misrepresentation claim, it is – at least at this stage – sufficiently plausible to establish the duty element in a fraudulent concealment claim.  *Rivermont Inn*, 113 S.W.3d 636.  The fraudulent concealment claim cannot be dismissed on this basis.

The Court turns next to Defendants' Rule 9(b) argument. "Because claims based on fraud pose 'a high risk of abusive litigation,' Rule 9(b) requires the plaintiff to 'state with particularity the circumstances constituting fraud or mistake.'" *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 569 n.14; Fed. R. Civ. P. 9(b)).  Two purposes undergird this rule.  Its "overarching purpose is to ensure that a defendant possesses sufficient information to respond to an allegation of fraud." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008) (citation omitted).  The rule also aims to "discourage 'fishing expeditions and strike suits' which appear more likely to consume a defendant's resources than to reveal evidences of wrongdoing." *Id*. at 504 (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)).

Rule 9(b)'s heightened pleading standard applies to all of the substantive elements of fraud and fraudulent concealment.  This means that a plaintiff must "(1) [] specify the allegedly fraudulent statements; (2) [] identify the speaker; (3) [] plead when and where the statements

were made; and (4) [] explain what made the statements fraudulent." *Republic Bank*, 683 F.3d at 247 (6th Cir. 2012) (citations omitted). Notwithstanding this more stringent requirement, the Sixth Circuit "reads this rule liberally," *Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993), and Rule 9(b) must be "read in conjunction with" the Rule 8. 5A Charles A. Wright, Fed. Prac. & Procedure § 1298 (3d ed.); *e.g.*, *SNAPP, Inc.*, 532 F.3d at 503 ("Rule 9(b) adds additional pleading requirements for allegations of fraud or mistake, but it should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules"); *Govaerts v. Suntec Indus. Inc*., No. 1:09-CV-147-M, 2010 WL 2178517, at *6 (W.D. Ky. May 26, 2010) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)) ("In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Rule 8 requires a 'short and plain statement of the claim,' and calls for 'simple, concise, and direct' allegations."); *Hodak v. Madison Capital Mgmt., LLC*, No. CIV.A. 5:07-5-JMH, 2007 WL 1434875, *7 (E.D. Ky. May 14, 2007) (noting, in a pre-*Iqbal* case, that "the particularity requirement of [Rule] 9(b) is to be balanced with the minimal pleading requirements of [Rule] 8."). Absolute particularity is therefore not required. Instead, "[s]o long as a [plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *SNAPP, Inc*., 532 F.3d at 504; *see also Fujisawa Pharm. Co. v. Kapoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993) ("Read together, these Rules require that the time, place and contents of fraud be plead, but the complainant need not plead evidence.").

28

Much like the negligent misrepresentation claim, the fraudulent omission claim alleges that Corning and Philips intentionally concealed and failed to disclose to the City, [Second Am. Class Action Compl., R. 108 at ¶ 50], the fact that they were illegally dumping hazardous materials, [*id.* at ¶¶ 48, 75], the amount and "nature of the substances being dumped," [*id*; *see also id.* at ¶¶ 207-08], and the "inherent dangers" and "health risks associated with utilizing the properties in question," [*id.* at ¶ 48; *see also id.* at ¶¶ 207-08].  According to Plaintiffs, Defendants misled and "perpetrated a fraud on the public" by "fraudulently . . . suppressing the true nature and extent" of their disposal practices.  [*Id.* at 78-79].  But for these omissions, Plaintiffs contend, they "would not have continued to reside or own property within the affected area." [*Id.* at ¶ 211].

These allegations set forth the type of information that was omitted with sufficient particularity so as to "provide fair notice to Defendants and enable them to 'prepare an informed pleading responsive to the specific allegations of fraud.'"  *SNAPP*, 532 F.3d at 504; *see also Govaerts*, 2010 WL 2178517 at *6 (holding that plaintiff's fraudulent concealment claim regarding a failure to disclose the existence of a contract to his employer over the course of twenty-three years' employment was sufficient to survive Rule 9(b)).  Unlike the employee's complaint in *Coffey v. Foamex*, which simply alleged that their employer had "fail[ed] to warn them of the dangers of contamination and [] maintain[ed] a hazardous work environment of which the plaintiffs were unaware," 2 F.3d at 159, Plaintiffs have given content to these alleged omissions.  Elsewhere in the complaint, they have identified the substances at issue, [Second Am. Class Action Compl., R. 108 at ¶ 41], the general health risks that can arise from exposure to those substances [*id.* at ¶ 43, 45, 141], and the potential property damage and remediation

