UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

MODERN HOLDINGS, LLC, )
GAY BOWEN, GREENLEAF PLANT )
FOOD WHOLESALE, INC., and )
BOBBIE LEMONS )
)
    Plaintiffs, )    Civil No.: 13-405-GFVT
)
v. )    **MEMORANDUM OPINION**
)    **&**
CORNING INCOPORATED, )    **ORDER**
KONINKLIJKE PHILIPS, N.V., and )
PHILIPS ELECTRONICS NORTH )
AMERICA CORPORATION, )
)
    Defendants.

*** *** *** ***

The proposed class in this putative class action lawsuit alleges that Defendants Corning Incorporated and Philips Electronics North America Corporation, the successive owner-operators of a glass manufacturing facility in Danville, Kentucky, caused personal injury and property damage by disposing of hazardous chemicals and contaminating the area groundwater, air, and soil.  Corning and Philips have moved to strike the Plaintiffs' class allegations.  [R. 44; *see* R. 45-1].  For the reasons set forth below, the motion to strike will be DENIED.

I

The Court incorporates by reference the facts surrounding this case as previously set forth in a separate Memorandum Opinion at Docket Entry 110.  Additional facts relevant to the class action allegations at issue here are set forth below.

Plaintiffs are individuals[1] and corporations[2] that own property or have resided within a five-mile radius of the Danville, Kentucky glass manufacturing facility. They request, on behalf of themselves and the respective sub-classes they seek to represent, damages for personal injury, property damage, and fraud. The Second Amended Class Action Complaint[3] initially defines the class as "all persons who between 1952 and 2013 have owned property or resided within a five-mile radius of the Site." [R. 108 at ¶ 12].[4]

Corning moved to strike the proposed class allegations on the ground that they do not comport with the requirements of Rule 23(b) and Article III. [R. 44]. Philips adopts Corning's arguments. [R. 45-1 at 15].[5] No discovery has yet taken place, and this case remains at the Rule 12 stage. Plaintiffs argue in their response that it would be premature to completely strike the

---

[1] Gay Bowen and Bobbie Lemons have owned or resided on property within a five-mile radius of the Site during the relevant period, and both have been diagnosed with Multiple Sclerosis. [Second Am. Class Action Compl., R. 108 at ¶¶ 5-6]. Newly proposed plaintiffs Rosetta, Otis, and Charles Ford have similarly owned property within a five-mile radius of the Facility, and resided or continue to reside in a home partially constructed with repurposed brick from the Facility; they have also suffered personal injuries and illnesses that they allege were caused by Defendants' activities. [*Id*. at ¶¶ 3-4].

[2] Modern Holdings, LLC owns property across the street from the Facility, and Greenleaf Plant Food Wholesale, Inc. owns property adjacent to the site. Both allege property damage as a result of the discharges from the Facility. [Second Am. Class Action Compl., R. 108 at ¶¶ 1-2].

[3] The Court granted Plaintiffs' Motion for Leave to File an Amended Complaint in a separate order at Docket Entry 107. For the reasons set forth in that Order, the Court refers to the Second Amended Class Action Complaint throughout this Opinion.

[4] The complaint divides the class into four sub-classes:
   a) Individuals or legal entities who have owned property within a five-mile radius of the Site between 1952 and 1983 ("Subclass A"); b) Individuals or legal entities who have owned property within a five-mile radius of the Site between 1983 and 2013 ("Subclass B"); c) Individuals who have resided within a five-mile radius of the Site between 1952 and 1983 ("Subclass C"); and d) Individuals who have resided within a five-mile radius of the Site between 1983 and 2013 ("Subclass D").
[Second Am. Class Action Compl., R. 108 at ¶ 12].

[5] KPNV was also named as a defendant in this case and adopted Corning's arguments for this motion to strike, [R. 50-1 at 13-14], but in a separate Order, the Court dismissed KPNV from this case for lack of personal jurisdiction. [R. 109].

class allegations before discovery.

