UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

MODERN HOLDINGS, LLC,　　　　　　　　　　)
GAY BOWEN, GREENLEAF PLANT　　　　　　　)
FOOD WHOLESALE, INC.,　　　　　　　　　　)
BOBBIE LEMONS, OTIS FORD,　　　　　　　　)
CHARLES FORD, ROSETTA FORD,　　　　　　　)
and GARY FORD,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)   Civil No.: 13-405-GFVT
　　　Plaintiffs,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　)   **MEMORANDUM OPINION**
　　　　　　　　　　　　　　　　　　　　　)   **&**
CORNING INCOPORATED and　　　　　　　　　)   **ORDER**
PHILIPS ELECTRONICS NORTH　　　　　　　　)
AMERICA CORPORATION,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　Defendants.

*** *** *** ***

In a Memorandum Opinion and Order issued on March 31, 2015, this Court granted in part and denied in part a motion to dismiss filed by Defendants Corning Incorporated and Philips Electronics North America in this environmental mass tort lawsuit. [R. 110]. Specifically, the Court dismissed the Plaintiffs' strict liability and negligent misrepresentation claims for failure to state a claim under Kentucky law. [*Id.*] Plaintiffs now move for the entry of finality language as to the dismissal of those claims so that they might file an immediate appeal pursuant to Rule 54(b). [R. 115]. For the reasons discussed below, the motion will be DENIED.

I

The general facts underlying this litigation have been outlined by the Court on several occasions. Defendants Corning and Philips are the former successive owners and operators of the Danville, Kentucky glass manufacturing facility that is the focus of this action. Plaintiffs, residents and landowners in the area, allege that Defendants intentionally or negligently emitted

and disposed of hazardous chemicals during the sixty years of the facility's operation, polluting the groundwater, air, and soil within a five-mile radius. That contamination, they allege, caused personal injury, including illnesses such as Multiple Sclerosis, as well as property damage.

As this Court noted in its March 31, 2015 Memorandum Opinion, the claims in Plaintiffs' Second Amended Class Action Complaint[1] can be grouped into three categories. [R. 115 at 3]. First, in their claims for negligence, gross negligence, recklessness, and negligent infliction of emotional distress, Plaintiffs "allege that toxic exposure has caused them physical and emotional injury, including cancer, autoimmune deficiencies, respiratory problems, dermatitis, and central nervous system problems." [R. 115 at 3]. Their property tort claims for nuisance, trespass, battery, and strict liability alleged that their property has been damaged, resulting in diminution in property values, loss of the use and enjoyment or their property, loss of the use of their groundwater, and damaging "stigma associated with being located in the vicinity of the site." [*Id.* (citing Second Am. Class Action Compl., R. 108 at ¶ 70)]. Relevant here, in their strict liability claim, Plaintiffs alleged that Defendants' use, disposal, and resulting emission of hazardous substances in the course of their manufacturing activities constituted an "ultra-hazardous" activity, such that Defendants were strictly liable for the personal injury and property damage they suffered. [*E.g.*, Second Am. Class Action Compl., R. 108 at ¶ 199].

Finally, in their fraudulent concealment and negligent misrepresentation claims, Plaintiffs alleged that the Defendants failed to inform state and federal regulatory agencies of the fact that (according to Plaintiffs) they were illegally dumping hazardous materials, [Second Am. Class

---

[1] Pursuant to this Court's Order, the Plaintiffs have since filed a Third Amended Class Action Complaint. [R. 116]. The Defendants' Motions to Dismiss, however, were directed at the First and Second Amended Class Action Complaints. [*See* R. 107].

2

Action Compl., R. 108 at ¶¶ 48, 75], the amount and "nature of the substances being dumped," [*id*; *see also id.* at ¶¶ 207-08], and the "inherent dangers" and "health risks associated with utilizing the properties in question," [*id.* at ¶ 48; *see also id.* at ¶¶ 207-08]. This omission, Plaintiffs alleged, created a false impression of full disclosure (their fraudulent concealment claim, [*id.*, R. 108 at ¶ 50]) and supplied false information both directly or indirectly to the Plaintiffs, who relied on those representations when they decided to purchase or continue to reside on and/or own their properties in the Danville area (their negligent misrepresentation claim, [*id.*, R. 108 at 53-54]).

Defendants Corning and Philips moved to dismiss the Second Amended Class Action Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [R. 44, 45]. In a Memorandum Opinion and Order issued March 31, 2015, this Court granted that motion in part and, in pertinent part, dismissed Plaintiffs' strict liability and the negligent misrepresentation claims. [R. 115]. As to the strict liability claim, the Court determined that the Kentucky Supreme Court would decline to extend the doctrine of strict liability for ultra-hazardous activities to include the use, disposal, and resulting emission of hazardous substances in the course of manufacturing activities like those of the Defendants, and it dismissed the claim. [R. 115 at 13-20]. The Court dismissed the negligent misrepresentation claim since Plaintiffs' complaint failed to establish a sufficiently direct business or contractual relationship as required under Kentucky law. [R. 115 at 22-25]. With the exception of the "medical monitoring" claim, the remainder of Plaintiffs' claims survived dismissal. [R. 115].

