UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:13-cv-405-GFVT

MODERN HOLDINGS, LLC, et al.,                                              PLAINTIFFS,

v.                                **MAGISTRATE JUDGE'S
                                    REPORT AND RECOMMENDATION
                                    and ORDER**

CORNING, INC., et al.,                                                     DEFENDANTS.

*******

INTRODUCTION

Previously, this Court granted Defendants' Motion for Entry of a Lone Pine Order[1], [R. 146], and entered a Case Management Order, [R. 147], which set forth Plaintiffs' terms of compliance as required under the Lone Pine Order. Regarding their specific personal injury and/or property claims, each Plaintiff was required to submit an affidavit from a qualified expert, setting forth to a reasonable degree of scientific certainty some evidence to support their allegations (the specific requirements of the Lone Pine Order are provided *infra* at 3–4). [R. 147 at 1]. The Case Management Order also stayed all discovery in this matter, pending a case management conference, which would be held once the Court had reviewed Plaintiffs' compliance with the Lone Pine terms and requirements. [Id.]. On February 2, 2016, Plaintiffs collectively submitted a total of eight affidavits pursuant to the Lone Pine Order requirements.

---

[1] Designed to handle complex issues and reduce burdens on the parties and courts involved in mass tort litigation cases, Lone Pine Orders are granted to eliminate frivolous claims, manage complex issues, and lessen the burdens of

1

See [Rs. 176–183].

Pursuant to 28 U.S.C. § 636(b)(1)(B), this matter has been referred to the undersigned to prepare and submit proposed findings of fact and recommendations on any pending dispositive motions. [R. 200]. For reasons set forth below, the undersigned hereby recommends that Plaintiffs' Motion for Case Management Conference be GRANTED, upon determining that their affidavits sufficiently comply with the requirements set forth in the Court's Lone Pine and Case Management Orders. See [Rs. 146, 147].

## ANALYSIS

"The basic purpose of a Lone Pine order is to identify and cull potentially meritless claims and streamline litigation in complex cases. In re: Vioxx Prods. Liab. Litig., 557 F. Supp. 2d 741, 743 (E.D. La. 2008). Plaintiffs are only required to provide "some evidence to support a credible claim." Kamuck v. Shell Energy Holdings GP, LLC, 2012 U.S. Dist. LEXIS 125566, at *2–3 n.1 (M.D. Pa. Sept. 5, 2012).

Pursuant to the Court's Case Management Order, [R. 147], each Plaintiff was specifically required to submit the following:

(1) With respect to the personal injury claims being asserted by the plaintiffs, each plaintiff shall provide, within 60 days from the date this Order is signed, an affidavit from a qualified expert or experts which sets forth, to a reasonable degree of scientific certainty, the following:
 (a) For each plaintiff, the specific illness allegedly sustained. (A general, vague description such as "cancer" will not suffice. The exact type of illness must be identified.)
 (b) For each plaintiff, the date the identified illness was diagnosed, including the name and address of the medical care provider who made the diagnosis;

---

such complex litigation. See generally Lore v. Lone Pine, L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Div. Nov. 18, 1986); Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000)

      (c) For each plaintiff, the toxic chemical which allegedly caused the identified illness, supported by an explanation of the manner of exposure, the exposure pathway, the date(s) of exposure, the duration of exposure, and the dose of exposure; and

      (d) Citation to the scientific literature supporting any claim that any plaintiff's illness was caused by the described exposure to the identified toxic chemical.

(2) With respect to the property damage claims asserted, each plaintiff shall provide, within 60 days from the date this Order is signed, an affidavit from a qualified expert or experts which sets forth, to a reasonable degree of professional certainty, the following:

      (a) For each plaintiff, the property address, including tax block and lot number, for the property alleged to have declined in value;

      (b) For each plaintiff, the property address, including tax block and lot number, for the property alleged to have been contaminated, including a description of any alleged contaminant, the location on the property on which it was found, and the date on which any such contaminant was found on the property at issue; and

      (c) For each plaintiff, the degree of diminution in value for the property alleged to have so declined, including the time-frame in which such diminution allegedly occurred.

