UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| MODERN HOLDINGS, LLC, et al., ) | |
| ) | Civil No.: 13-405-GFVT |
| Plaintiffs, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| CORNING INC., et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants seek dismissal of the above-styled action on the basis that Plaintiffs failed to properly comply with Magistrate Judge Edward B. Atkins's *Lone Pine* case management order. The pre-discovery order, imposed to facilitate the parties' complex tort litigation, requires Plaintiffs to submit affidavits detailing certain information about their personal injury and property damage claims. After carefully considering Plaintiffs' *Lone Pine* submissions, the requirements of Judge Atkins's order, and relevant case law, the Court finds the affidavits sufficient and DENIES Defendants' motion to strike.

**I**

The Plaintiffs in this case are comprised of one company and a class of individuals who all own property and/or reside near a glass manufacturing facility in Danville, Kentucky. The Defendants include Corning, Inc., which owned and operated the glass manufacturing facility from 1952 to 1983, and Philips North America, which owned and operated the site between 1983 and 2013. [*See* R. 211 at 2.] Plaintiffs claim they have suffered various health problems and damage to their properties due to the release or dispersion of hazardous materials from the glass manufacturing facility. Accordingly, Plaintiffs bring numerous tort claims against the

Defendants including nuisance, trespass, and negligence. [*See* R. 211 at 63-78.]

The lengthy procedural history of this action, which was originally filed in November 2013, is discussed in greater detail in previously issued Court orders. [*See, e.g.*, R. 160 at 1-2.] For purposes of this opinion, the Court focuses on the case management order entered by United States Magistrate Judge Edward B. Atkins, as well as Plaintiffs' purported compliance with that order. [*See* R. 147.]

Magistrate Judge Atkins, tasked with facilitating discovery in this action, imposed a *Lone Pine* case management order on September 28, 2015.[1]  [*Id.*]  This Court upheld the imposition of the *Lone Pine* order over Plaintiffs' objections [R. 160], and since that time, Plaintiffs have been compiling the information needed to comply with the order's directives. The order required Plaintiffs to submit affidavits detailing the following information by a certain date, or risk dismissal of the case:

> (1) With respect to the personal injury claims being asserted by the plaintiffs, each plaintiff shall provide, within 60 days from the date this Order is signed, an affidavit from a qualified expert or experts which sets forth, to a reasonable degree of scientific certainty, the following:
>
> (a) For each plaintiff, the specific illness allegedly sustained. (A general, vague description such as "cancer" will not suffice. The exact type of illness must be identified."
>
> (b) For each plaintiff, the date the identified illness was diagnosed, including the name and address of the medical care provider who made the diagnosis;
>
> (c) For each plaintiff, the toxic chemical which allegedly caused the identified illness, supported by an explanation of the manner of exposure, the exposure pathway, the date(s) of exposure, the duration of exposure, and the dose of exposure; and

---

[1] *Lone Pine* orders, so called for the 1986 *Lore v. Lone Pine* case, 1986 WL 637507, No. L-33606-85 (N.J. Super. Ct. 1986), are pre-discovery orders designed to ease the complex issues and burdens on defendants and the court in mass tort lawsuits. In the federal system, these orders are issued "under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. Pro. 16." *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

    (d) Citation to the scientific literature supporting any claim that any plaintiff's illness was caused by the described exposure to the identified toxic chemical.

(2) With respect to the property damage claims asserted, each plaintiff shall provide, within 60 days from the date this Order is signed, an affidavit from a qualified expert or experts which sets forth, to a reasonable degree of professional certainty, the following:

    (a) For each plaintiff, the property address, including tax block and lot number, for the property alleged to have declined in value;

    (b) For each plaintiff, the property address, including tax block and lot number, for the property alleged to have been contaminated, including a description of any alleged contaminant, the location on the property on which it was found, and the date on which any such contaminant was found on the property at issue; and

    (c) For each plaintiff, the degree of diminution in value for the property alleged to have so declined, including the time-frame in which such diminution allegedly occurred.

