UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| MODERN HOLDINGS, LLC, et al., | ) |
| Plaintiff, | ) Civil No. 5:13-cv-00405-GFVT |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| CORNING, INC., and | ) **&** |
| PHILIPS ELECTRONICS NORTH | ) **ORDER** |
| AMERICA CORPORATION. | ) |
| Defendants. | |

*** *** *** ***

This matter is before the Court on the Defendants' Motion to Exclude the Testimony of Albert Westerman, Ph.D., an expert in toxicology. [R. 267.] The Defendants claim that Dr. Westerman's opinion does not meet the admissibility standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). For the following reasons, Defendants' Motion is **DENIED**.

**I**

The Plaintiffs in this case are comprised of one company and a class of individuals who all own property and/or reside near a glass manufacturing facility in Danville, Kentucky. The Defendants include Corning, Inc., which owned and operated the glass manufacturing facility from 1952 to 1983, and Philips North America, which owned and operated the site between 1983 and 2013. [*See* R. 211 at 2.] Plaintiffs claim they have suffered various health problems and damage to their properties due to the release or dispersion of hazardous materials from the glass

manufacturing facility. Accordingly, Plaintiffs bring numerous tort claims against the Defendants including nuisance, trespass, and negligence. [*See* R. 211 at 63–78.]

The lengthy procedural history of this action, which was originally filed in November, 2013, is discussed in detail in previously issued Court orders. [*See, e.g.*, R. 160 at 1–2.] For purposes of this opinion, the Court focuses on the pending Motion for Class Certification [R. 251] and the Defendants' Motion to Exclude the Opinion of Albert Westerman [R. 267]. The Plaintiffs filed a motion to certify a class of individuals who either resided or owned property within the "Affected Area" at any time between 1952 and November 27, 2013. [R. 251 at 1.] In this Motion, Plaintiffs attached the reports and rebuttals of Albert Westerman, Ph.D., a toxicologist. [R. 253-17; R. 253-18; R. 253-19; R. 253-20.] Dr. Westerman concluded, "The levels of lead, arsenic, and [trichloroethylene] found throughout the Affected Area represent a hazard to the health of the individuals living within the Affected Area and impact the use of the properties in the Affected Area." [R. 251-1 at 20.]

The United States Environmental Protection Agency has established "screening levels" for the amount of certain hazardous substances in soil, air, and water. [R. 267-1 at 3.] Kentucky has adopted these levels as the standard for mandatory remediation pursuant to statute. Ky. Rev. Stat. § 224.1-530. Dr. Westerman believes that this statutory level is much higher than the level of concentration that would cause adverse health effects or interfere with a person's use of their land. [R. 267-2.] Based on his research, he believes the concentrations of lead, arsenic, and trichloroethylene (TCE) in the Affected Area are higher than concentrations that would naturally occur in that area. *Id.* at 14–16; 24–28. Additionally, even though the levels are less than the screening levels established by the EPA, Dr. Westerman opines that the increased levels have

caused adverse health effects for people in the area. [R. 251-1 at 21.] Corning and Philips challenge the admissibility of his opinion under Federal Rule of Evidence 702.

II

A

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. From Rule 702 comes a three-part test for admitting expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). First, is the witness qualified? Next, is the testimony relevant, more precisely, will it assist a trier of fact to understand the evidence or determine a fact in issue? Finally, the testimony of the expert must be scientifically reliable.

The seminal case applying this test is *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). In that decision, the Supreme Court explained that a district court's gatekeeping responsibility is implicit in Rule 702, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Further, the Supreme Court listed several specific factors to help determine the reliability of expert testimony based on scientific knowledge. *See id.* at 590, n. 8. These factors include whether a theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether there is a high known or potential error rate; whether there are certain operation

standards that should have been or were followed; and whether the theory or technique is generally accepted within the scientific community. *Id.* at 592–94. Later, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court determined that the gatekeeping obligation and subsequent factors established in *Daubert* apply with equal force to non-scientific experts. However, those factors are not definitive and district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152.

As for the second prong of the test, district courts "must ensure that the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000). The Supreme Court in *Daubert* referred to this prong as the "fit" requirement. *See id.*; *Daubert*, 509 U.S. at 591–93. Because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," courts must consider whether a particular expert's testimony will truly assist the trier of fact to understand the evidence in the case at hand. *Daubert*, 509 U.S. at 591.

