UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

MODERN HOLDINGS, LLC, et al.,    )
      )
    Plaintiff,    )     Civil No. 5:13-cv-00405-GFVT
      )
v.    )
      )     **MEMORANDUM OPINION**
CORNING, INC., and    )     **&**
PHILIPS ELECTRONICS NORTH    )     **ORDER**
AMERICA CORPORATION.    )
      )
    Defendants.

*** *** *** ***

This environmental mass-tort lawsuit alleges Defendants Corning Inc. and Philips
Electronics North America Corp., the successive owners of a glass manufacturing plant located
in Danville, Kentucky, intentionally or negligently released toxic chemicals and substances
during the sixty years of the plant's operation. [*See generally* R. 211; R. 110 at 1.] As the
named Plaintiffs, Sellers & Sellers Co., Bobbie Lemons, Otis Ford, Charles Ford, Rosetta Ford,
Gary Ford, and Modern Holdings, LLC, claim Defendants' release of these chemicals and
substances polluted the air, water, and soil within a five-mile radius, resulting in personal injury
and property damages to the named plaintiffs, as well as members of their proposed class. [*See
generally* R. 211; R. 110; R. 111 at 1.][1] Today, this Court considers whether Plaintiffs' proposed
class action should go forward, considering Plaintiffs' Motion to Certify Class Action [R 251],
Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification [R.

---

[1] A separate action was brought by Philip's former employees against Philips for their alleged damages. *Cox, et al.
v. Philips Elec. N. Am. Corp., et al.*, No. 5:13-cv-406-GFVT-EBA. That case was dismissed. [R. 70; R. 71; R. 91.]

268], and Plaintiffs' Reply [R. 290]. After careful consideration and detailed review, and for the reasons that follow, the Plaintiffs' Motion to Certify is **DENIED**.

**I**

**A**

Defendants Corning Inc. and Philips Electronics North America owned and operated the Danville, Kentucky glass manufacturing facility at issue in this case, which Corning built in 1952. [R. 110 at 2; R. 211 at ¶ 29.] Corning operated its glass manufacturing business there until 1983, when Corning sold the facility to Philips. [R. 110 at 2; R. 211 at ¶¶ 29–30.] From 1983 until 2011, Philips manufactured various glass products at the facility. [R. 110 at 2; R. 211 at ¶ 30.] Philips sold the facility back to Corning in 2013. [R. 110 at 2; R. 211 at ¶ 31.]

Plaintiffs here are individuals and corporations who own land allegedly damaged by Defendants' operations of the facility, and/or who allegedly experience personal injuries flowing from the release of toxic substances by Defendants. They identify many hazardous substances used in the course of the facility's operations including, but are not limited to, asbestos, mercury, antimony, arsenic, beryllium, cadmium, chromium, lead, tin, zinc oxide and other heavy metals, thallium, perchloroethylene (PCE), 1-Trichloroethane (TCA), methylene chloride, PCB compounds, benzene, toluene, vanadium, benzo(b)fluoranthene, benzo(a)pyrene, ethylbenzene, silica, chlorinated fluorocarbons (CFC), 2-Butanone (MEK), trichloroethylene (TCE), and ethanolamine. [R. 211 at ¶¶ 1–5; *id.* at ¶ 39.] Plaintiffs allege Corning and Philips illegally dumped these hazardous substances in nearby fields, streams, and lands now owned by the named Plaintiffs and members of the proposed class. [*See generally* R. 211.] Plaintiffs also contend that Defendants improperly maintained their "settling ponds" (filtration systems used to collect chemical run-off) and allowed lead dust and other hazardous substances to accumulate on

the roof of the facility and wash into the Clarks Run watershed, a source of drinking water for the region. *Id.* at ¶¶ 55–56.

According to Plaintiffs, chemicals in wastewater discharge units, known as "outfalls," exceeded applicable statutory limits, and tests recently conducted on the facility's grounds indicated the presence of heavy metals in the soil, air, and building itself. *Id.* at ¶¶ 57–58. Preliminary tests in the area also indicated elevated concentrations of lead, TCE, dichloroethene (DCE), and arsenic in groundwater and surface water samples, as well as lead and arsenic concentrations significantly above industrially accepted soil levels. *Id.* at ¶ 218.

To remedy these alleged wrongs and resulting damages, Plaintiffs seek relief through the following legal theories: nuisance, trespass, negligence, battery, fraudulent concealment, and negligent infliction of emotional stress. [R. 110; R. 211 at ¶ 27.] Medical monitoring was dismissed as a cause of action against Defendants through Defendants' earlier Motion to Dismiss, but it has been preserved as a potential remedy. [R. 110 at 31–32]. Previously, Defendants also moved to strike the proposed class allegations on the ground that they do not comport with the requirements of Fed. R. Civ. P. 23(b) and Article III of the United States Constitution. [R. 44.] That Motion was denied. [R. 111.]

Plaintiff's Motion to Certify Class Action has been pending since April 3, 2017. [R 251.] During the lengthy briefing period, Defendants also filed a joint Motion to Exclude the Opinion of Albert Westerman. [R. 267.] That Motion was recently denied by this Court. [R. 287.] As such, the opinion of Albert Westerman shall be considered by this Court for purposes of this Order.

**B**

Plaintiffs' Motion proposes that the following class be certified in this case: "all persons who at any time between 1952 and November 27, 2013, resided within the Affected Area or who owned off-Site property within the Affected Area as of November 27, 2013."[2] [R. 251 at 1.] Likewise, Plaintiffs propose that the following two subclasses be certified in this case: those who owned property within this Affected Area and those who resided within this Affected Area between 1952 and 2013. *Id.* at 2. The Affected Area is defined as "a parabolic shape extending 4,000 feet to the North of the on-Site smoke stacks, 12,000 feet to the East, 4,000 to the South, and 3,000 to the West." *Id.* at 1.

In support of their Motion, Plaintiffs have submitted voluminous information and evidence comprised of various affidavits, memoranda, scientific data, maps, and depositions. [*See generally* R. 252 and documents attached thereto.] Plaintiffs seek certification under any of the provisions of Fed. R. Civ. P. 23(b) that will permit their proposed class to proceed, seeking both an injunction and a variety of forms of other damages, including pecuniary damages for personal injury and financial and property losses, as well as "damages for the diminution in the value of their properties, additional compensatory and punitive damages, and the establishment of a Court supervised medical monitoring program." [R. 251 at 1; R. 211 at ¶ 28.]

Defendants oppose the certification of Plaintiffs' proposed class and subclasses, having already unsuccessfully moved to strike the proposed class allegations. [R. 44; R. 110.] In their Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Defendants jointly contest not only Plaintiffs' standing under Article III of the United States Constitution,

---

[2] In their Fourth Amended Complaint, Plaintiffs' initially described the class as "all persons who between 1952 and 2013 have owned property or resided within a five-mile radius of the site." [R. 211 at ¶ 10.]

but also argue that Plaintiffs have failed to satisfy any prong of Rule 23(a) or Rule 23(b). [R. 268.]