29

requirements that can be required after migration of those substances, [*e.g.*, *id.* at 144].  At this stage in the litigation, specific technical data about the amount and nature of the hazardous substances emissions is in the hands of the Defendants, and scientific data about the medical effects of exposure is the type of information that would be ascertained in the discovery process. *Cf. Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("[C]ourts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control."); *In re Computer Assoc. Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999) (applying Rule 9(b) with more leniency where, in a corporate fraud case, the exact amounts of fraudulent earnings were "the type of information peculiarly within the defendant's control"). Notwithstanding the heightened requirements of Rule 9(b), Plaintiffs have identified with sufficient "precis[ion] what was omitted" at this pre-discovery stage.  *Republic Bank*, 683 F.3d at 256.  Their fraudulent concealment claim survives the motions to dismiss.

## I

Corning and Philips also argue that the NIED claim must be dismissed.  To state a claim for negligent infliction of emotional distress, a plaintiff must establish the basic elements of negligence: "(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury."  *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012).  In addition, a plaintiff must show that she has suffered "'serious' or 'severe' emotional injury."  *Id.* The Kentucky Supreme Court recently explained that:

> A "serious" or "severe" emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiff's everyday life or require significant treatment will not suffice.

*Id.* at 17-18.

Defendants claim that the complaint fails to allege this level of emotional distress.  While the complaint is somewhat conclusory on this point,[18] it can be reasonably inferred from the facts alleged that Plaintiffs have suffered significant emotional injury as a result of their exposure to the hazardous substances at issue here.  The severity of their harm, while plausible under the alleged facts, is a question better left for a later stage in the proceedings.  *See Osborne*, 399 S.W.3d at 17 (noting that "expert medical or scientific proof" are necessary for a plaintiff "to support the claimed injury or impairment").   The motion to dismiss this claim will be denied.

J

Finally, Defendants attack Count IX of Plaintiffs' complaint, which alleges a cause of action for "medical monitoring."  Under this theory, Plaintiffs seek continuing coverage of the costs of their medical treatments and preventive care as a result of their tortious exposure to the hazardous substances in Defendants' Facility.  The Kentucky Supreme Court has expressly rejected prospective medical monitoring as a cause of action.  *Wood*, 82 S.W.3d at 857. Kentucky allows recovery of future medical monitoring costs as a potential form of remedy for plaintiffs with physical injury in an underlying cause of action, but not as an independent cause

---

[18] The relevant portions of the complaint allege:

> Because of the action of each Defendant, the Plaintiffs currently suffer or are reasonably certain to suffer serious, severe, and permanent emotional and physical injuries including, but not limited to, cancer, autoimmune problems, respiratory problems, dermatitis, central nervous system problems and other severe medical ailments for which medical attention has been or will be required.
> . . .
> Some or all of Plaintiffs have suffered serious emotional distress proximately resulting from their significantly increased risk of developing future disease, which in turn resulted from the Defendants' negligent and reckless conduct.

[Second Am. Class Action Compl., R. 108 at ¶¶ 68, 173].

of action. *Id.*; *see also Oppenheimer v. Smith,* 512 S.W.2d 510 (Ky. 1974). Accordingly, this cause of action must be dismissed. The remedy of prospective medical monitoring may, however, be raised at the appropriate time as this case progresses.

III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

1. The Motions to Dismiss filed by Defendants Corning Incorporated [**R. 44**] and Philips Electronics North America Corporation [**R. 45**] are each **GRANTED IN PART** and **DENIED IN PART**;

2. Philips Electronics' Motion to Dismiss as to the claims raised by Plaintiff Greenleaf Plant Food Wholesale is **DENIED as moot**;

3. Plaintiff Gay Bowen's claims as against Philips Electronics are **DISMISSED WITH PREJUDICE**; and

4. Plaintiffs' claims for strict liability, negligent misrepresentation, and medical monitoring are **DISMISSED WITH PREJUDICE**.

This the 31st day of March, 2015.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**