On March 13, 2015 – nine months after this motion to strike stood fully briefed and over one month after oral argument – Plaintiffs filed a "Revised Response" to Corning's Motion to Dismiss and Motion to Strike. [R. 102]. While this eleventh-hour revision is less than timely under the circumstances, *see* 5 Charles A. Wright, Federal Practice and Procedure § 1194 (3d ed.) (noting that submission of amended motions or responses is permissible, but "is particularly inappropriate after briefs have been interposed by the opposing parties, oral arguments have been heard, or other forms of reliance have been built up on the basis of the original motion"), Corning promptly submitted a reply to the revised response, [R. 103]. The Court has considered all the briefs, including these revised responsive documents.

II

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (citing *Califano* v. *Yamasaki*, 442 U.S. 682, 700-701 (1979)). In order to justify a departure from that general rule and allow a suit to go forward as a class action, seven requirements must be met. Two of these stem from Article III's standing requirements: "[(1)] an identifiable class must exist and the definition of the class must be unambiguous, and [(2)] the named representative must be a member of the class." *Pilgrim v. Universal Health Card, LLC*, 2010 U.S. Dist. LEXIS 28298, *3, 2010 WL 1254849 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011) (citations omitted). Further, the party seeking certification of a class under Rule 23(a) must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

3

> representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Finally, 'In addition to the prerequisites of Rule 23(a), a party seeking class certification must show that the class action is maintainable under Rule 23(b).'

*Id.* (citations omitted). Certification is only proper if, after a "rigorous analysis," a court finds that all the prerequisites of Rule 23 have been satisfied. *In re* Am. Med. Sys., Inc.*,* 75 F.3d 1069, 1078-79 (6th Cir. 1996) (citing *Gen. Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

Though procedurally permissible,[6] striking a plaintiff's class allegations prior to discovery and a motion for class certification is a rare remedy. *See Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir. 1974); *see, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking . . . motions of this kind are deemed procedurally premature."); *Chenensky v. New York Life Ins. Co.*, No. 07 CIV. 11504 WHP, 2011 WL 1795305, *1 (S.D.N.Y. Apr. 27, 2011) (citations omitted) ("A motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."); *Rios v. State Farm Fire & Cas. Co.*, 469 F .Supp.2d 727, 740 (S.D. Iowa 2007). The Sixth Circuit has stated that, generally, "a district court should defer decision on class certification issues and allow discovery 'if the existing record is inadequate for resolving the relevant issues.'" *Bearden v. Honeywell Int'l, Inc*., 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010) (citing *In re* Am. Med. Sys., 75 F.3d at 1086; *see*

---

[6] *E.g*., *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Schilling v. Kenton County*, 2011 U.S. Dist. LEXIS 8050, 12, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011) (citations omitted) ("Although courts generally defer ruling on class certification . . ., 'nothing in Rule 23 prevents a defendant from attempting to preemptively deny certification on the grounds that the prerequisites of Rule 23(a) and (b) can never be satisfied.'").

4

*also In re* Allstate Ins. Co. Underwriting & Rating Practices Litig., 917 F. Supp. 2d 740, 751 (M.D. Tenn. 2008) (noting that, where "there has not been class discovery . . . nor extensive briefing on class issues," it is appropriate to defer decision on contested class issues).

At this stage, "[t]he moving party has the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove [through discovery]." *Schilling*, 2011 U.S. Dist. LEXIS 8050 at *12 (citations omitted); *see also Bearden*, 720 F. Supp. 2d at 942 (providing that class allegations should be stricken prior to discovery only if "it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23"). "Before a motion to strike [class allegations] is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim[s] . . . succeed [in class action form]." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citations omitted).

A

Corning and Philips argue that the proposed class is not ascertainable for two reasons. First, they contend that the proposed class includes persons who might ultimately lack any actual injury as required by Article III. Second, they argue that the definition hinges on a "fail-safe" definition that requires a merits-based analysis before membership can be determined.