Shortly afterward, on April 9, 2015, Plaintiffs filed the instant motion. They request that the March 31, 2015 Opinion be certified under Federal Rule of Civil Procedure 54(b) as a final

3

and appealable order. [R. 115].

II

Generally, a party must await the ultimate disposition of a case before seeking appellate review. Federal Rule of Civil Procedure 54(b), however, "permits immediate review of certain district court orders prior to the ultimate disposition of a case." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994) (citing *Curtiss-Wright Corp. v. Gen. Electric Co.*, 446 U.S. 1, 3 (1980)). "Although Rule 54(b) relaxes the traditional finality requirement for appellate review, it does not tolerate immediate appeal of every action taken by a district court." *Id.* "Rather, the rule 'attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties.'" *Lowery v. Fed. Exp. Corp.*, 426 F.3d 817, 820 (6th Cir. 2005) (quoting *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986)).

Two prerequisites must be met to justify a Rule 54(b) certification. First, the court must "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" in the case. Fed. R. Civ. P. 54(b). Second, the court must "expressly determine[] that there is no just reason for delay." *Id.*

A

In order to satisfy the first prong,

> [a] district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

*Gen. Acquisition*, 23 F.3d at 1027 (quoting *Curtiss-Wright*, 446 U.S. at 8). For purposes of Rule 54(b), the term "claim" "denotes 'the aggregate of operative facts which give rise to a right

4

enforceable in the courts.'" *Id.* at 1028 (6th Cir. 1994) (citations omitted) (quoting *McIntyre v. First Nat'l Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir. 1978)).  Under this prong, then, a court must find that all factually-related causes of action have been adjudicated to a final judgment.

Two causes of action need not share the same legal elements to arise from the same aggregate of operative fact and constitute a "claim" for Rule 54(b) purposes.  For instance, in *Lowery v. Federal Express Corp.*, the Sixth Circuit determined that a summary judgment order finally adjudicating the plaintiff's Title VII retaliation cause of action did not entirely resolve "an individual claim in a multiple claims action" for Rule 54(b) purposes because a related breach of contract claim remained unresolved.  *Lowery*, 426 F.3d at 821.  The contract underlying that claim contained a promise that the plaintiff would not be retaliated against for filing a grievance.  When the defendant-employer subsequently retaliated, that conduct not only formed the basis for a Title VII claim, but also gave rise to her breach of contract claim.  The two causes of action thus "arose out of the same aggregate of operative facts and [sought] to recover for the same underlying injury." *Id.  Compare, e.g.*, *McIntyre*, 585 F.2d at 191-92 (no adjudication of entire "claim" where plaintiff had alleged state and federal causes of action arising out of the same facts, and the district court entered final judgment only as to liability on the federal claims, while the bifurcated state claims and damages determinations remained pending), *with, e.g.*, *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 442-43 (6th Cir. 2004) (Rule 54(b) certification was proper where a CERCLA claim and a breach-of-contract claim arose out of entirely separate facts relating to two different manufacturing and waste management facilities).

The same is true of Plaintiffs' strict liability and negligent misrepresentation claims.

First, as reflected in the March 31, 2015 Memorandum Opinion and Order, the strict liability claim can be grouped with, and arises from, the same aggregate of operative fact as Plaintiffs' existing property and personal injury claims.  [*See* R. 115 at 3].  All of those claims are based on the alleged dumping and emission of hazardous substances from the facility, and all of those claims seek to recover damages for personal injury and property damage.  [*Compare* Second Am. Class Action Compl., R. 108 at ¶ 199 *with, e.g*., *id.* at ¶¶ 172-74, 180-82].  Similarly, the negligent misrepresentation claim stems from the same set of facts that give rise to the pending fraudulent concealment claim:  Both claims allege that Defendants "failed in their statutory duties to inform state and/or federal regulatory agencies" of their alleged illegal disposal activities.  [*Id*. at ¶ 58]; *see also id*. at ¶¶ 67-69, 79-80, 207-08].  Indeed, as Defendant Philips points out, Plaintiffs concede these core factual similarities between the claims in their briefs.  [Pl.'s Reply, R. 121 at 4 ("[T]he [strict liability and negligent misrepresentation] claims are factually connected to the claims remaining before the Court . . . .")].  Because both the strict liability claim and the negligent misrepresentation share the same aggregate of operative fact as the claims that remain pending before this Court, it cannot be said that all of the factually-related causes of action have been adjudicated to a final judgment.  The Court has not yet reached "an ultimate disposition of an individual 'claim' entered in the course of a multiple claims action" that would satisfy this prong of Rule 54(b), and certification would be improper.  *Curtiss-Wright*, 446 U.S. at 8 (internal quotation marks added).