[Id. at 1–2].

      Plaintiffs have submitted a total of eight expert affidavits; six of these submissions are specific to the six named Plaintiffs Modern Holdings, Bobbie Lemons, Rosetta Ford, Gary Ford, Otis Ford, and Charles Ford, respectively [Rs. 176–181], while the last two constitute separate affidavits from two non-parties, real estate broker Aubrey Edwards and contamination analyst Maurice A. Lloyd, respectively [Rs. 182, 183]. Ms. Edwards and Mr. Lloyd's affidavits, while not required by the terms of the Lone Pine Order, were included to offer their more general opinions as to what contaminants allegedly damaged Plaintiffs' properties, how they were allegedly damaged, and how the values of these properties were allegedly diminished. See, e.g., [R. 182 at 2, 4–5]; [R. 183 at 2–7, 10, 12–15]; [R. 183-1 at 7–17]. Plaintiffs Greenleaf Plantfood Wholesale, Inc. and Gay Bowen failed to submit Lone Pine affidavits.

      The affidavits submitted by Modern Holdings, Bobbie Lemons, Rosetta Ford, Gary Ford, Otis Ford, and Charles Ford satisfy the Court's requirements as they pertain to these Plaintiffs'

property claims, and also to the personal injury claims brought by Bobbie Lemons, Rosetta Ford, Gary Ford, Otis Ford, and Charles Ford. To illustrate, the 84-page affidavit submitted by Bobbie Lemons, a named Plaintiff who has alleged both property damage and personal injury due to exposure to Defendant's nearby facility, includes the specific illness allegedly sustained, [R. 177-2 at 1–4], when the identified illness was diagnosed and who made the diagnosis, [R. 177-2 at 1–4, 18], the chemical which allegedly caused the illness, [R. 177-2 at 4], supporting scientific literature, [R. 177-2 at 5], the property address (including tax block and lot number) for the property alleged to have declined in value, [Rs. 177 at 1, 177-1 at 1–2, 177-5 at 30–36], the property address (including tax block and lot number) for the property alleged to have been contaminated (including the contaminant's description, location, and date of contamination), [Rs. 177 at 1, 177-3 at 2–6], and the degree of diminution in value for the property alleged to have so declined, [R. 177-5 at 2, 4, 27]. Though Ms. Lemons is just one of the Plaintiffs who were required to provide affidavits to support their property or injury claims, each of the submitted Lone Pine affidavits provides the same degree of detail. See generally [Rs. 176–183].

Defendants have moved to strike the affidavits as insufficient; for example, Defendants contend that Plaintiffs failed to provide "a diagnosis of a disease alleged in the Complaint," an "explanation of the dose (*i.e.*, amount) of [] specific chemical[s]" ingested over a specific period of time, and any literature supporting the prima facie general causation element of Plaintiffs' claims. [R. 194 at 4–5]. However, based upon Ms. Lemons' affidavit, the Court is able to ascertain that: (1) she was diagnosed with multiple sclerosis, as addressed in the third amended complaint, [R. 116 at 5], as well as balance disorder and cognitive loss, [R. 177-2 at 1]; (2) specifically, "lead, arsenic and/or trichloroethylene" allegedly caused or worsened her

4

"neurological dysfunction of gaze, executive functioning and spatial processing," [R. 177-2 at 4]; (3) Ms. Lemons has lived in Danville since 1968, and was allegedly exposed to metals and toxins in the years since, through the air, water and soil, as her property's soil sample contained a lead concentration of 251 mg/kg and an arsenic concentration of 11.1 mg/kg (allegedly beyond Kentucky's 30 mg/kg mean concentration for lead and 8.9 mg/kg), [R. 177-3 at 3]; and (4) Dr. Changaris has provided a number of literary references, [R. 177-2 at 5], which address the causal link between arsenic and lead exposure and neuropsychological effects. Contrary to Defendants' objection, Plaintiffs' affidavits have provided the required information.