[R. 147 at 1-2.]

After being given additional time to comply with the *Lone Pine* order, Plaintiffs filed several affidavits on February 2, 2016 [R. 176; R. 177; R. 178; R. 179; R. 180; R. 181; R. 182; R. 183], as well as a motion for leave to file a fourth amended complaint [R. 184] and a motion for a case management conference. [R. 185.] As grounds for their motion for leave to file a fourth amended complaint, Plaintiffs indicated a desire to substitute certain named plaintiffs and to incorporate additional facts which they obtained while gathering information to comply with the *Lone Pine* order. [*See* R. 184.] Shortly thereafter, Defendants filed a motion to strike Plaintiffs' affidavits and to dismiss all claims, contending the affidavits fail to comply with the *Lone Pine* order's requirements. [R. 189.] Consistent with local practice and 28 U.S.C. § 636(b)(1)(B), the undersigned referred the matter to Judge Atkins for a recommended disposition. [R. 200.]

3

Upon a thorough review of the record and Plaintiffs' submitted affidavits, Judge Atkins granted Plaintiffs' motion for leave to file a fourth amended complaint. [R. 209 at 8-9.] Judge Atkins also recommends the Court grant Plaintiffs' motion for a case management conference and deny Defendants' motion to dismiss. [*Id.*] Defendants filed specific objections to Judge Atkins's recommended disposition on July 26, 2016, and the Court now considers the matter *de novo*.[2] *See* 28 U.S.C. § 636(b)(1)(C).

## II

At the outset, it is important to note that the Court is not concerned with any of the parties' arguments about the overall merits of the case. Both parties wade into substantive discourse, but the matter at hand is primarily procedural. *Lone Pine* orders "should not be used as (or become) the platforms for pseudo-summary judgment motions at a time when the case is not at issue and the parties have not engaged in reciprocal discovery." *Adinolfe v. United Tech. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014). Throughout this opinion, then, the Court considers one simple question: do the affidavits submitted by Plaintiffs at Docket Entries 176 through 183 comply with the requirements of the case management order issued by Judge Atkins on September 28, 2015?

As set forth above, the *Lone Pine* order requires Plaintiffs to provide certain information about their personal injury and property damage claims. [*See* R. 147; *see also* discussion at 2-3,

---

[2] Plaintiffs urge the Court to review Defendants' objections under a clear error standard, arguing the matter at hand is not a dispositive one. [R. 215 at 13.] The Court disagrees and notes that Plaintiffs previously referred to Defendants' Motion to Strike Affidavits as a dispositive motion in their "Notice of Non-Consent to Magistrate Judge Jurisdiction." [*See* R. 193 at 2.] Because granting Defendants' motion would effectively dismiss the entire lawsuit, the Court does treat the issue as dispositive. Further, the Court reviews Judge Atkins's recommendation *de novo*. The Court finds Defendants' objections, which discuss the Magistrate's recommendation in detail, sufficiently specific to trigger *de novo* review. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

*supra*.] A careful review of Plaintiffs' affidavits demonstrates they do, in fact, comply with the requirements of the order as to the personal injury claims.

First, the order requires Plaintiffs to describe "the specific illness allegedly sustained." [R. 147 at 1.] The affidavits submitted indicate that Plaintiffs Bobbie Lemons, Rosetta Ford, Gary Ford, Otis Ford, and Charles Ford all suffer from a "history of heavy metal and organic toxin exposure; balance disorder with central processing disorder caused by lead exposure; and cognitive loss with processing caused by lead exposure or other neurotoxins." [R. 177-2 at 1; R. 178-2 at 1; R. 179-2 at 1; R. 180-2 at 1; R. 181-2 at 1.] In addition, Charles Ford suffers from a pituitary tumor [R. 181-2 at 1], and Otis Ford suffers from skin lesions requiring surgery and prostate cancer. [R. 180-2 at 1.] These illnesses were all identified[3] by Dr. David Changaris, a neurosurgeon in Louisville, Kentucky, on the dates listed on the medical reports. [*See, e.g.*, R. 177-2 at 1, 4; *see also* R. 147 at 1.] For each plaintiff, "lead, arsenic and/or trichloroethylene" allegedly caused or significantly worsened the identified illnesses. [*See, e.g.*, R. 177-2 at 4; R. 147 at 1.] And the affidavits also include a summary of each plaintiff's potential exposure history. [*See, e.g.*, R. 177-2 at 1; R. 147 at 1.]