Finally, the Court must determine whether this testimony is reliable. To be reliable, "a judge must ascertain whether it is 'ground[ed] in the methods and procedures of science.'" FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 13 (3d ed. 2011) (quoting *Daubert*, 509 U.S. at 590). In *Daubert*, the Supreme Court outlined several factors this Court should consider to make that determination, including if the theory or technique has been or can be tested, whether such theory or technique has undergone peer review and publication, what the known or potential rate of error is for the theory or technique, and whether the theory or technique is "generally accepted." *Adams v. Cooper Indus., Inc.*, No. 5:03-cv-476-JBC-REW, 2007 WL 2219212, at *2 (E.D. Ky. July 30, 2007) (quoting *Daubert*, 509 U.S. at 593–94).

Notably, the Court's gatekeeping role under the case law "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Whether or not to admit expert testimony is a matter over which the district court ultimately enjoys broad discretion. *See, e.g.*, *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010).

While the Supreme Court has not yet required *Daubert* analysis at the class certification stage of litigation, it has suggested that such analysis could be required in certain circumstances. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354 (2011). Because Dr. Westerman's testimony could be determinative of the existence of injury for the purposes of class certification, this Court finds a *Daubert* analysis is appropriate. In the Sixth Circuit, a district court is not required to hold an evidentiary hearing to conduct a proper *Daubert* analysis. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 532; *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000). The Court of Appeals allows discretion both for the trial court's determination of admissibility as well as the way in which the court determines admissibility. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528; *Kumho Tire Co.*, 526 U.S. at 152–53. Both parties fully briefed the *Daubert* issue and this Court finds that a hearing is not necessary for a determination of admissibility.

**B**

Corning and Philips do not dispute whether Dr. Westerman is qualified, instead alleging that his testimony fails to meet the second and third requirements of the Rule 702 test. The Defendants here argue that Dr. Westerman's opinion is contrary to federal and Kentucky law, and therefore neither relevant nor reliable. [R. 367-1 at 5–7.] However, the Plaintiffs here have

5

alleged multiple common law complaints, such as nuisance, trespass, negligence, and battery. These common law causes of action are not necessarily tied to the statutory cleanup standards provided by the EPA.

For example, nuisance in Kentucky "arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage." *Smith v. Carbide and Chem. Corp.*, 507 F.3d 372, 379 (6th Cir. 2007) (quoting *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (Ky. 1950)). While a nuisance claim could be brought after an unlawful use, such as failing to clean up contaminates that reached the EPA screening levels, a nuisance claim could also be brought after a lawful use that is either unreasonable or unwarrantable. *Id.* Similarly, Kentucky law assigns liability for trespass against someone "who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter" as long as that unwanted presence "causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest." *Rockwell Intern. Corp. v. Wilhite*, 143 S.W.3d 604, 619–20 (Ky. Ct. App. 2003) (quoting THE RESTATEMENT (SECOND) OF TORTS § 165)).

Thus, while contrary to statutory liability, Dr. Westerman's opinion that the EPA standards are higher than the levels at which such toxins begin to cause physical harm is not irrelevant. In determining common law claims, such as those asserted by the Plaintiffs, Dr. Westerman's opinions are both "relevant to the task at hand" and "will serve to aid the trier of fact" to determine the presence of chemicals and potential causation of certain injuries. *See United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000). Furthermore, aside with its contradiction to statutory cleanup standards, neither Corning nor Philips have provided this

Court with any information to suggest Dr. Westerman's testimony is not grounded in scientific methods or procedures. In fact, Dr. Westerman's report contains a bibliography of many published studies to support his opinion and utilizes publications provided by the United States EPA as well as the Kentucky Department of Environmental Protection. [R. 267-2 at 16–23; 29–31; 35–36.] Simply because his standards have not been accepted by the Kentucky General Assembly does not necessarily mean such standards have been rejected by the scientific community. The Defendants fail to show this Court any scientific indication that Dr. Westerman's report is unreliable.

### III

Corning and Philips would like this Court to exclude Dr. Westerman's opinion because it "is simply wrong and unsupportable . . . for determining reliability." [R. 267-1 at 8.] While Dr. Westerman's ideas may be contrary to the statutory duty imposed by the EPA standards, that does not make his opinion "wrong" or "unsupportable" for the purposes of determining common law liability. Accordingly, this Court finds that Dr. Westerman's report is admissible under Federal Rule of Evidence 702, and thus, Defendants' Motion to Exclude the Opinion of Albert Westerman, Ph.D. [R. 267] is **DENIED**.

This the 25th day of January, 2018.

Gregory F. Van Tatenhove
United States District Judge