## II

### A

This Court has broad discretion in deciding whether to certify a proposed class. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). This is so because a "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" and is subject to strict requirements under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To warrant certification, class members must not only satisfy Article III standing requirements, but must also "satisfy all four of the Rule 23(a) prerequisites— numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*)). "The party seeking class certification has the burden to prove the Rule 23 certification requirements." *Id.* (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079). The party opposing certification need not disprove the requirements. *See id.*

The requirements for standing outlined by Article III of the United States Constitution apply equally to class action lawsuits. *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005). The "irreducible" constitutional minimum of standing contains three elements: an injury in fact, a causal connection, and likely redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff in a suit must have suffered an "injury in fact,"

defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations omitted). Next, the plaintiff must demonstrate a "causal connection" between this injury and the alleged conduct of the defendant; "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal citations omitted). Finally, a favorable decision for the plaintiff must likely redress this injury, and relief must be more than merely speculative. *Id.* at 561.

Plaintiffs seeking the certification of a class must prove two additional components in order to show they have standing to proceed as a class. The proposed class must be identifiable and unambiguous, and the named representatives must be members of the proposed class. *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, *1 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011). In a properly defined class, only members who have standing to file suit in their own right would be included. *Chaz Concrete Co., LLC v. Codell*, No. 3:03-cv-52-KKC, 2006 WL 2453302, at *6 (E.D. Ky. Aug. 23, 2006). For that reason, the Court may deem a proposed class overly broad if such a class would incorporate members who neither have suffered harm nor are at risk to suffer such harm at the hands of the defendant. *Id.* (quoting *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001).

The Court is not required to inquire into the merits of the case in order to determine whether a person is a member of a class. *Bostick v. St. Jude Med., Inc.*, No. 03-2626 BV, 2004 WL 3313614, *16 (W.D. Tenn. 2004). Rather, "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting 5 James W. Moore, *et al.*, *Moore's Federal Practice* § 23.21[3]

(Matthew Bender, 3d ed. 1997)).  Plaintiffs, as the party invoking jurisdiction, bear the burden of proof on each requirement for standing.  *Id.*; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007).

Plaintiffs argue their proposed class satisfies all of these standing requirements.  [R. 251-1 at 26–28.]  Plaintiffs maintain their proposed class definition is sufficient because "it includes a particular group (property owners and residents), that were [sic] harmed by a continuous and cumulative course of action by Defendants during a particular time frame (from 1952 to present), in a particular location (the Affected Area), and in a particular way (contamination by lead, arsenic, and TCE)."  *Id.* at 26–27.

Likewise, Plaintiffs claim their proposed class satisfies the *Lujan* standing requirements because their expert reports sufficiently satisfy all of the components.  *Id.* at 27.  Plaintiffs address neither causation nor redressability in their Motion.  *Id.*  Presumably, however, Plaintiffs implicitly rely on the opinion of Maurice Lloyd to show causation and the opinions of Paul Lanthier and Dr. John Kilpatrick to show redressability.  *See, e.g.*, *id.* at 16–18; 18–19; 23–24. Similarly, although not explicitly, it may be inferred that the opinions of Dr. David Changaris, Dr. Haley Godby, and Dr. Albert Westerman are offered in support of the personal injury in fact component, while the opinions of Maurice Lloyd and Vance Mosley have been offered in support of the property-damage injury in fact component.  *Compare id.* at 24–25, *with id.* at 14–15.

Defendants counter that the evidence and pleadings of the named Plaintiffs fail to satisfy Article III, arguing the named Plaintiffs have failed to prove the proposed class has standing.  [R. 298 at 10–12.]  Specifically, Defendants argue the named Plaintiffs have shown neither that every member of the proposed class has suffered a personal injury nor that each property that

falls within the Affected Area has been diminished in value by Defendants. *Id.* at 11. Defendants also contend the proposed class definitions constitute a "fail safe" class. *Id.* at 12. Defendants are right to raise these issues.[3]

Because at this state Article III issues in this case are dependent on whether a class is certified, of standing will be resolved as informed by Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997). This Court "therefore follow[s] the path" taken by the Supreme Court, "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'" *Id.* at 613 (quoting 28 U.S.C. § 2072(b)); *see also* Fed. R. Civ. P. 82.

**B**

A prospective class must meet a total of seven independent requirements. Two of these stem from Article III's standing requirements: "an identifiable class must exist and the definition of the class must be unambiguous, and the named representative must be a member of the class." *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, *1 (N.D. Ohio

---

[3] A litany of cases exist where similar problems were found to be dispositive of the class certification issue. *See, e.g.*, *Thomas v. FAG Bearings Corporation*, 846 F. Supp. 1400 (W.D. Mo. 1994) (denying motion for class certification in groundwater contamination lawsuit because evidence demonstrated that proof of causation and measure of damages precluded the proposed class from sharing common questions of law or fact); *McGuire v. Int'l Paper Co.*, No. 1:92-CV-593BRR, 1994 WL 261360 (S.D. Miss. Feb. 18, 1994) (finding that, upon motion for class certification, proximate causation would have to be established on an individualized basis since the plaintiffs' toxic tort claims against a paper mill company covered a span of a number of years); *Brown v. Se. Pa. Transp. Auth.*, No. 86-2229, 1987 WL 9273 (E.D. Pa. Apr. 9, 1987) (denying a motion for class certification for PCB property damage claims, but granting the motion as to personal injury claims); *see also Benefield v. Int'l Paper Co.*, 270 F.R.D. 640, 644 (M.D. Ala. 2010) (holding that plaintiffs' two-mile radius class definition for an environmental contamination suit failed because their experts could not say whether every home in the boundary showed signs of damages from the defendant manufacturer's activity); *Cochran v. Oxy Vinyls LP*, No. 3:06-cv-364-H, 2008 WL 4146383 (W.D. Ky. Sept. 2, 2008) (holding that plaintiffs' two-mile radius class definition failed at the class certification phase because plaintiffs had offered "*no meaningful evidence* that [contaminants from the defendant's plant] spread in a uniform fashion in all directions from Defendants' facility for a distance of up to two miles") (emphasis added).

Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011) (citations omitted). The remaining five requirements stem from Rule (a) and (b):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Finally, "In addition to the prerequisites of Rule 23(a), a party seeking class certification must show that the class action is maintainable under Rule 23(b)."

*Id*. (citations omitted). There must be a statement of the facts indicating that *each* requirement of the rule is fulfilled. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). *Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1081 (6th Cir. 1996) (holding that individual proofs, which "vary from plaintiff to plaintiff," do not satisfy Rule 23(a)). Rather, this Court must "probe behind the pleadings before coming to rest on the certification question."[4] *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

---

[4] Generally, courts should not consider the merits of a suit at the class certification stage. *Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 177–78 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). *Wal-Mart Stores, Inc. v. Dukes*, however, indicates some flux within the law, noting that "some overlap with the merits of the plaintiff's underlying claim" is inevitable at the class certification stage. 564 U.S. at 351.