"For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting *Moore's Federal Practice* § 23.21[3]). A fail-safe class, however, bases its membership not on

5

objective criteria but on whether each member has a legally valid claim. *E.g.*, *Schilling*, 2011 U.S. Dist. LEXIS 8050 at *16 (citing *Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 U.S. Dist. LEXIS 95993, 2010 WL 3623176, *2 (E.D. Mich. Sept. 15, 2010)). Judge Hood explained the fatal flaw of a fail-safe definition in this way: "If the putative class member is in fact a member of the class, then he necessarily prevails on his claim, as class membership is also determinative of liability." *Kissling v. Ohio Cas. Ins. Co.*, No. CIV.A.5:10-22-JMH, 2010 WL 1978862, *2 (E.D. Ky. May 14, 2010). Such a definition is "inherently deficient," *Schilling*, 2011 U.S. Dist. LEXIS 8050 at *16, because it allows the kind of "'one-way intervention' which the 1966 Amendment to Rule 23 was designed to eliminate." *Kissling*, 2010 WL 1978862 at *4 (quoting *Eversole v. EMC Mortg. Corp.*, 2007 WL 1558512, *4 (E.D. Ky. 2007) (unpublished)). Moreover, a class definition is overbroad "if it 'would include members who have not suffered harm at the hands of the Defendant. . . .'" *Chaz Concrete Co., LLC v. Codell*, No. CIV A 3:03-52-KKC, 2006 WL 2453302, at *6 (E.D. Ky. Aug. 23, 2006) (citing *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001)). "A properly defined class includes only members who would have standing to bring suit in their own right." *Id.* (citations omitted).

Plaintiffs' proposed definition is – at least on its face – readily ascertainable by reference to objective criteria. The complaint defines the class as "all persons who between 1952 and 2013 have owned property or resided within a five-mile radius of the Site." [Second Am. Class Action Compl., R. 108 at ¶ 12]. But Corning and Philips argue that, in practical effect, this definition is a "fail-safe" class, because its composition hinges on whether each proposed member was "damaged by tortious conduct" or whether he or she sustained an injury caused by Defendants' activities. [Corning's Mot. Dismiss, R. 44-1 at 29-30]. In order to ensure that all members have

6

standing to bring suit in their own right, they argue, the Court will be required to engage in an individualized merits-based determination for each proposed class member on each claim.

The touchstone for striking class allegations at this stage is facial deficiency. *Schilling*, 2011 U.S. Dist. LEXIS 8050 at *12; *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (identifying the standard as whether "it is facially apparent from the pleadings that there is no ascertainable class"). As one court has noted, "[w]hen other courts have dismissed a plaintiff's [class action allegations] on the pleadings (i.e., before a motion for certification has been filed or any preliminary discovery taken place) based on ascertainability, the class definitions have been intrinsically indefinite." *Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 626 (N.D. Ala. 2013). This Court's conclusion in *Schilling*, a case cited by Defendants, is in accord with that assessment. In *Schilling*, the proposed class definition consisted of "individuals who while incarcerated were 'subjected to intentional physical and mental abuse by Defendants in violation of the Eighth Amendment . . . and the Fourteenth Amendment' and were denied 'appropriate and necessary' medical care as a 'result of Defendants' neglect and deliberate indifference.'" *Schilling*, 2011 U.S. Dist. LEXIS 8050 at *18-19. The circular fail-safe inquiry was present *on the face* of the complaint itself: the Court would have been required to determine whether each individual's constitutional rights had been violated in order to ascertain membership, and that finding would, in turn, be determinative of liability. *See also Kissling*, 2010 WL 1978862 (striking class definition because it expressly required the court to determine whether an insurer had attempted a good faith settlement – the legal question that was determinative on the issue of liability in the case). In the instant case, however, no such analysis is required on the face of the complaint or is inherent to the determination of class certification

7

here.  The inquiry into the factual question of harm or causation – however individualized it may be – is not dispositive on the issue of liability.