                                            B

Even if the strict liability and negligent misrepresentation claims were separate "claims" for purposes of Rule 54(b), a careful balance of the "judicial administrate interests as well as the

equities involved" does not lead to the conclusion that there is "no just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. Under this prong, the court must "determine whether the needs of the parties outweigh the efficiency of having one appeal at the conclusion of the case in its entirety, and it must spell out its reasons for concluding that prompt review is preferable." *Lowery*, 426 F.3d 817, 822 (6th Cir. 2005) (internal quotation marks omitted) (citing *GenCorp*, 390 F.3d at 442). The Sixth Circuit has identified a number of non-exhaustive factors to aid in this determination:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Id.* 3 F.3d at 1030 (citing *Corrosioneering, Inc. v. Thyssen Env'l Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986); *Solomon*, 782 F.2d at 61 n. 2; *Day v. NLO, Inc.*, 3 F.3d 153, 155 (6th Cir. 1993)). In this balancing test, the court is also guided by the policy behind Rule 54(b): "By limiting interlocutory appeals under Rule 54(b) to 'infrequent harsh case[s],'. . . courts can alleviate hardship resulting from unnecessary delay without undermining 'the historic federal policy against piecemeal appeals.'" *Gen. Acquisition*, 23 F.3d at 1027 (quoting *Rudd Constr. Equip. Co., Inc. v. Home Ins. Co.,* 711 F.2d 54, 56 (6th Cir.1983); *Curtiss-Wright,* 446 U.S. at 8).

The Court has already determined that the dismissed strict liability and negligent misrepresentation claims and the remaining unadjudicated tort claims arise from the same aggregate of operative fact. The interests of judicial economy favor "delaying appeal until all the issues can be confronted by [the appellate court] in a unified package," particularly where – as

here – "the adjudicated and pending claims are closely related and stem from essentially the same factual allegations." *Solomon*, 782 F.2d at 62.

Given these overlapping facts, there is also a significant risk that future developments in this proceeding may require an appellate court to either "revisit the same fact under a different theory in a second appeal," *Lowery*, 426 F.3d at 823, or risk issuing an advisory opinion, *Justice v. Pendleton Apartments*, 40 F.3d 139, 142 (6th Cir. 1994). For instance, as Defendant Philips points out, Plaintiffs have not yet shown proof of harm and damages for the remaining claims in this action, and it is possible that the trier of fact may find that the Plaintiffs have not been injured. In that case, "no damages issue would remain and any decision rendered [by the appellate court] [as to the merits of the strict liability and negligent misrepresentation claims] would be an advisory opinion." *Justice*, 40 F.3d at 142. Moreover, the Sixth Circuit has noted that "[t]he potential for mootness takes on even greater weight in the 54(b) balance when the question [it] may never have to address presents sophisticated and unprecedented questions of state law." *Gen. Acquisition*, 23 F.3d at 1031. The strict liability issue here, in particular, presented an unprecedented question of state law that, under principles of judicial restraint, the appellate court might otherwise opt to avoid if resolution of other issues raised in an appeal of a final judgment of the pending claims would be dispositive. *See id.*

Plaintiffs suggest that because a strict liability claim involves a relatively straightforward burden of proof, and because the dismissal of their claims turned entirely on questions of law rather than factual issues, an immediate appellate decision in their favor will significantly simplify the trial of the remaining claims before this Court.[2] While it is true that those pragmatic

---

[2] In their initial motion, Plaintiffs suggested that without certification, the more substantial burden of proof associated with the remaining claims would leave them "irreparably harmed." [Pl.'s Mot. Requesting Finality

considerations may shorten the proceedings here, the more significant considerations of judicial economy weigh strongly against certification.  Because "'similarity of legal or factual issues [among the dismissed and unadjudicated claims] weigh[s] heavily against entry of judgment' under Rule 54(b)," *Justice*, 40 F.3d at 142 (citing *Solomon,* 782 F.2d at 62)), and because an immediate appeal risks both an advisory opinion and an inefficient piecemeal appeal, *see Gen. Acquisition*, 23 F.3d at 1027, the Court concludes that certification is unwarranted in this case.

III

Accordingly, for the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion Requesting Finality Language [R. 115] is **DENIED**.

This the 11th day of September, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

Language, R. 115-1 at 5].  After Corning challenged that characterization in its Response, [R. 117 at 4], Plaintiffs did not raise the issue in those terms again in their Reply.  To the extent Plaintiffs claim that they are irreparably harmed by the "ongoing and inherently dangerous [activity conducted by Defendants] over the span of many years," [Pl.'s Reply, R. 121 at 4], that reality is faced by plaintiffs in any action of this type.  This Court has already determined that they were not entitled to a temporary restraining order or preliminary injunction, [R. 23].  Finally, even though an immediate appeal will not be permitted, any harm they might suffer is not without a remedy in the form of an appeal after a final judgment in this matter.