Defendants' additional objections in their Motion to Strike, [R. 189], are predominantly based upon criticisms of Plaintiffs' experts' credibility and the value of their opinions. For example, Defendants argue that Plaintiffs have submitted "junk science from unqualified experts," [R. 189-1 at 6], contending that Mr. Lloyd conducted a "superficial analysis" and did not offer "to a reasonable degree of scientific certainty" the finding that substances possibly migrated from Defendants' plant. [R. 189-1 at 7]. Defendants further argue that Mr. Lloyd incorrectly used "mean background" to measure risk or dose, [id. at 10], and argue that his data reveals remediation of Plaintiffs' property is entirely unnecessary. [Id. at 12].

Likewise, for the personal injury affidavits of Bobbie Lemons, Rosetta Ford, Gary Ford, Otis Ford, and Charles Ford, Defendants note that, "[i]nstead of retaining a doctor with a background in toxicology or epidemiology, Plaintiffs offer the statements of David Changaris, a physician in Louisville who typically testifies in cases automobile accidents and premises liability." [R. 189-1 at 14]. Defendants find Dr. Changaris's opinions to be "deeply flawed and completely lacking in scientific methodology." [Id. at 14]. In efforts to illustrate the

5

"deficiencies in Changaris's cookie-cutter opinions," [id. at 16], Defendants have submitted their own expert affidavits to rebut Plaintiffs' expert affidavits. See [Rs. 189-5, 189-6, 189-7]. Defendants argue Plaintiffs' doctor's "impressions" fail to comply with the Lone Pine order, because they fail to specify each Plaintiff's amount, date, duration of exposure, and route of ingestion, offer no opinions on issues of general or specific causation, and fail to diagnose the Plaintiffs with a specific disease. [R. 189-1 at 4]. Yet, as illustrated above by Bobbie Lemon's affidavit, this is not the case.

Defendants' objections focus on the reliability and credibility of the experts and seek to transform the pre-discovery issue into a dispositive one. Defendants seek to rebut Plaintiffs' experts with their own experts, and undermine the reliability of these experts' opinions, but such evidentiary and Daubert-based arguments are improper at this phase of the litigation, especially where discovery is currently stayed. Plaintiffs are only required to provide "some evidence to support a credible claim," Kamuck, 2012 U.S. Dist. LEXIS 125566, at *2–3, which they have done.

Defendants cite to a number of cases to support the contention that the affidavits are lacking in quality, but the Court finds these cases distinguishable. For example, in Adams v. Cooper Indus., No. 03-476-JBC, 2007 U.S. Dist. LEXIS 55131, at *13 (E.D. Ky. July 30, 2007), the expert reports at issue were rendered after full reciprocal discovery had been completed, and were challenged on evidentiary and Daubert grounds. Id. Here, the circumstances are very different where Plaintiffs have not yet had the benefits of reciprocal discovery. See [R. 205 at 2–3]. In Acuna v. Brown & Root Inc., 200 F.3d 335, 338 (5th Cir. 2000), plaintiffs submitted form affidavits from a single expert which were deemed insufficient; the Acuna Court explained:

6

> Each plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries. See Beanal v. Freeport–McMoran, Inc., 197 F.3d 161, 165 (5th Cir.) (plaintiff's complaint is insufficient where it is devoid of "names, dates, locations, times, or any facts that would put [defendant] on notice as to what conduct supports ... his claims"). The affidavits supplied by plaintiffs did not provide this information.

Acuna, 200 F.3d at 340. Unlike Acuna, Plaintiffs have provided this degree of specificity in the present case. Finally, the court in Avila v. Willits Environmental Remediation Trust concluded that a medical expert's prima facie opinions were insufficient where the expert "lacked scientific expertise to state that burning activities could or did result in the creation of toxicologically significant amounts of dioxins," because "there was no actual evidence that dioxins have been present at the site." Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 837 (9th Cir. 2011). Unlike Avila, then, actual evidence exists in this case to indicate the presence of heavy metals and toxins in the soil. Further, even Avila underscored the guiding principle that district judges have broad discretion to manage discovery and control the course of litigation under Fed. R. Civ. P. 16. Id. at 340.