Defendants attempt to liken the medical affidavits to those found insufficient in *Acuna v. Brown & Root, Inc.*, but the Court finds that Fifth Circuit case distinct. *See* 200 F.3d 335. In *Acuna*, approximately one thousand six hundred plaintiffs were suing over one hundred

---

[3] Defendants decry Dr. Changaris's use of the word "impression" and claim that phrase does not denote an actual diagnosis. [*See* R. 214 at 19.] The Court understands a physician's clinical impression to be a sort of working diagnosis, or one step in the process of arriving at a firm diagnosis. ERIN P. BALOGH, ET AL., NATIONAL ACADEMIES OF SCIENCES, ENGINEERING, & MEDICINE, IMPROVING DIAGNOSIS IN HEALTH CARE (2015). Here, Dr. Changaris stated his "opinion within scientific certainty" [*see e.g.*, R. 177-2 at 4] in accordance with Judge Atkins's request for evidence of personal injuries "to a reasonable degree of scientific certainty." [R. 147 at 1.] Potential ambiguity between the terms "impression" and "diagnosis" is not an adequate ground for the Court to strike Plaintiffs' affidavit submissions and dismiss the entire case.

5

defendants for various injuries occurring over the course of forty years.  *Id.* at 340.  A *Lone Pine* order was issued, and each plaintiff was instructed to provide information about "the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries."  *Id.*  In response to that order, the plaintiffs submitted:

> ". . . just over one thousand form affidavits from a single expert, Dr. Smith.  Those affidavits identified a series of illnesses and effects that can occur as a result of uranium exposure and stated that the relevant plaintiff suffered from some or all of them.  The affidavits stated that Dr. Smith had reviewed the plaintiff's medical data and had come to the conclusion that exposure to uranium and its byproducts had reached clinically significant doses.  The affidavits went on to list all of the mining facilities covered in the lawsuit as responsible for each plaintiff's exposure . . . ."

*Id.* at 338.  The magistrate judge, finding the affidavits insufficient, gave the plaintiffs an additional month to comply with the *Lone Pine* order.  However, the supplemental affidavits filed by the plaintiffs "did not provide any new information regarding the specific claims of the vast majority of plaintiffs."  *Id.*  Therefore, the district court dismissed the case, and the Fifth Circuit upheld the dismissal on appeal.  *Id.* at 338, 341.

While each plaintiff in the present case did present a similarly-formatted affidavit from the same expert, Dr. Changaris, any shortcomings in the affidavits' specificities pale in comparison to the affidavits' flaws in the *Acuna* case.  As the Fifth Circuit aptly explained, the real concern in *Acuna* was that "[n]either the defendants nor the court was on notice from plaintiffs' pleadings as to how many instances of which diseases were being claimed as injuries or which facilities were alleged to have caused those injuries."  *Id.* at 340.  In a case with roughly one thousand six hundred plaintiffs, it was crucial for the plaintiffs to articulate and provide some preliminary evidentiary basis for their claims to the court and the defendants.  In Plaintiffs' case, a medical professional has now articulated, on the record, the specific illnesses sustained by

6

each plaintiff; the toxic chemical(s) likely linked to those illnesses; and explanations of each plaintiff's potential exposure history.