**1**

**a**

Initially, Rule 23(a)(1) requires a proposed class to be "so numerous that joinder of all members is impracticable." A proposed class may satisfy this requirement by demonstrating the impracticality of joinder. *See, e.g.*, *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 660 (E.D. Mich. 1995) ("The numerosity requirement mandates that the joinder of all plaintiffs be impracticable—not impossible."). There is no magic number or strict test for determining impracticality of joinder. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976). "When class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.11 (3d ed. 2011).

Regardless, in determining practicability, a court should also consider the geographic dispersion of the proposed class, the sophistication of proposed class members, and the reluctance of individual class members to sue. 7A Wright & Miller, *Federal Practice and Procedure* § 1762 (3d. ed.); *see also Roman v. Korson*, 152 F.R.D. 101, 105–06 (W.D. Mich. 1993); *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666, 668 (E.D. Ky. 1974). "When a class numbers in the hundreds or thousands, the impracticability of joinder is obvious." *Mich. State Univ. Faculty Ass'n v. Mich. State Univ.*, 93 F.R.D. 54, 56 n. 1 (W.D. Mich. 1981); *see also* Newberg at § 3:12. For that reason, proposed classes with hundreds of members are routinely held to satisfy the numerosity requirement. *Mich. State Univ. Faculty Ass'n*, 93 F.R.D. at 56. In fact, courts have certified classes with as few as eighteen members. *See, e.g.*, *Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) ("We

further are of the opinion that eighteen is a sufficiently large number to constitute a class."); *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) ("[W]e are unwilling as a matter of law to hold that a class of 74 persons does not meet the requirement of numerosity."). Some courts hold that "a class of 40 or more members is sufficient to establish numerosity." *Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003). All of this leads to the conclusion that, in determining whether to certify a class, it is not necessary for a court to know the *precise* number of class members. Rather, the Court may rely upon reasonable inferences drawn from the known facts. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

**b**

Various precedents cited by the parties inform this Court's analysis. Plaintiffs cite *Duffin v. Exelon Corp.*, No. Civ. A. 06-C-1382, 2007 WL 845336 (N.D. Ill. Mar. 19, 2007), in support of the proposition that they have established standing and numerosity sufficient to proceed as a class action. [R. 251-1 at 27–28]. In *Duffin*, the plaintiffs alleged a nuclear plant unlawfully leaked six million gallons of tritium-contaminated water over a period of four years into the communities surrounding the plant. 2007 WL 845336, at *1. The contamination was alleged to have affected areas within a roughly five-mile radius of the plant, resulting in damages to the properties within that radius. *Id.* Although the court found the allegations were sufficient to establish the *Lujan* standing requirements, the class, under Article III of the United States Constitution, was found to be overbroad. *Id.* at *2–3. The proposed class also failed under Rule 23 because the overbroad class definition did not meet the requirements for numerosity. *Id.* at *5.

Defendants have raised Article III issues with members of the proposed class. [R. 268 at 10–12.] Such lack of standing could prohibit a finding of numerosity within the Plaintiffs'

proposed class, but the Court has already declined to reach this issue. *See, supra,* Section II.B.1.

Plaintiffs have identified 3,000 distinct parcels of property to be included in the proposed class.

[R. 290 at 4.] The number of individuals living on these properties would presumably establish

numerosity if all individuals had standing. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir.

1996). However, because the Court finds that the Plaintiffs failed to meet the other requirements

under Rule 23, this Court need not reach the constitutional implications of class standing and

issues related to numerosity. *See Communist Party of the U.S. v. Subversive Activities Control

Bd.*, 351 U.S. 115, 123 (1956).

**2**

Next, in order for a class to be certified under Rule 23(a)(2), there must be "questions of

law or fact common to the class." This is because, where there are common questions of law or

fact, "the class-action device saves the resources of both the courts and the parties by permitting

an issue potentially affecting every class member to be litigated in an economical fashion under

Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v.

Yamasaki*, 442 U.S. 682, 700–01 (1979)). Traditionally, it has been the rule that to satisfy the

commonality requirement of Rule 23(a)(2), only one single issue that is common to all members

of the class is required, not multiple issues.[5] *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1080 (6th

Cir. 1996); *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) ("Although Rule 23(a)(2) refers to

common questions of law or fact, in the plural, there need only be one question common to the

class—though that question must be a 'common issue the resolution of which will advance the

litigation.'") (quoting *Sprague v. Gen. Motors*, 133 F.3d 388, 397 (6th Cir. 1998)). The language

---

[5] Many courts have held that when the legality of the defendant's standardized conduct toward all members of the proposed class is at issue, the commonality factor is ordinarily met. *See Appaloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 481 (S.D. Ohio 2004) ("Where, as here, Plaintiffs allege a common course of conduct by Defendants that caused harm, class certification is proper.").

of commonality, however, "is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions.""" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (April 2009)). The essential commonality inquiry, therefore, is not whether common questions exist, "but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (quoting Nagareda, *supra*, at 132). Dissimilarities between members of the proposed class can potentially impede the satisfaction of this requirement. *Id.* Indeed, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the *same* injury.'" *Id.* at 349–50 (emphasis added) (quoting *Falcon*, 457 U.S. at 157).

Similar to their argument for numerosity, Plaintiffs cite *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003), and *Cochran v. Oxy Vinyls LP*, No. 3:06-cv-364-H, 2008 WL 4146383 (W.D. Ky. Sept. 2, 2008), in support of the proposition that their proposed class satisfies the commonality requirement of Rule 23(a). [R. 251-1 at 29–30.] *Cochran* declined to permit the certification of any Rule 23 class action, finding the plaintiffs' generalized assumptions insufficient. 2008 WL 4146383, at *13. In contrast, *Mejdrech* upheld the certification of a Rule 23(b)(3) class made up of roughly one thousand residents of houses located within one mile of a factory that allegedly had leaked a noxious solvent (TCE) into the soil and groundwater under the class members' houses, resulting in diminished property values. 319 F.3d at 911; *see also Mejdrech v. Lockformer Co.*, No. 01-C-6107, 2002 WL 1838141 (N.D. Ill. Aug. 12, 2002). But *Mejdrech* is distinguishable from the one at bar. First, the proposed class in *Mejdrech* was significantly smaller than the proposed class here, which includes *all* individuals or legal entities that own property within an eight thousand by fifteen thousand foot

"Affected Area" and *all* individuals who have resided within that space *at any time* from 1952 and November 27, 2013.  [R. 251 at 1–2.]  Second, the proposed class in *Mejdrech* sought only *property damages* resulting from the contamination of *one* substance.  Even in *Mejdrech*, the damages were determined on an individual basis.  319 F.3d at 911–12.  Here, the proposed class seeks to recover damages for *personal injury and property damages* resulting from not one, but at least *twenty-five* different substances.[6]  [R. 251–1 at 1–4.]  Finally, *Mejdrech*, a persuasive opinion of the Seventh Circuit, restricted its own result to cases with "issues *identical* across all the claimants."  *Mejdrech*, 319 F.3d at 911 (emphasis added).  Here, although there are some common questions pertinent to the case, the issues are not identical across all the claimants, failing the crux of the *Mejdrech* result.