Other courts in this circuit have stricken class allegations on ascertainability grounds where the definition was inherently flawed.  For instance, before the trial court in *Pilgrim v. Universal Health Card, LLC*, 2010 WL 1254849 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011), the plaintiffs had proposed a class of "all persons in the United States who were charged fees by Defendants [though a health card membership]," but they conceded that 4,726 of the 30,850 consumers in that class remained unharmed by Defendants' activity.  *Id.* at *5-6.  Looking at the definition on the face of the complaint, the court noted that it could not be said that "all persons" were harmed.  *Id.*[7]  The minimal facts set forth in the pleadings demonstrated – and the plaintiffs readily conceded – that the class was "purposely" overbroad and was not ascertainable.  *Id.* at *2.

In contrast to *Pilgrim*, the facts before the Court in these pleadings make it at least plausible that all property owners within the defined geographic radius of the Facility could have been damaged by the Defendants' activities.  Defendants' criticism is well taken: In the future, the question of actual harm or causation might (or might not) become an issue in plaintiffs' class certification.  Indeed, a number of cases cited by Defendants demonstrate the difficult proof issues that arise in toxic tort cases at the class certification stage.[8]  But facts are important, and

---

[7] The issue was apparently not raised on appeal.  *See Pilgrim*, 660 F.3d 943.

[8] *E.g.*, *Thomas v. FAG Bearings Corporation*, 846 F. Supp. 1400 (W.D. Mo. 1994) (denying motion for class certification in groundwater contamination lawsuit because evidence demonstrated that proof of causation and measure of damages precluded the proposed class from sharing common questions of law or fact); *McGuire v. Int'l Paper Co.*, No. CIV.A.1:92-CV-593BRR, 1994 WL 261360, *1 (S.D. Miss. Feb. 18, 1994) (unpublished) (finding that, upon motion for class certification, proximate causation would have to be established on an individualized basis since the plaintiffs' toxic tort claims against a paper mill company covered a span of a number of years); *Brown v. Se. Pennsylvania Transp. Auth.*, No. CIV. A. 86-2229, 1987 WL 9273, *1 (E.D. Pa. Apr. 9, 1987)

8

the Court has only the pleadings before it. At this stage in the litigation, it cannot be said that it is "*impossible* to certify the class as alleged, regardless of the facts plaintiffs may be able to prove [through discovery]." *Schilling*, 2011 U.S. Dist. LEXIS 8050 at *12. More class discovery may reveal that all properties and residents within a five-mile radius have been damaged by the alleged contamination – or it may reveal that some, but not all, sustained injuries. *E.g.*, *Moore*, 294 F.R.D. 620 (upholding a two-mile radius class definition at the Rule 12 stage, but noting that discovery may demonstrate that the class definition is insufficient). Such additional evidence will likewise clarify whether, as defendants have also disputed, Article III's actual injury requirement is indeed met. Without any discovery or other detailed evidence now before the Court, however, a ruling on this ground would be premature. The motion to strike will not be granted on this basis.

B

Defendants argue that the potential for individualized questions also precludes Plaintiffs from satisfying the commonality and typicality requirements of Rule 23(a), such that the class action form is not the superior mechanism for this lawsuit. Rule 23(a) requires "questions of law or fact common to the class" that "predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(a)(2)-(3). Further, the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

---

(denying a motion for class certification for PCB property damage claims, but granting the motion as to personal injury claims); *see also Johnson v. Int'l Paper Co.*, 270 F.R.D. 640, 644 (M.D. Ala. 2010) (holding that plaintiffs' two-mile radius class definition for an environmental contamination suit failed because their experts could not say whether every home in the boundary showed signs of damages from the defendant manufacturer's activity); *Cochran v. Oxy Vinyls LP*, 2008 U.S. Dist. LEXIS 67389 (W.D. Ky. 2008) (emphasis added) (holding that plaintiffs' two-mile radius class definition failed at the class certification phase because plaintiffs had offered "*no meaningful evidence* that [contaminants from the defendant's plant] spread in a uniform fashion in all directions from Defendants' facility for a distance of up to two miles").