The Court is satisfied with the responses provided and degree of detail and specificity set forth in Plaintiffs Modern Holdings, Bobbie Lemons, Rosetta Ford, Gary Ford, Otis Ford, and Charles Ford's Lone Pine affidavits. Though Defendants raise numerous objections, they are generally premature where they require the Court to make credibility determinations before discovery has even begun, effectively seeking a mini-trial on the issue of whether Plaintiffs' affidavits complied with the Lone Pine Order. The Court will not allow any such mini-trial to develop, where Plaintiffs' affidavits adequately set forth their prima facie claims, and where the

entire purpose of a Lone Pine Order is to manage complex issues and lessen the burdens of complex litigation.

However, while the Court is satisfied with those affidavits submitted on behalf of Plaintiffs Modern Holdings, Bobbie Lemons, Rosetta Ford, Gary Ford, Otis Ford, and Charles Ford, the Court will recommend Greenleaf Plantfood Wholesale, Inc. ("Greenleaf") and Gay Bowen ("Bowen") be dismissed from the suit.  The Court previously required that all Plaintiffs submit Lone Pine affidavits to illustrate their prima facie claims, [Rs. 146, 147], and where Bowen and Greenleaf have not, these Plaintiffs should be dismissed.

Having recommended dismissal of Bowen and Greenleaf, the Court will also grant Plaintiffs' Motion for Leave to File Fourth Amended Complaint, [R. 184], which seeks leave to amend the Third Amended Complaint by removing Greenleaf and Bowen from the named plaintiffs, and substituting Sellers and Sellers Company ("Sellers") as a newly-named plaintiff. Fed. R. Civ. P. 15(a) establishes that any pre-trial amendment, not made as a matter of course, may be permitted only with the opposing party's written consent or the court's leave, which the court should freely give "when justice so requires." Id.  Generally, the Sixth Circuit is "very liberal" in permitting amendments. United States ex rel American Textile Mfrs. Inst., Inc. v. The Limited. Inc., 179 F.R.D. 541, 550 (S.D. Ohio 1998), aff'd. 190 F.3d 729 (6th Cir. 1999) (citing Northwestern Nat'l Ins. Co. of Milwaukee v. Joslyn, 53 F.3d 331, 1995 WL 270995 *6 (6th Cir. 1995); see also Barnes, 473 F. Supp. 2d at 800.

By allowing the amendment, the burdens to Defendants are minimal at this juncture; Plaintiffs' motion is not untimely, where the Court previously established that it would "enter a subsequent Scheduling Order establishing deadlines for . . . amending pleadings . . . at the Case

Management Conference," [R. 166], which has yet to be scheduled. Plaintiffs' Fourth Amended Complaint also does not add new causes of action or alter the nature of the suit. [R. 184-2 at 8]. Importantly, there will be no added substantial delay in permitting Sellers' addition as a named plaintiff, because Plaintiffs Sellers' Lone Pine submissions have already been provided for the Court's consideration. See [R. 183 at 7–8]; [R. 183-5]; [R. 184-2 at 8–9]. Where Sellers' only alleges property damage, and where the Court is satisfied with the detail and specificity of Sellers' Lone Pine submissions as they pertain to property claims, Sellers also has satisfied the Court's Lone Pine requirements and will be permitted to join as a substitute Plaintiff. Having considered the matter fully, and being otherwise sufficiently advised,

IT IS ORDERED that Plaintiffs' Motion for Leave to File Fourth Amended Complaint [R. 184] is GRANTED. Further, IT IS RECOMMENDED that:

(1) Plaintiff's Motion for Case Management Conference, [R. 185], be GRANTED, and the parties be ordered to attend a CASE MANAGEMENT CONFERENCE before the District Judge, with the date and time of the conference to be determined by the District Court in a subsequent order; and

(2) Defendants' Motion to Strike Affidavits and Dismiss All Claims, [R. 189], be DENIED;

(3) Plaintiffs Greenleaf Plantfood Wholesale, Inc. and Gay Bowen be DISMISSED WITH PREJUDICE.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve

the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004).  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

Signed July 12, 2016.

Signed By:
Edward B. Atkins   *EBA*
United States Magistrate Judge