While it is true the affidavits could be more specific as to dose and manner of exposure, the Court still finds the affidavits sufficient to survive Defendants' motion to strike. To comply with the *Lone Pine* order, Plaintiffs need not prove their claims outright but, rather, must "produce *some evidence* to support a credible claim." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 n. 2 (5th Cir. 2006) (emphasis added). Here, Dr. Changaris has described each plaintiff's history of interaction with the land allegedly affected by toxins, and he has identified "air, soil, groundwater, [and] possible vapor intrusion" as likely pathways of exposure. [*See, e.g.*, R. 177-2 at 1.] Further, each plaintiff has personally described his or her history of interaction with the land. [*See, e.g.*, R. 177 at 2 (describing Bobbie Lemons's history of eating livestock raised on the property and vegetables grown on the property).] In light of Plaintiffs' submissions, Defendants are properly on notice of the claims, and the parties may obtain more specific evidence as to each aspect of the claims going forward throughout discovery.

Next, Judge Atkins's order requires Plaintiffs to provide the property addresses for the properties alleged to have declined in value and/or experienced contamination, as well as a description of the alleged contaminant and where and when any such contaminant was found. [R. 147 at 2.] The order also requires each plaintiff to present evidence regarding "the degree of diminution in value for the property alleged to have so declined, including the time-frame in which such diminution allegedly occurred." [*Id.*] Like with the personal injury claims, the Court finds Plaintiffs' affidavit submissions regarding their alleged property damage sufficient to comply with the *Lone Pine* order.

Each plaintiff submitted an affidavit describing the alleged diminution of the property in

question. [R. 176; R. 177; R. 178; R. 179; R. 180; R. 181.] Further, each plaintiff alleging property damage submitted a property valuation from the Boyle County Assessor's Office, which provides the specific tax block and lot number for each property [R. 176-1; R. 177-1; R. 178-1; R. 180-1; R. 181-1], and a property appraisal from Kentucky Field Service Realty, Inc. [R. 176-4; R. 177-5; R. 178-5; R. 180-5; R. 181-5.] Further, Professional Engineer Maurice Lloyd submitted affidavits regarding the sampling and testing performed on Plaintiffs' properties in support of Plaintiffs' arguments that their properties have been contaminated by the glass manufacturing facility. [R. 176-2; R. 177-3; R. 178-3; R. 180-3; R. 181-3.]

Defendants' primary challenge to the property damage submissions is that, in their opinion, the affidavits suggest there has been no actual injury to Plaintiffs' properties. [R. 214 at 8.] However, whether or not the mere presence of harmful substances on Plaintiffs' properties is grounds for their recovery under Kentucky law is a summary judgment-like question, which the Court will not address at this pre-discovery phase of the litigation. *See Adinolfe,* 768 F.3d at 1168. Similarly, whether remediation is needed has nothing to do with whether Plaintiffs submitted information in compliance with the *Lone Pine* order. Judge Atkins's order requires Plaintiffs only to provide an affidavit from a qualified expert setting forth "a description of any alleged contaminant, the location on the property on which it was found, and the date on which any such contaminant was found on the property at issue." [R. 147 at 2.] Defendants are certainly free to challenge that expert's opinions and present evidence in support of their position, but they must do so at a later time.

In the end, the Court finds Plaintiffs' attempts to comply with the *Lone Pine* order successful. While the provided information could, at times, be more specific, at this stage of the litigation Plaintiffs are required only to present *some* evidence in support of their claims. *See*

8

*Steering Comm.*, 461 F.3d at 604 n. 2. Judge Atkins found Plaintiffs' submissions compliant, and after *de novo* review, the undersigned agrees. Plaintiffs have proven they at least have some evidence in support of the allegations in their complaint, and the lawsuit should proceed to discovery.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation [R. 209] is **ADOPTED** as and for the opinion of the Court;

2. Defendants' Motion to Strike Affidavits and Dismiss All Claims [R. 189] is **DENIED**; and

3. Plaintiffs' Motion for Case Management Conference [R. 185] is **GRANTED**. The time, date, and location of such a conference shall issue by subsequent order.

This the 17th day of August, 2016.

Gregory F. Van Tatenhove
United States District Judge