Plaintiffs also cite *Sterling v. Velsicol Chem. Corp.* in support of their argument in favor of their satisfaction of the commonality inquiry.  855 F.2d 1188 (6th Cir. 1988).  *Sterling* found certification proper for a Rule 23(b)(3) class in the presence of a landfill, which was determined to be the source of groundwater contamination within roughly one thousand acres surrounding the landfill site.  *Sterling*, 855 F.2d at 1192–94.  In finding that the particular class at issue was permissible with common issues "*identical*" across claimants, *Sterling* noted "the problem of individualization of issues often is cited as a justification for denying class action treatment in mass tort accidents."  *Id.* at 1196–97 (emphasis added); *see also id.* at 1196 n.8 (citing Fed. R. Civ. P. 23, Advisory Committee's Note to 1966 Amendment, 39 F.R.D. 69, 103 (1966)).  *Sterling* then limited class action treatment to the sole issue of determining liability, finding the damage calculations inappropriate for class resolution.  *Id.* at 1197.  District courts retain broad

---

[6] The inclusion of personal injury claims does not *per se* destroy commonality.  *See in re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426–27 (3d Cir. 2016).  However, the cases cited by the Plaintiffs involve *either* property damages *or* personal injury damages, suggesting potential disparities of interest exist between plaintiffs seeking only property damages, plaintiffs seeking only personal injury damages, and plaintiffs seeking both.

discretion to determine whether certification of a class action is proper, reviewed only for an abuse of discretion. *Id.* But, for complex, mass, toxic tort accidents, no single proximate cause can apply equally to each potential class member, causing individual issues outnumber common issues. *Id.* To resolve these controversies, the district court should question the appropriateness of a class action. *Id.*

This Court finds here significant individual issues that outnumber common issues, precluding the use of "common answers" to further the case at trial, and barring certification of the proposed class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). Perhaps chiefly problematic is that the named Plaintiffs have such an enormous variety of issues between them, each of which presents a unique question of both actual and proximate causation. This leads the Court to doubt the typicality of the named Plaintiffs' claims. As Plaintiffs' own expert conceded during his deposition,

> DR. CHANGARIS: The challenge is that even in this population you've got one person who is blind and another person who is old and a lot of these tests are not—how shall I say—physically possible. [Some of the named Plaintiffs] can't complete one test, but they can complete another test. Part of the VNG is a balance test, which is much more easily achievable, but if they are missing a leg, as one of these souls, you've got a problem. So trying to construct, if you will, a flowchart for coming up with making someone a true member [of this class] is going to take some dialogue and some thought. . . .
>
> QUESTION: Do you have any opinion at all as to a specific number of people in the proposed class area that might have these physical symptoms?
>
> DR. CHANGARIS: I have no clue. . . .

[R. 268-1 at 10–11, 14–15.]

Defendants discuss Plaintiffs' reliance on *Sterling* in their response. [R. 268 at 21–22.] Therein, Defendants insist that Plaintiff's reliance on *Sterling* is not only misplaced, but also unlawful. *Id.* The Sixth Circuit decided *Sterling* nearly ten years prior to the Supreme Court

issued the decision in *Amchem Prods., Inc.*, and nearly twenty years prior to the decision in *Wal-Mart v. Dukes*. *Id.* While this Court would not go so far as to assert that *Sterling* has been overruled, this Court finds Defendants' argument persuasive in this case, especially in the presence of such similar circumstances to those in *Amchem Prods., Inc.*, as will be discussed later in this Order.

This Court also finds one enormous shortcoming in Plaintiffs' discussion of the commonality inquiry: Plaintiffs' abject failure to mention *Wal-Mart v. Dukes* in either their initial motion or their reply. *Dukes* concerned class certification under Rules 23(a) and Rule 23(b)(2), where the plaintiffs sought to introduce "statistical and anecdotal" evidence that there were significant disparities in the number of women and men promoted at individual Wal-Mart stores. 564 U.S. 338, 353–54, 356 (2011). This evidence was insufficient to satisfy the commonality requirement of Rule 23(a), because it was overly broad and failed to establish promotional disparities between Wal-Mart stores. *Id.* at 356–57. *Dukes*' analysis sets the modern standard for a commonality inquiry under Rule 23(a), which is "much more rigorous and thus more difficult to meet." Erwin Chemerinsky, *New Limits on Class Actions*, 47 Trial 54, 54 (2011). *Dukes* left this Court with the following directive for determining commonality:

> What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of classwide proceedings to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 350 (internal citations omitted). Under *Dukes*, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the *same* injury.'" *Id.* at 349–50 (emphasis added) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Further, a

plaintiff must identify the specific challenged behavior or practice. *Id.* at 357 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)).

Defendants acknowledge that the named Plaintiffs have alleged the same legal theories, seek the same general forms of relief, and have claims that arise from the same general set of circumstances. [R. 268 at 13–14; *see also* R. 211; R. 251-1 at 37–38.] But, as Defendants correctly state, these elements are true in every case with multiple plaintiffs. [R. 268 at 14.] Plaintiffs point to *In re NFL Concussion Injury Litigation* to demonstrate that commonality may exist even when the plaintiffs were injured in different ways or during different periods. [R. 290 at 5.] However, the questions and answers regarding the NFL's conduct were the same. *In re NFL Concussion Injury Litig.*, 821 F.3d 410, 427 (3d Cir. 2016). Instead, Plaintiffs here present too many potential substances and potential injuries to elicit common answers. For example, causation of one disease based on the alleged contamination of lead fails to present the same legal question as the causation of a different disease based on contamination of TCE. Plaintiffs ask this Court to find commonality in the allegations of contamination by Defendants with any or all the listed substances. With these bare assertions, Plaintiffs miss the mark. "What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of classwide proceedings to generate common *answers*." *Dukes*, 564 U.S. at 350. Plaintiffs have failed to show their listed common questions will elicit *common answers* leading to *classwide* relief. This is especially so in the presence of named Plaintiffs with such disparate characteristics and alleged symptoms. [*See, e.g.*, R. 211 at 2–3 ¶ 2.]

**3**

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." This requirement seeks to ensure that the

interests of the named representatives align with the interests of the members of the proposed class. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). A named plaintiff's claim is typical if the claim arises from the same practice, event, or course of conduct giving rise to the other class members' claims, and if all claims are based on the same legal theory. *Id.* Although the class representatives' claims must be typical, "Rule 23 does not require absolute homogeneity." *Tucker v. Union Underwear Co., Inc.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992). Rather, "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The inquiry focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action." *Van Vels v. Premier Athletic Center of Plainfield, Inc.*, 182 F.R.D. 500, 510 (W.D. Mich. 1998) (citations omitted).