9

The test at this pre-discovery stage is, again, facial insufficiency. *See Pilgrim*, 660 F.3d 943. The Supreme Court's decision in *Dukes* did not change the general rule that, "ordinarily, the [class] determination should be predicated on more information than the pleadings will provide." *Weathers,* 499 F.2d at 1200. Instead, it reaffirmed it: by emphasizing the longstanding principle that class certification determination must be based on a "rigorous analysis to ensure '[a]ctual, not presumed, conformance' with Rule 23," *Dukes* "confirms that pre-certification discovery should ordinarily be available where a plaintiff has alleged a potentially viable class claim." *Burton v. D.C.*, 277 F.R.D. 224, 230 (D.D.C. 2011) (quoting *Dukes*, 131 S.Ct. at 2551); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citations omitted) ("*Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues."); *Moore*, 294 F.R.D. at 628 (stating that even after *Dukes*, the inquiry upon a motion to strike is whether the plaintiff's complaint "put the defendant on fair notice of 'potentially viable' class claims that are being brought against it").

Corning and Philips argue that individualized questions about proof of injury, damages, and tolling under the discovery rule preclude Plaintiffs, as a matter of law, from establishing commonality and typicality. But this is not a case where a commonality or typicality issue is plain from the face of the class allegation itself. At oral argument, Defendants highlighted the Sixth Circuit's opinion in *Pilgrim v. Universal Health Card, LLC*, as the central case for their motion to strike. There, the Sixth Circuit held that the *Pilgrim* plaintiffs could not establish commonality, no matter what discovery or additional time might reveal. 660 F.3d at 949. This was because the nationwide class that was proposed on the face of the complaint would

10

unavoidably require the application of the consumer-protection law of each potential class member's home state – a task that precluded commonality and rendered the class action form impracticable. *Id.* Although these deficiencies may or may not arise later in this case, no such debilitating feature is present *on the face* of the Plaintiffs' complaint.

Defendants contend that claims for nuisance, trespass, and negligence in the environmental mass tort context are "rarely appropriate for class certification." [Corning's Mot. Dismiss, R.44-1 at 39]. But nearly all of the cases cited on this point were decided on a motion for class certification, where – unlike here – an evidentiary record informed the court's decision. *E.g.*, *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) (refusing to certify an asbestos settlement class upon a motion for certification because individualized questions regarding plaintiffs' symptoms, types of illnesses, and numerous variables in medical history or habits such as smoking would complicate the causation inquiry); *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 265 (3d Cir. 2011) (affirming the trial court's denial of class certification where the plaintiffs' proposed expert opinions could not show that every class member was injured above background levels); *Ball v. Union Carbide*, 385 F.3d 713 (6th Cir. 2004) (affirming denial of class certification upon motion for certification, where plaintiffs' individualized exposure and damages questions predominated); *Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287 (W.D. Ky. 2008); *Thomas v. FAG Bearings Corporation*, 846 F. Supp. 1400; *McGuire*, 1994 WL 261360; *Brown*, 1987 WL 9273; *see also, e.g.*, *Cochran*, 2008 U.S. Dist. LEXIS 67389. These cases do not stand for the proposition that *no* plaintiff can *ever* state a claim for class-wide relief based on these common law tort theories. Instead, they hold that, based on the record or

11

proposed evidence in the record, the plaintiffs had not shown that they would meet the requirements of Rule 23.