Plaintiffs cite *Senter v. Gen. Motors Corp.*, arguing the claims of the representatives need only involve common elements of fact or law to satisfy the requirement of typicality. 532 F.2d 511, 525 n.31 (6th Cir. 1976). While accurate, this does not lead to the automatic conclusion that the named Plaintiffs' claims are typical of the class. *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. Defendants are correct to note that individual issues pertaining to each named Plaintiff could be sufficient to indicate a failure of the typicality requirement. [R. 268 at 14–16.] As discussed, there are a number of potential issues with the named Plaintiffs, including their disparate age, unrelated health conditions, and varied living conditions and habits. *Id.* At least two of the named Plaintiffs, for instance, live in a house built out of materials potentially unlawfully taken from Defendants' facilities, including former furnace bricks and "lead glass in

the mortar work," presenting a wholly unique factual scenario.  [R. 211 at 2–3 ¶ 2.]  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Sprague*, 133 F.3d at 399.  While all potential class members allegedly suffer from balance disorders, the named Plaintiffs have also claimed to suffer from various other diseases purportedly caused by contamination from various substances.  [R. 211 at ¶¶ 2–4.]  The Court recognizes that the potential class members need not share identical personal and/or medical histories.  *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 420 (3d Cir. 2016).  But, the distinct nature of these numerous diseases that Plaintiffs attempt to link to Defendants' alleged acts of contamination presents too many individualized issues.  This Court finds the common suffering of balance disorders does not cure this defect.  These varied factors could affect the claims of the named Plaintiffs' claims without addressing the claims of the unnamed class members, a clear indicator the proposed class lacks typicality.

## 4

Finally, Rule 23(a)(4) allows a class to be certified only if "the representative parties will fairly and adequately protect the interests of the class."  This is an essential prerequisite for due process, as a final judgment in a class action binds all class members.  *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).  This circuit applies a two-part test for determining the adequacy of representation.  First, the named representatives "must have common interests with the unnamed members of the class," and second, it must be apparent that the named representatives "will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).  This "adequate representation requirement overlaps with the typicality

requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.

The named Plaintiffs also argue that they are adequate representatives of the class. Based on the holding in *Adams v. Fed. Materials Co.*, Plaintiffs claim adequacy is presumed in the absence of contrary evidence. 2006 WL 3772065 (W.D. Ky. Dec. 19, 2006). This is false. This Circuit applies a two-part test to determine adequacy of representation. First, the named representatives must have common interests with the unnamed members of the class, and also, it must be apparent that the named representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525; *In re Dry Max Pampers Litig.*, 742 F.3d 713 (6th Cir. 2013). This requirement for adequate representation overlaps with the requirement for typicality. Without typical claims, the representative plaintiffs have no incentive to pursue further claims of other class members. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. Because their injuries are analogous to injuries of the proposed class, Plaintiffs believe they have satisfied the first prong of this test. Similarly, Plaintiffs argue they have satisfied the second requirement by participation in the action and obtaining qualified counsel. [R. 251-1 at 31–32.]

But the analysis is not so straightforward. In their Fourth Amended Complaint, the named Plaintiffs identified their specific illnesses: Rosetta Ford "suffers from diabetes, a bleeding ulcer, gout, chronic bronchitis, and [atrial fibrillation] due to a heart valve problem"; Gary Ford "has trouble breathing and nerve problems in his extremities"; Otis Ford "was diagnosed with prostate cancer in 2005 and had surgery in 2006 to remove his prostate"; Charles Ford "was diagnosed with a brain tumor on his pituitary gland in 2006," and, when the tumor was removed, "he lost sight in his right eye"; Bobbie Lemons "was diagnosed with multiple sclerosis in 2008." [R. 211 at ¶¶ 2–4.] Then, the named Plaintiffs went on to complain of at least

twenty-six general illnesses, capable of resulting from exposure to at least twenty-five substances allegedly released by Defendants. [R. 211 at ¶ 43; R. 251-1 at 4.] Interestingly, however, while Rosetta Ford claims several illnesses, she suffers from *zero* of the diseases listed in the complaint as potentially resulting from exposure to the listed toxic substances. [*Compare* R. 211 at ¶ 2, *with id.* at ¶ 39, *and id.* at ¶ 43.] Similarly, Charles Ford was diagnosed with a pituitary tumor, Otis Ford was diagnosed with prostate cancer, and Bobbie Lemons suffers from multiple sclerosis. [R. 211 at ¶¶ 2–4.] While they complain of other ailments, only these three are listed by Plaintiffs as diseases caused by the alleged contamination. [*Compare* R. 211 at ¶¶ 2–4, *with id.* at ¶ 39, *and id.* at ¶ 43.] Collectively, and on the face of their pleadings, the named Plaintiffs suffer from only three out of twenty-six of the listed diseases, or 11.5% of the named ailments. *Id.* The named Plaintiffs cannot be adequate representatives of the class when they do not suffer from the injuries complained of.[7] *See Senter*, 532 F.2d at 525; *In re Dry Max Pampers Litig.*, 742 F.3d 713.

The named Plaintiffs' *Lone Pine* disclosures are consistent with these conclusions. [*See* R. 175; R. 176; R. 177; R. 178; R. 179; R. 180; R. 181; R. 182; R. 183.] In these disclosures, the named Plaintiffs generally provide support for the proposition that they may all suffer from balance disorders associated with and resulting from exposure to toxic substances. Assuming for the sake of argument that these allegations are true, however, the named Plaintiffs' have still not shown that they are adequate representatives of the proposed class. Although the medical reports

---

[7] This Court is also concerned with the conflict of interests arising from currently injured class members and those who do not yet present symptoms from alleged exposure to toxic substances. Those who already suffer injuries seek immediate payments, while those complaining only of exposure may require different forms of damages. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997). These goals are contradictory. *Id.* The fact that many potential class members do not currently exhibit symptoms is also problematic for purposes of adequate notice under Rule 23(c)(2)(B). "Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out [of the class]." *Id.* at 628.

reveal some symptoms of the diseases the named Plaintiffs claim to suffer from, these diseases do not generally differ from those provided in the Fourth Amended Complaint, which was submitted after the named Plaintiffs' *Lone Pine* disclosures were filed in the Record. [*Compare* R. 175, and documents filed sequentially, (filed February 2, 2016), *with* R. 211 (filed July 26, 2016).] Together, the Fourth Amended Complaint and the named Plaintiffs' *Lone Pine* disclosures generally reveal that the named Plaintiffs do not adequately represent proposed class members who allegedly suffer from the more than twenty other diseases listed in the Fourth Amended Complaint. *Id.* Further assuming that the named Plaintiffs and *every person* who has lived in the Affected Area *at any time* from 1952 to 2013 suffers from these same balance disorders, the named Plaintiffs would still not be adequate representatives. The named Plaintiffs have unique medical histories and factual backgrounds, which may affect determinations of causation. [*See, e.g.*, R. 211 at 2–3 (two of the named Plaintiffs live in a house built out of pieces of the plant); R. 268-1 at 19–20 (one of the named Plaintiffs is partially blind, one is missing a leg, etc.).]

Additionally, while Plaintiffs identify 3,000 distinct parcels of property, these properties are not all similarly situated in relation to the Defendants' property. Variations in distance to the alleged source of contamination, as well as distances to other potential sources of contamination, may affect the typicality of the named Plaintiffs' claims. Even assuming a proposed class satisfies the stringent requirements of Article III and Rule 23(a), however, the proposed class may still not proceed. This is because the proposed class must also satisfy the seventh requirement: qualifying under a prong of Rule 23(b).