Our sister court's decision in *Burkhead* – also cited by Defendants – higlights the importance of a record in making this determination. In that case, the Western District of Kentucky denied a motion for class certification in an environmental mass tort class action seeking damages for contamination and noxious odors emitted by a power plant. The court emphasized that the plaintiffs' request "contain[ed] a startling and near-total lack of evidence linking the fallout and/or odors about which Plaintiffs complain to the substances that [the defendant power plant] emit[ted] . . . ." *Id*. at 293. Because no expert evidence or other tests "distinguished the members of the proposed class from the general public based on the acts of [the defendant]," the proposed class was not ascertainable and, in turn, none the Rule 23 requirements could be satisfied. *Id*.; *see also Boggs v. Divested Atomic Corp*., 141 F.R.D. 58, 60 (S.D. Ohio 1991) (noting that assessing a six-mile radius class definition upon a motion for class certification "requires an examination of the plaintiffs' evidence of the dispersion of hazardous emissions"). At this stage in the present case, however, no such evidence is before this Court.

Certainly, at the motion for certification stage, many "courts have declined to certify proposed classes where '*no evidence* establishes a connection between defendants' conduct and the proposed class boundaries.'" *Burkhead*, 250 F.R.D. at 292 (emphasis added) (citing *Daigle v. Shell Oil Co*., 133 F.R.D. 600 (D. Colo. 1990); *Duffin v. Exelon Corp*., 2007 WL 845336 (N.D. Ill March 19, 2009)); *see also, e.g.*, *Cochran*, 2008 U.S. Dist. LEXIS 67389 (emphasis added) (holding that plaintiffs' two-mile radius class definition failed at the class certification phase because plaintiffs had offered "*no meaningful evidence* that [contaminants from the defendant's

12

plant] spread in a uniform fashion in all directions from Defendants' facility for a distance of up to two miles"). After discovery, Plaintiffs may or may not be able to establish such a connection in this case. With only the pleadings currently before the Court, however, resolution of the certification issue would be inappropriate at this stage.

Defendants have pointed to no authority that provides that personal injury or property damage torts cannot, as a matter of law, serve as viable class claims. To the contrary, a handful of courts have granted certification in toxic tort actions where the class definition and Rule 23 requirements are supported by the record. *E.g.*, *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 668 (S.D. Ala. 2005) (certifying a class action for air contamination claims, since the "core nucleus of common factual issues . . . is sufficient to satisfy the commonality requirements, irrespective countervailing individual issues," but declining to certify claims for water contamination); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 383 (D. Colo. 1993) (holding that, in a toxic tort suit against a federal weapons production facility, "for purposes of this class action motion, there is preliminary evidence that radioactive and non-radioactive materials have left [the defendant's facility]"); *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 645 (N.D. Cal. 1987) (certifying class action for personal injury claims arising from dioxin contamination and noting that, though injury and causation may present problems, those problems could be remedied by severing those parties for whom causation cannot be proved). In this case as well, discovery may (or may not) reveal that at least some of Plaintiffs' claims can satisfy the requirements of Rule 23.

In light of the Sixth Circuit's admonition to defer the certification determination until after discovery, *In re Am. Med. Sys.*, 75 F.3d at 1086, as well as the Supreme Court's instruction that a class certification should be subjected to a "rigorous," fact-sensitive review, *Dukes*, 131 S. Ct. at

13

2552 (citing *Gen. Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982)),[9] it is appropriate to decline to strike Plaintiffs' class allegations at this time. Accordingly, Defendants' motion to strike Plaintiffs' class allegations will be denied at this stage. Resolution of this issue is deferred until Plaintiffs' motion for class certification and after class discovery has taken place. The Court takes no position on the merits of such a motion at this time.

### III

Accordingly, it is hereby **ORDERED** as follows:

1. Corning's Motion to Strike the Class Allegations **[R. 44]** is **DENIED**; and

2. Philips Electronics adopted and incorporated by reference Corning's arguments on this issue in its Motion to Dismiss for Failure to State a Claim. **[R. 45]**. That motion is **DENIED** to the extent it relates to the motion to strike the class action allegations.

This the 31st day of March, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

[9] *See also Dukes*, 131 S. Ct. at 2551-52 (citations omitted) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'").