# C

## 1

Rule 23(b)(1) applies when separate adjudications will create a risk of decisions that are either inconsistent with or dispositive of other class members' claims.  This provision, however, is restricted.  A Rule 23(b)(1)(A) class action is only appropriate "when 'the party is obliged by law to treat the members of the class alike,' for example when the class touches upon how a utility company interacts with its customers or how the government imposes a tax."  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  "Certification is not appropriate simply because 'some plaintiffs may be successful in their suits against a defendant while others may not.'"  *Id.* (quoting *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984)).  Similarly, a Rule 23(b)(1)(B) class action is only appropriate when the suit threatens to impair or dispose of the rights and interests of absent class members, as in the case of lawsuits filed by shareholders or against trustees, or where there is a limited fund available to pay damages.  *See generally Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

## 2

Rule 23(b)(2) applies exclusively in cases when class members seek the same declaratory or injunctive relief and do not assert individualized claims for damages.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011).  Generally, claims for monetary relief are inappropriate under Rule 23(b)(2).  *Id.*; *see also id.* at 363 ("Rule 23(b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages'" (quoting Fed. R. Civ. P. 23, Advisory Committee's Note to 1966 Amendment, 39 F.R.D. 69, 102 (1966))).  Rather, "'[c]ivil rights cases against parties charged with unlawful, class-based discrimination

are prime examples' of what (b)(2) is meant to capture." *Id.* at 361 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Rule 23(b)(2) "reflects a series of decisions involving challenges to racial segregation—conduct that was remedied by a single classwide order." *Id.* "In *none* of the cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction." *Id.* (emphasis added) (citing Advisory Committee's Note, 39 F.R.D. at 102). This is because permission to combine individualized and classwide relief within a single Rule 23(b)(2) class is inconsistent with the structure of Rule 23(b)." *Id.*

**3**

Unlike Rules 23(b)(1) and 23(b)(2), Rule 23(b)(3) is "framed for situations in which class-action treatment is not as clearly called for." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (internal quotation marks and citations omitted). Rule 23(b)(1) is intended for situations where "individual adjudications would be impossible or unworkable." *Id.* at 361. Likewise, Rule 23(b)(2) is designed for situations where the relief sought "perforce affect[s] the entire class at once." *Id.* at 361–62. Both are used in situations where "[p]redominance and superiority are self-evident." *Id.* at 363. A class may be certified under Rule 23(b)(3), however, where predominance and superiority are not as clear and "individualized monetary claims" are sought. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Dukes*, 564 U.S. at 361–63.

To qualify for certification pursuant to Rule 23(b)(3), "a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods., Inc.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)). This first inquiry into predominance

tests whether proposed classes warrant adjudication by representation. *Id.* at 623. Rule 23(b)(3) superiority inquiry tests whether the proposed class action is in fact the *best* and most efficient manner to adjudicate the relevant controversy. *See id.* at 615.

> The Rule sets forth various factors pertinent to this determination, including:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Although these factors are generally to be given equal weight, in some cases, one factor alone may be dispositive. Indeed, in certain cases, denial of class certification may be appropriate if the interests of certain included individuals are sufficiently strong. *Amchem Prods., Inc.*, 521 U.S. at 616 (quoting Advisory Committee's Note, 39 F.R.D. at 104–05). This is especially so in toxic tort cases, where individual injuries and damages are often at issue. *See id.* When a suit involves claims for death and/or personal injury, the plaintiffs asserting those claims have significant interests and individual motivations determining whether and when to settle. *Id.* at 616 (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996), *aff'd*, *Amchem*, 521 U.S. 591).

**4**

Plaintiffs seek certification under any of the provisions of Rule 23(b) that will permit their proposed class to proceed. [R. 251 at 1]. This Court is informed both by the nature of this action and the remedies sought. Among these remedies, Plaintiffs request injunctive relief, pecuniary damages for personal injury and financial and property losses, as well as "damages for the diminution in the value of their properties, additional compensatory and punitive damages, and the establishment of a Court supervised medical monitoring program." [R. 211 at ¶ 28.]

Considering the pleadings, this Court is persuaded that neither Rule 23(b)(1) nor Rule 23(b)(2) are appropriate provisions through which to consider certifying the proposed class. *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011); *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61, 363 (2011); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *but see Olden v. LeFarge Corp.*, 383 F.3d 495 (6th Cir. 2004) (result disputed by *Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287 (W.D. Ky. 2008) ("Quite simply, *Olden* properly demonstrates the latitude district courts have in making their certification decisions, but does not dictate a particular result here.")). Clearly, if this matter were to proceed as a class action, the only appropriate provision through which the proposed class could be considered would be Rule 23(b)(3). *Amchem Prods., Inc.*, 521 U.S. at 614–16 (1997); *see also Burkhead*, 250 F.R.D. 287; *Cochran v. Oxy Vinyls LP*, No. 3:06-CV-364-H, 2008 WL 4146383 (W.D. Ky. Sept. 2, 2008).

Rule 23(b)(3) provides certification for a proposed class if both the prerequisites of subdivision (a) are satisfied and "the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3) (emphasis added). This predominance requirement of Rule 23(b)(3) "parallels subdivision (a)(2) [commonality] in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996). In evaluating predominance and superiority, the Civil Rules direct this Court to consider four additional factors, including proposed class members' interests in individually

adjudicating their disputes, the extent of related litigation, the desirability of maintaining a class action before this Court, and the likely difficulties in maintaining this action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

Even though "individual *damage* determinations might be necessary," a proposed class might go forward so long as "the plaintiffs have raised common allegations which would likely allow the court to determine liability (including causation) for the class as a whole."  *Olden v. LeFarge Corp.*, 383 F.3d 495, 508 (6th Cir. 2004).  A court might also bifurcate a liability issue from a damages issue under Rule 23(c)(4).  *Id.* at 509 ("As the district court properly noted, it can bifurcate the issue of liability from the issue of damages, and if liability is found, the issue of damages can be decided by a special master or by another method.").  Similarly, the definition of the proposed class need not be perfect.  Should the definition of a Rule 23 class prove imperfect after certification, the class definition may be amended.  Indeed, the definition may be "subject to refinement based upon further development of the record, and can be expanded or contracted if the facts so warrant."  *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 61–62 (S.D. Ohio 1991).

## D

Consideration of all of the aforementioned Rule 23(a) factors lead this Court to determine that class action treatment is inappropriate for this matter.  Although the facts of this case present unique issues under the elements of Rule 23(a), the unsuitability of class action treatment for this case becomes most clear when considering the predominance and superiority requirements of Rule 23(b)(3).  Rule 23(b)(3) "parallels subdivision (a)(2) [commonality] in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that

common issues 'predominate' over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996) (quoting Fed. R. Civ. P. 23(b)(3)).

Here again, cases cited by the parties illuminate this Court's analysis.  In support of their motion, Plaintiffs heavily rely on *Sterling v. Velsicol Chem. Corp.*, arguing the predominance inquiry is satisfied.  855 F.2d 1188 (6th Cir. 1988).  As previously discussed, *Sterling* certified a Rule 23(b)(3) class for land owners near a landfill contaminating contamination within roughly one thousand acres surrounding the landfill site, but limited class action treatment to the sole issue of determining liability,  *Id.* at 1192–94, 1196–97.  *Sterling* questioned the appropriateness of class action treatment of liability resulting from complex, mass, toxic tort accidents.  *Id.* at 1197.

In opposition, Defendants cite a series of toxic tort and property damage cases.  In *Burkhead et al. v. Louisville Gas & Elec. Co.*, a property damage case, Judge Heyburn refused to certify a Rule 23(b)(3) class action where the proposed class definition was inadequate and the predominance inquiry was unsatisfied, among other issues.  250 F.R.D. 287, 295 (W.D. Ky. 2008) (finding that the named plaintiffs were also an inadequate "cross section" of the proposed class).  In finding the proposed class did not satisfy the Rule 23(b)(3) predominance inquiry, Judge Heyburn heavily relied on *Amchem Prods., Inc.*, recalling the Supreme Court's determination that certification "on the basis of an 'overarching dispute about the health consequences of asbestos' alone was inappropriate, given the 'greater number of questions peculiar to' the individual class members."  *Id.* at 299 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).  *Burkhead* found classwide proof of trespass and nuisance claims would necessarily require individual testimony as to each allegedly damaged class member, precluding certification of a class action.  *Id.* at 300.  Similarly, the plaintiffs in *Cochran, et al. v.*

*Oxy Vinyls, LP*, sought property damages for unlawful toxic contaminations by an industrial plant. No. 3:06-CV-364-H, 2008 WL 4146383 (W.D. Ky. Sept. 2 2008) (Heyburn, J.). The Court noted resemblance to *Burkhead*, finding these trespass and nuisance claims were not suited for class action treatment, and evidence of causation was based upon highly individualized testimony. *Id.* at *12.

*Ball, et al. v. Union Carbide Corp., et al.*, is also revealing. In *Ball*, a large number of current and former residents of a town located on former federal lands used for nuclear weapon research and construction sued the federal officials and contractors responsible for maintaining the former nuclear facilities. 385 F.3d 713 (6th Cir. 2004). The plaintiffs sought various forms of damages, including medical monitoring, for personal injuries resulting from radioactive contamination on the land. *See generally id.* All of the claims were dismissed by the district court, which found class action treatment could not be sustained, and the decision was upheld by the Sixth Circuit. *Id.* at 717. Noting the limitations of *Sterling* as a useful precedent for class-action plaintiffs, the Sixth Circuit noted that certain types of damages can preclude class action treatment. *Id.* at 727–28. Requesting medical monitoring and/or environmental cleanup of property raises predominating, individualized issues, precluding the satisfaction of Rule 23. *Id.*

Perhaps most notably, however, Defendants cite the *Manual for Complex Litigation (Fourth)*'s discussion of toxic tort cases. [R. 268 at 21.] Therein, Defendants note that many of the cases on which Plaintiffs rely in support of their motion are now considered obsolete. *Id.* The *Manual*, for instance, specifically cautions class-action plaintiffs and courts against reliance on *Sterling v. Velsicol Chem. Corp.*, noting that the opinion "should be read with caution in light of subsequent rulings of the Supreme Court and courts of appeals." *Manual for Complex Litigation (Fourth)* § 22.71 n.1310 (2004) [hereinafter *Manual*]; *id.* at § 22.71. In lieu of

reliance on cases like *Sterling*, the *Manual* strongly suggests that district courts analyzing

whether a toxic tort is eligible for class action treatment should place their analysis within the

parameters established by *Amchem Prods., Inc. v. Windsor*. *Manual* § 22.72. Since *Amchem*

*Prods., Inc.*, many district courts have refused to certify classes for mass tort claims because of

dispersed personal injury or property damage. *Id.* Reasoning varies, but the *Manual* specifically

explains individual issues of exposure, causation, and/or damages can defeat predominance

under Rule 23(b)(3), rendering class action trial unmanageable. *Id.* Additionally, such

variations create inadequate class representation, as claims are atypical of interests of absent

class members, as this Court has previously suggested in this case. *Id.*

      In an attempt to demonstrate the fitness of using class action suits in mass environmental

tort cases, Plaintiffs compare their action to *In re Oil Spill by Oil Rig "Deepwater Horizon" in*

*Gulf of Mexico, on April 20, 2010* (*In re Deepwater Horizon*). In that case, the Eastern District

of Louisiana certified a settlement class action for individuals who lived, worked, owned, or

leased property within a certain geographic area between April 20, 2010, and April 16, 2012. *In*

*re Deepwater Horizon*, 910 F. Supp. 2d 891, 903 (E.D. La. 2012). Individuals in the class traced

their injuries to the *same* event: the explosion, fire, and subsequent oil spill aboard the offshore

drilling rig, Deepwater Horizon, on April 20, 2010. *Id.* at 915. Thus, the *Deepwater Horizon*

plaintiffs were able identify a specific event on a specific date that caused their injuries, resulting

in typical claims. Here, however, the named Plaintiffs attempt to address a series of events

occurring sometime during a span of over six decades and between two defendants.

      Finally, this Court reaches *Amchem Prods., Inc. v. Windsor*, which concerned a Rule

23(b)(3) settlement class action for many individuals affected by asbestos contamination and its

various side effects. In holding that the settlement class could not satisfy the Rule 23(b)(3)

predominance requirement, the Supreme Court emphasized a variety of issues with toxic tort class actions generally through its consideration of the particular facts of *Amchem Prods., Inc.*:

> Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffered no physical injury or have only asymptomatic pleural changes, while others [suffer from a variety of ailments] . . . . Each has a different history of cigarette smoking, a factor that complicates the causation inquiry.
>
> The exposure only plaintiffs especially share little in common, either with each other or with the presently injured class members. It is unclear whether they will contract asbestos-related disease and, if so, what disease each will suffer. They will also incur different medical expenses because their monitoring and treatment will depend on singular circumstances and individual medical histories.

*Amchem Prods., Inc.*, 521 U.S. at 624 (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996)).  Claims of consumer fraud, securities fraud, or antitrust violations satisfy this test for predominance.  *Id.* at 625.  Even mass tort cases arising from a *single* disaster may be suitable for class action treatment, satisfying the predominance inquiry.  *Id.; see also In re Deepwater Horizon*, 910 F. Supp. 2d at 926–27.  Nonetheless, the Advisory Committee responsible for the revisions of Rule 23 in 1966 noted that cases involving mass accidents likely present significant individual questions of damages, liability, and defenses of liability, rendering these cases inappropriate for class action certification.  *Id.* (citing Advisory Committee's Note, 39 F.R.D. 69).  In short, mass toxic tort cases presenting many factual questions pertaining to the time and duration of exposure, in what manner, to which substances, and to what result, are only very rarely suitable for class-action treatment, being precluded by individual questions that predominate over common questions.  *Id.*

Here, as evidence of personal injuries, Plaintiffs present the opinions of Dr. Haley Godby, Dr. David Changaris, and Dr. Albert Westerman.  [R. 251-1 at 24–25; *see generally* R. 252; R. 253.]  Dr. Godby's analysis resulted in her conclusion with "certainty that we have ruled

out vestibular dysfunction as the culprit" of the named Plaintiffs' balance disorders. [R. 253-33.] Similarly, the affidavit of Dr. Changaris recites that he concludes that "each Plaintiff, based upon the physical exam, interviews, and information provided to me regarding each Plaintiff's exposure to toxic substances such as lead, arsenic, and TCE, was that each Plaintiff suffers a balance disorder with central processing disorder caused by lead exposure." [R. 253-27 at ¶ 3.] Further, "Dr. Godby's findings provide further support for my initial conclusion that the balance disorders suffered by the named Plaintiffs to this litigation are a result of neurotoxic vestibulopathy caused by exposure to lead, arsenic, and/or [TCE]." *Id.* at ¶ 5. Dr. Changaris went on to conclude that he "predict[s] that balance disorders attributable to neurotoxic vestibulopathy will be common amongst members of the proposed class." *Id.* at ¶ 9.

Dr. Westerman's opinions are the most voluminous and comprehensive of the three opinions offered. Dr. Westerman outlines the adverse health effects of exposure to lead, arsenic, and TCE. [R. 253-17 at 7–15; R. 253-18 at 1–5.] He explains how those chemicals are absorbed by the body through dermal contact, breathing, eating, and drinking. [R. 253-17 at 7–15; R. 253-18 at 1–5.] He further enumerates how future damages could be stopped through protective measures. [R. 253-17 at 15–16.] Exposure to lead and arsenic typically occurs "through inhalation of dusts and particulates, dermal exposure to soils, incidental ingestion of soils, consumption of food grown in contaminated soils, and drinking spring or well water." *Id.* at 15. TCE may be ingested through a variety of means, but is perhaps most commonly ingested through breathing. [R. 253-18 at 5.] Considering all of the above, Dr. Westerman concludes these similarities favor class certification. [R. 253-19 at 1.]

With regard to property damages, Plaintiffs have submitted an estimated value diminution for their named properties, including when such diminution occurred. [R. 251-1 at

15]. In addition, Plaintiffs have submitted reports prepared by Paul Lanthier of Jenkins Environmental, Inc., outlining the nature and cost of remedial activities to restore the named properties within the Affected Area to an uncontaminated state. [*Id.*; *see also* R. 176-3; R. 177-4; R. 178-4; R. 180-4; R. 181-4.] The estimated cost of environmental remediation for these four properties alone far exceeds one million dollars. [R. 176-3; R. 177-4; R. 178-4; R. 180-4; R. 181-4.] Plaintiffs contend that the properties (and, by implication, property owners) within the Affected Area forming the basis of the proposed class is readily ascertainable by reference to geographic boundaries, based upon scientific testing expert opinions. [R. 251-1 at 27.] Specifically, Plaintiffs refer to the opinions of Maurice Lloyd to identify the properties located within the alleged TCE plume. *Id.* at 17. The property owners, and therefore class members, will be ascertained by tax records. *Id.* at 27.

None of this information, however, resolves the fact that individual questions predominate over common questions, or the matter of whether class action treatment is a superior method of resolving these controversies. The varied nature of the named Plaintiffs' afflictions, their lengths of exposure, the sources through which their alleged exposure occurred, their unique medical histories, inconsistencies between the injuries from which the named Plaintiffs suffer and those they complain of, etcetera, all reveal individual issues that predominate over common issues, including statute of limitations concerns, precluding the certification of a Rule 23(b)(3) class. Likewise, the nature of the property damages the named Plaintiffs claim also precludes class action treatment. *Burkhead et al. v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 300 (W.D. Ky. 2008); *Cochran, et al. v. Oxy Vinyls, LP*, No. 3:06-CV-364-H, 2008 WL 4146383, at *12 (W.D. Ky. Sept. 2, 2008). Thus, neither of the named Plaintiffs' proposed subclasses may be certified in this case.

The named Plaintiffs have each allegedly been exposed to toxic substances at different times, and in different ways, between 1952 and 2013, a sixty-one year period.  [R. 211 at ¶¶ 2–4, ¶ 84, ¶ 163.]  The alleged release of toxic substances by the plant into the Affected Area did not occur under one owner, but two.  *Id.* at ¶¶ 6–7.  The Fourth Amended Complaint reveals that some of the named Plaintiffs suffer from *zero* of the listed diseases known to result from the listed toxic substances.  [*Compare* R. 211 at ¶ 2–4, *with id.* at ¶ 39, *and id.* at ¶ 43.]  The named Plaintiffs' *Lone Pine* disclosures, however, contradict the Fourth Amended Complaint, alleging that all of the named Plaintiffs suffer from a balance disorder.  [*See* R. 175; R. 176; R. 177; R. 178; R. 179; R. 180; R. 181; R. 182; R. 183.]  But the named Plaintiffs' own expert conceded that the balance tests were not "physically possible" for some of the named Plaintiffs, one of whom is missing a leg, another of whom is blind, and yet another of whom exceeds ninety years of age.  [R. 268-1 at 10–11; R. 211 at ¶ 3.]  While the named Plaintiffs have submitted statistical evidence that the alleged diminution in value of class members' property might be determined on a classwide basis, this does not resolve the inherently personal nature of trespass and nuisance causes of action, which have previously been found to be inappropriate for class action treatment.  *Burkhead*, 250 F.R.D. at 300; *Cochran,* 2008 WL 4146383, at *12.

In addition, although this Court has made little mention of the matter, there is also significant concern for how adequate Rule 23(c)(2)(B) notice could be provided to *each and every one* of the individuals who, between 1952 and 2013, resided within the Affected Area. This subclass holds an uncertain number of persons, many of whom may be impossible to track, with many others potentially displaying few to no symptoms, with no knowledge of the alleged harm they may face.  Each of these potential "exposure-only" class members presents a conflict of interest against the interest of named plaintiffs who are currently injured.  *See Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 626 (1997). The individual Plaintiffs in this case have significant interests for individually controlling the prosecution of his case, including whether and when to settle. *Id.* at 616. These potential future plaintiffs should not be denied their day in court, should the need arise. Class action treatment is simply improper in this case.

**III**

This Court previously noted that Plaintiffs' proposed class is readily ascertainable by reference to objective criteria on its face. This Court also acknowledged that it is at least plausible that all property owners within the defined geographic radius of the Facility could have been damaged by the Defendants' activities. In so doing, however, this Court cautioned that those determinations might not hold at the class certification stage, citing a string of cases in which class certification was denied for a lack of injury in fact or lack of sufficient evidence of causation. Today, this Court announces that they do not. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiffs' Motion to Certify Class Action, [**R 251**], is **DENIED**.

This the 29th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge

35