UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| MODERN HOLDINGS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 5:13-cv-00405-GFVT-EBA |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CORNING, INC., *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Defendants' Motion to Dismiss. [R. 364.] The Plaintiffs recently filed a Fifth Amended Complaint, adding numerous new Plaintiffs alleging various personal injuries. [R. 308; R. 311.][1] Now, Defendants seek dismissal of the newly added Plaintiffs' personal injury claims on the basis that they failed to properly comply with Magistrate Judge Edward B. Atkins's *Lone Pine* case management order. The pre-discovery order, imposed to facilitate the parties' complex tort litigation, requires Plaintiffs to submit affidavits detailing certain information about their personal injury and property damage claims. After carefully considering the newly added Plaintiffs' *Lone Pine* submissions, the requirements of Judge Atkins's order, and relevant case law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

---

[1] Plaintiffs initially filed an unredacted Fifth Amended Complaint, which includes names of minors and is therefore filed under seal. [R. 308.] The Redacted Fifth Amended Complaint is not sealed and contains the same paragraph numbers as the unredacted Fifth Amended Complaint. [R. 311.] Therefore, the Court cites to the official Fifth Amended Complaint, but those citations also may be found within the Redacted Fifth Amended Complaint.

**I**

Plaintiffs in this case are comprised of two companies and several individuals who all own property and/or reside near a glass manufacturing facility in Danville, Kentucky.  [*See* R. 308 at ¶¶ 4–99.][2]  Defendants include Corning, Inc., which owned and operated the glass manufacturing facility from 1952 to 1983, and Philips North America, which owned and operated the site between 1983 and 2013.  *See id*. at ¶¶ 100,101.  Plaintiffs claim they have suffered various health problems and damage to their properties due to the release or dispersion of hazardous materials from the glass manufacturing facility.  *See id*. at ¶¶ 4–99.  Accordingly, Plaintiffs bring numerous tort claims against Defendants including nuisance, trespass, negligence, battery, fraudulent concealment, and negligent infliction of emotional distress.  *Id*. at ¶ 2.

Magistrate Judge Atkins, tasked with facilitating discovery in this action, imposed a *Lone Pine* case management order on September 28, 2015.[3]  [R. 147.]  This Court upheld the imposition of the *Lone Pine* order over Plaintiffs' objections [R. 160], and since that time, Plaintiffs have been compiling the information needed to comply with the order's directives. The order required Plaintiffs to submit affidavits detailing the following information by a certain date, or risk dismissal of the case:

> (1) With respect to the personal injury claims being asserted by the plaintiffs, each plaintiff shall provide, within 60 days from the date this Order is signed, an affidavit from a qualified expert or experts which sets forth, to a reasonable degree of scientific certainty, the following:
>> (a) For each plaintiff, the specific illness allegedly sustained. (A general, vague description such as "cancer" will not suffice. The exact type of illness must be

---

[3] *Lone Pine* orders, so called for the 1986 *Lore v. Lone Pine* case, 1986 WL 637507 (N.J. Super. Ct. 1986), are pre-discovery orders designed to ease the complex issues and burdens on defendants and the court in mass tort lawsuits. In the federal system, these orders are issued "under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. Pro. 16." *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

identified.)

(b) For each plaintiff, the date the identified illness was diagnosed, including the name and address of the medical care provider who made the diagnosis;

(c) For each plaintiff, the toxic chemical which allegedly caused the identified illness, supported by an explanation of the manner of exposure, the exposure pathway, the date(s) of exposure, the duration of exposure, and the dose of exposure; and

(d) Citation to the scientific literature supporting any claim that any plaintiff's illness was caused by the described exposure to the identified toxic chemical.

(2) With respect to the property damage claims asserted, each plaintiff shall provide, within 60 days from the date this Order is signed, an affidavit from a qualified expert or experts which sets forth, to a reasonable degree of professional certainty, the following:

(a) For each plaintiff, the property address, including tax block and lot number, for the property alleged to have declined in value;

(b) For each plaintiff, the property address, including tax block and lot number, for the property alleged to have been contaminated, including a description of any alleged contaminant, the location on the property on which it was found, and the date on which any such contaminant was found on the property at issue; and

(c) For each plaintiff, the degree of diminution in value for the property alleged to have so declined, including the time-frame in which such diminution allegedly occurred.

[R. 147 at 1–2.]

On March 29, 2018, the Court denied Plaintiffs' request for class certification. [R. 291.] Following the denial of class certification, Plaintiffs filed a Fifth Amended Complaint on January 15, 2019 which added nearly ninety additional Plaintiffs with differing personal injury claims. [R. 308.] On March 8, this Court held that the prior *Lone Pine* Order was a standing order of the Court, which required compliance by the newly added Plaintiffs. [R. 323.] Thus, the Court ordered the newly added Plaintiffs to comply by April 15, 2019. *Id.* The new Plaintiffs who claim to have suffered a personal injury due to Defendants' actions submitted an affidavit from a doctor named John Gilbert, which Plaintiffs claim provides sufficient information to abide by the *Lone Pine* Order. [R. 358.]

On September 27, 2019, Defendants filed a motion to dismiss the personal injury claims of the newly added Plaintiffs, contending the affidavit produced by Dr. Gilbert fails to comply

3

with the *Lone Pine* order's requirements.  [R. 364.]  For purposes of this opinion, the Court

focuses on the case management order entered by Magistrate Judge Atkins, as well as the newly

added Plaintiffs' purported compliance with that order.  [*See* R. 147.]  A careful review of

Plaintiffs' affidavit demonstrates that some Plaintiffs comply with the requirements of the order

and some do not.

## II

At the outset, it is important to note that the Court is not concerned with any of the

parties' arguments about the overall merits of the case.  Both parties wade into substantive

discourse, but the matter at hand is primarily procedural.  *Lone Pine* orders "should not be used

as (or become) the platforms for pseudo-summary judgment motions at a time when the case is

not at issue and the parties have not engaged in reciprocal discovery." *Adinolfe v. United Tech.*

*Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014).  Throughout this opinion, then, the Court considers

one simple question: do the affidavits submitted by the newly added Plaintiffs at Docket Entry

358 comply with the requirements of the case management order issued by Judge Atkins on

September 28, 2015?

As set forth above, the *Lone Pine* order requires Plaintiffs to provide certain information

about their personal injury and property damage claims.  [*See* R. 147.]  "The basic purpose of a

*Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in

complex cases. *In re: Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008).  *Lone*

*Pine* orders typically require claimants to submit expert affidavits specifying the injury or illness

suffered, the cause of such injury, and the scientific and/or medical basis for the expert's

opinion. *See Steering Comm.*, 461 F.3d at 604 n.2; *Acuna*, 200 F.3d at 338; *McManaway v. KBR,*

*Inc.*, 265 F.R.D. 384, 385 (S.D. Ind. 2009); *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at

743. Plaintiffs are only required to provide "some evidence to support a credible claim."

*Kamuck v. Shell Energy Holdings GP, LLC*, 2012 U.S. Dist. LEXIS 125566, at *2–3 n.1 (M.D.

Pa. Sept. 5, 2012).

## A

First, Defendants argue that ten Plaintiffs fail to provide any *Lone Pine* disclosures since

the Gilbert affidavit fails to contain any information regarding these specific Plaintiffs' personal

injury claims.  [R. 364 at 5.]  Plaintiffs essentially admit "that eight (8) Plaintiffs failed to

comply regarding their personal injury claims."[4]  [R. 371 at 25.]  Plaintiffs explain that

undersigned counsel was not able to communicate with these specific Plaintiffs to obtain the

necessary information for Dr. Gilbert.  *Id*.  Thus, "Plaintiffs do not take a position with regard to

Corning's Motion as to these eight Plaintiffs."  *Id*.

Plaintiffs also admit that they did not provide information with regard to Plaintiffs

Connie Mullins and Joseph Johnson before the April 15, 2019 deadlines.  *Id*.  Instead, Plaintiffs

filed a separate affidavit of Dr. Gilbert on October 9, 2019 that discusses these two Plaintiffs.  *Id*.

Thus, Plaintiffs request the Court to accept the late filed affidavit of Dr. Gilbert that pertains to

Connie Mullins and Joseph Johnson.  *Id*.  In support of their request, Plaintiffs attached an

affidavit of attorney Evan Rice, which details the reasons for the late submission.  [R. 371-1.]  In

sum, counsel for Plaintiffs explains that they did not have the correct contact information for

these Plaintiffs, which caused the delay in responding to Defendants' discovery.  *Id*.

The Court concludes that the eight Plaintiffs who have not provided any of the required

---

[4] Plaintiffs' response only list seven Plaintiffs who failed to submit any *Lone Pine* affidavit: Latrese Barbour; Deon Duncan; Kelvin Galbreath; Brihana Trumbo; Demaya Trumbo; Demonte Trumbo; and Dewayne Trumbo.  [R. 371 at 25.]  However, Plaintiffs inadvertently did not include Demmontrell Trumbo, who is identified in Defendants' Motion and is part of the eight Plaintiffs who failed to provide any *Lone Pine* disclosures in regard to their personal injury claims.  [R. 372 at 3.]

information of the *Lone Pine* Order should be dismissed for failure to comply.  The Court

previously required that all Plaintiffs submit *Lone Pine* affidavits to illustrate their prima facie

claims, and where these eight Plaintiffs have not, they will be dismissed from the suit.

Generally, courts will not hold clients responsible for errors committed by counsel as a

sanction.  *Harmon v. CSX Transp.,* 110 F.3d 364, 367 (6th Cir. 1997) ("[T]his court, like many

others, has been extremely reluctant to uphold the dismissal of a case merely to discipline an

errant attorney because such a sanction deprives the client of his day in court and it has stated

that dismissal is usually inappropriate where the neglect is solely the fault of the attorney[.]")

(internal citations, quotation marks, and ellipses omitted).  Here, Plaintiffs' counsel represents

that these particular individuals are not at fault for the untimely filing of the required

information.  The Court accepts that representation.  Accordingly, the Court will not dismiss the

claims of Connie Mullins and Joseph Johnson for filing their Lone Pine disclosures past the

deadline.  In fact, the Court will accept the late filing in regard to these two Plaintiffs and will

consider their affidavit as it pertains to Defendants' further arguments concerning Plaintiffs'

noncompliance with the *Lone Pine* Order.

**B**

Next, Defendants argue that the Court should dismiss all of the newly added Plaintiffs'

personal injury claims because they do not provide a sworn diagnosis of a specific illness

allegedly sustained as a result of Defendants' conduct.  [R. 364 at 5.]  First, Defendants

disparage the fact that Dr. Gilbert did not diagnose each Plaintiff himself but instead attributed

historical third-party diagnoses that are unsworn and unreliable to Plaintiffs' exposure to the

hazardous waste he attributes to Defendants.  *Id*. at 7.  It is understood that Defendants would

have rather each Plaintiff submit to an examination of a qualified physician so that the physician

can then offer their opinion as to their specific illness allegedly sustained as a result of Defendants' conduct. *Id.* However, Plaintiffs argue that the *Lone Pine* order does not require Plaintiffs to submit sworn statements from the doctors who diagnosed their medical conditions. [R. 371 at 22.] Therefore, Plaintiffs provided Dr. Gilbert the information they acquired regarding their specific diagnoses, which Dr. Gilbert was able to review through each Plaintiff's medical records in order to draft his affidavit. *Id.*

In regard to this argument, the *Lone Pine* order requires each Plaintiff to submit an affidavit from a qualified expert which sets forth, to a reasonable degree of scientific certainty, the "specific illness allegedly sustained," and the "date the identified illness was diagnosed, including the name and address of the medical care provider who made the diagnosis." [R. 147 at 1.] Based upon the *Lone Pine* Order's language and basic meaning, there is no requirement that the expert who submits each Plaintiff's affidavit, must himself diagnose each specific illness. In fact, the *Lone Pine* Order does not require Plaintiffs to submit a sworn statement from the doctor who diagnosed their medical condition, but only the name and address of the doctor and the date of the diagnosis. *Id.*

In the affidavit, Dr. Gilbert states that he reviewed the pleadings and briefs filed in this action, the verified discovery responses provided by each Plaintiff, and the expert reports by Plaintiffs' environmental, medical, and toxicological experts. [R. 358-1 at 2.] He specifically states, "I discuss each Plaintiff's history, pathways of exposure, and diagnoses. For each Plaintiff I also provide an opinion, with a reasonable degree of scientific certainty, regarding whether the specific ailment suffered by each Plaintiff is causally connected to that Plaintiff's exposure to lead, arsenic, and/or TCE." *Id.* Each Plaintiff alleges to suffer or suffered with varying medical conditions which have been diagnosed over the course of their medical histories

by different doctors.  In light of Plaintiffs' submissions, Defendants are properly on notice of the

claims, and the parties may obtain more specific evidence as to each aspect of the claims going

forward throughout discovery.

As part of their argument, Defendants also indicate that since Dr. Gilbert did not diagnose

any specific illness for any individual Plaintiff himself, he failed to opine to a reasonable degree

of scientific certainty that their alleged illnesses were caused by Defendants.  [R. 364 at 6.]

Despite Defendants' assertion that they are not disputing the reliability of Dr. Gilbert's process

and his conclusions, the Court construes this argument as exactly that type of challenge.  *Id*. at

n.1.  Since the *Lone Pine* Order does not require Dr. Gilbert to diagnose Plaintiffs' alleged

illnesses himself, Defendants are ultimately criticizing his credibility and value of his methods

and in due course, the output of his conclusions.  Instead of diagnosing each Plaintiff himself,

Dr. Gilbert reviewed each Plaintiffs' medical records and provided his opinion as it relates to

causation, which he is entitled to do.  [R. 371 at 22.]

Once again, the Court finds Defendants' argument to focus on the reliability and

credibility of the expert which seeks to transform the pre-discovery issue into a dispositive one.

Such evidentiary arguments are improper at this phase of the litigation since the Court is not in a

position to weigh the evidence and credibility of an expert at this stage of the litigation.

Therefore, the Court finds that the *Lone Pine* order does not require each Plaintiff to submit a

sworn statement from their diagnosing physician and Plaintiffs' claims will not be dismissed at

this juncture for this sole reason.

## C

In the alternative, Defendants request the Court to dismiss several Plaintiffs that rely on

alleged diagnoses by unidentified health care providers and/or of unspecified dates.  [R. 364 at

8.] Specifically, they state that fourteen Plaintiffs should be dismissed because their third-party diagnoses identified in the Gilbert affidavit fail to identify basic information like the doctor who made the diagnosis and the timing of the diagnosis. *Id.* It is true that the *Lone Pine* order requires each Plaintiff to include in their affidavit, "the date the identified illness was diagnosed, including the name and address of the medical care provider who made the diagnoses." [R. 147 at 1.]

In regard to their noncompliance, Plaintiffs admit that some of them are unable to identify the names of all diagnosing physicians and/or specific dates of their diagnosis. [R. 371 at 24.] However, in offering a sufficient justification and good cause, Plaintiffs explain that many of them are elderly, and were diagnosed with medical conditions decades ago. *Id.* As such, gathering details regarding every single diagnosing physician and date is impossible, which is why Plaintiffs "request that literal compliance with this directive not be required in every case." *Id.* In support of their injuries, these Plaintiffs have at least provided the fact of their diagnosis, and their subsequent medical treatment in the form of past medical records. *Id.*

The Court finds Plaintiffs' defense as to why they are not able to ascertain every single detail pertaining to each diagnosing physician and date, to be reasonable. As long as each Plaintiff meets the requirements of the *Lone Pine* order in substance, even though they cannot satisfy it literally, they are in compliance and Defendants are not prejudiced. Where Plaintiffs' affidavits adequately set forth their prima facie claims, some gaps may be reasonable for good cause. Since the *Lone Pine* order's purpose is to manage complex issues and lessen the burdens of complex litigation, the Court will not weigh the available evidence when this purpose is accomplished. Plaintiffs are only required to provide "some evidence to support a credible claim," *Kamuck*, 2012 U.S. Dist. LEXIS 125566, at *2–3, which they have done.

Due to the harsh reality of impossibility to obtain all of the names of diagnosing physicians and dates, the Court believes that dismissal would be inappropriate at this stage, as long as those Plaintiffs have met all of the other requirements and provided their subsequent medical documentation evidencing their alleged illness. Therefore, the interest of justice requires the Court to excuse these fourteen Plaintiffs' noncompliance.  While it is true the affidavit could be more specific as to facts regarding the history of diagnoses, the Court finds the affidavit as it pertains to these fourteen Plaintiffs is sufficient to overcome Defendants' argument for dismissal.

**D**

Furthermore, Defendants argue that seven Plaintiffs should be dismissed because the Gilbert affidavit refers to alleged medical conditions that are not referenced in a past medical record.  [R. 364 at 9.][5]  For example, when discussing Plaintiff Daren Hays, the Gilbert affidavit states "Mr. Hayes also reports being told from a young age that he suffered from a learning disability and problems with concentration, although he is unable to recall whether any formal diagnoses were made by medical professionals."  [R. 358-1 at 28.]  Despite the unavailability of any medical records that refer to his alleged learning disability, Dr. Gilbert opines that "lead, arsenic, and/or TCE … likely contributed to any existing learning disability and concentration problems that may exist."  *Id*.

Unlike the situation explained in the previous section, this is not merely a gap in the history of treatment.  Since the Plaintiff did not provide the name of the diagnosing physician or

---

[5] Daren Hays [R. 358-1 at ¶ 28]; Barbara Manning [*Id*. at ¶ 41 ("dizziness, numbness and tingling in her extremities (undiagnosed)")]; Chantee (Trumbo) Nolan [*Id*. at ¶ 44 ("[w]hile . . . not diagnosed with a balance disorder or specific digestive disorder")]; Anita Chenault Ross [*Id*. at ¶ 52) ("reports numbness and tingling in her extremities, but has not received any formal diagnosis")]; Vivian Troxler [*Id*. at ¶ 55 ("any existing chronic coughing spells or respirator problems that may exist")]; Dejuanna Trumbo [*Id*. at ¶ 57 ("any existing digestive disorders that may exist")]; Fannie Walker [*Id*. at ¶ 61 ("any existing balance problems that may exist")].

any medical records that reference his alleged condition or treatment, there is no medical

evidence that Dr. Gilbert was able to review that pertained to Mr. Hays' alleged learning

disability.  As previously stated, Dr. Gilbert conducted a medical review of each Plaintiff and did

not diagnose any illness or condition himself.  Therefore, since he did not diagnose Mr. Hays'

learning disability himself and it was not referenced in any of his past medical records, Dr.

Gilbert is without basis for his opinion that Mr. Hays suffers from a learning disability and the

causal connection between his alleged medical condition and Defendants' actions.  Regarding

this specific noncompliance, Plaintiffs do not offer a justification to which the Court can rely

upon.

In this specific scenario, Plaintiffs are not able to fulfill their obligation of presenting a

prima facie case since they are not able to prove an injury in fact exists.  Certainly, where there is

personal injury, it is possible to obtain adequate reports of treating physicians and an opinion

as to whether exposure to toxic materials was a contributing factor.  Mr. Hays is just an example

of one of the seven Plaintiffs that were not formally diagnosed with an alleged illness based on

Dr. Gilbert's affidavit and medical records reviewed.  In support of this conclusion, there is no

evidence that points toward these Plaintiffs being diagnosed at any point in history with their

alleged illnesses since they are not able to provide any medical documentation whatsoever of

ever being diagnosed or receiving subsequent treatment for such illness.  In light of the

foregoing, it is clear that these seven Plaintiffs have not established by expert evidence that they

were damaged since there is no evidence that they have a current illness that can be traced to

Defendants' negligence.  Therefore, the *Lone Pine* order's substantive requirements are not met

and Plaintiffs' personal injury claims must be limited to only the specific illnesses that Dr.

Gilbert was able to conclude had been diagnosed at some point in Plaintiffs' medical history

based on evidence of medical records.

**E**

Defendants further assert that Dr. Gilbert's affidavit does not comply with the *Lone Pine* order's specificity requirements because many Plaintiffs' diagnoses reference a general or vague medical condition or symptom rather than a specific illness. [R. 364 at 10.] For example, Margot Caldwell alleges in the Fifth Amended Complaint that she suffers from breathing problems. [R. 308 at ¶ 65.] Dr. Gilbert states in his affidavit that Ms. Caldwell has been diagnosed with "sinus issues and breathing problems," as well as unspecified allergies. [R. 358-1 at ¶ 11.] Based upon his review of Ms. Caldwell's medical history and supporting documentation, he concludes that "lead, arsenic, and/or TCE caused or significantly worsened the identified diagnosis of breathing problems." *Id*.

It is true that the *Lone Pine* order requires Plaintiffs to describe "the specific *illness* allegedly sustained" and a "general, vague description such as 'cancer' will not suffice." [R. 147 at 1 (emphasis added).] In fact, the "exact type of illness must be identified." *Id*. However, Plaintiffs argue that that this "specificity requirement is not directed toward requiring each Plaintiff's medical condition to rise to the level of a named disease in order to be compensable." [R. 371 at 17.] Instead, Plaintiffs construe the *Lone Pine* order's language to mean that Plaintiffs are to "specifically describe the illnesses with which they have been diagnosed," which in their opinion they have fulfilled. *Id*. In support of their position, Plaintiffs assert that some Plaintiffs' medical conditions have not risen to the level of a named disease but that "does not mean that they have not been harmed, diagnosed, or treated." *Id*. The Court disagrees with Plaintiffs' understanding.

As the *Lone Pine* order explicitly states, Plaintiffs' alleged illnesses must be an actual

12

diagnosis of an illness, not a symptom.  [*See* R. 147 at 1.]  In fact, a symptom is referred to as

subjective evidence of disease or physical disturbance.[6]  Symptoms can be caused by a number

of conditions; for instance, shortness of breath can be a symptom of COPD, emphysema,

asbestosis, and many other medical conditions.  Therefore, many Plaintiffs, such as Margo

Caldwell, fail to list a specific illness that has been diagnosed and instead list only a symptom(s).

In addition, Dr. Gilbert's affidavit fails to identify an exact type of illness that several

Plaintiffs have been diagnosed with by only including a vague or general description of a

medical problem.  For example, Dr. Gilbert and many Plaintiffs state that that they have been

diagnosed with cardiovascular problems, kidney problems, learning disabilities, and thyroid

problems.  [See R. 308; R. 358-1.]  However, these conditions go against the specificity

requirement of the *Lone Pine* order because each one of these problems could be a myriad of

various specific illnesses.  The *Lone Pine* order's example is a good illustration of this failure, as

one cannot just list cancer because this is not an exact type of illness.

Therefore, several Plaintiffs' personal injury claims must be limited to only the specific

diagnosed illnesses that have been identified by Dr. Gilbert.[7]  If Dr. Gilbert has not identified

---

[6] "Symptom," *Merriam-Webster Online Dictionary*, 2020, https://www.merriam-webster.com/dictionary/symptoms (Sept. 8, 2020).

[7] The following is a list of Plaintiffs that violate the *Lone Pine* order's specificity requirements and their personal injury claims should be limited to not include the listed injuries that have been listed in the Fifth Amended Complaint and/or the Gilbert affidavit: Daniel Bartelson (inflammation around heart, cardiovascular problems); Harvey Chenault (need for stents, upper intestine issues, gallbladder problems, atrial fibrillation, hardened arteries); Marthetta Clark (congestion, nasal cavity problems, kidney issues); Cesirely Coffman (numbness and tingling in extremities, kidney disease, memory problems, nerve problems, back problems); Sonya Coffman (liver disease, kidney disease); James Dollins (learning disabilities); Gloria Frye (Johnson) (thyroid problems); Chenice Ganns (shortness of breath, balance problems); Ann Hawkins (cardiovascular problems); Josetta Hays (thyroid problems) ; Ethel Hunn (heart palpitations, dizziness); James Hunn (kidney disease, early stage heart disease); Rodney Johnson (breathing/coughing problems); Tyrone Johnson (tingling in hands and feet, strange scabs on wounds); Chester Kavanaugh (difficulty breathing, tingling in extremities, cardiovascular problems); Anthony Manning (kidney problems, skin disorders); Barbara Manning (cardiovascular problems other than high blood pressure, dizziness, numbness and tingling in extremities, thyroid problems); Michelle (Lavonne) Morton (dizziness, numbness and tingling in extremities); Connie Mullins (cardiovascular disorder,

13

any specific illness for each Plaintiff, that particular Plaintiff's personal injury claim must be dismissed.[8]

## F

Finally, Defendants' last argument addresses the issue that several Plaintiffs allege medical conditions in the Fifth Amended Complaint that are not addressed in the Gilbert affidavit as being a result of exposure to hazardous chemicals.  [R. 364 at 12.]  In response, Plaintiffs concede that "Dr. Gilbert did not conclude that every ailment listed by every Plaintiff in the Complaint was casually connected to the Plaintiffs' exposure to the lead, arsenic, and/or TCE generated and dispersed by Defendants."  [R. 371 at 23.]  For example, John Raines, Jr., claims in the Complaint that his alleged exposure to lead, arsenic, and/or TCE caused his mesothelioma.  [R. 308 at ¶ 77.]  In the affidavit, Dr. Gilbert acknowledges that Mr. Raines was diagnosed with mesothelioma in 2002, but he does not opine that Mr. Raines' mesothelioma was caused or worsened by his alleged exposure.  [R. 358-1 at ¶ 49.]

As to Plaintiffs' listed medical conditions where there is no medical opinion actually stating that a particular diagnosis is causally related to some specific exposure, the Court must dismiss those specific ailments.[9]  If the Plaintiffs' expert is unwilling to commit a specific illness

---

numbness in extremities); Chantee (Trumbo) Nolan (digestive disorders); John Raines, Jr. (numbness in hands and feet, kidney disorders), Bonita (Johnson) Ramzy (kidney problems/disease, skin and hair problems); Deborah Stevenson (digestive disorders); Barbara Trumbo (thyroid problems); Dejuanna Trumbo (digestive disorders, numbness in extremities); William Trumbo (respiratory problems, other gastrointestinal problems besides colon cancer); Bethel Wade (kidney problems, cardiovascular disease); Fannie Walker (cardiovascular disease)

[8] Margo Caldwell (breathing problems); Darren Hays (chronic anger problems, learning disability, concentration problems); Dnia Trumbo (behavioral problems, learning disability, comprehension problems)

[9] Harvey Chenault (heart valve replacements, removal of colon due to bleeding); Marthetta Clark (congestion, nasal cavity problems); Sonya Coffman (high blood pressure, neuropathy); James Dollins (learning disabilities, numbness and tingling in extremities); Ann Hawkins (cardiovascular problems); Joseph Johnson (balance disorder); Rodney Johnson (breathing/coughing problems); Tyrone Johnson (tingling in hands and feet, strange scabs on wounds); Chester Kavanaugh (tingling in extremities); Gloria Lewis (arthritis, balance problems); Michelle (Lavonne) Morton (memory loss); Connie Mullins (high

or condition to a causal connection, then the Court cannot conclude that the alleged illness can be traced to Defendants' actions.  If the expert that Plaintiffs hired is unwilling to opine as to this basic requirement, who, then, can provide this information?  Thus, it can be concluded that under this scenario, Plaintiffs will be unable to make a prima facie case as it relates the specific illnesses that Dr. Gilbert does not state that exposure to hazardous waste attributed to Defendants caused or worsened Plaintiffs' illness(s).  Therefore, once again, Plaintiffs' personal injury claims must be limited to only the specific illnesses that Dr. Gilbert addresses as causally connected to Plaintiffs' exposure to hazardous waste caused by Defendants.

### III

Plaintiffs' alleged facts are entitled to substantial deference in the face of a motion to dismiss.  In the end, the Court finds Plaintiffs' attempts to comply with the *Lone Pine* order successful and unsuccessful as it pertains to different Plaintiffs.  While the provided information could, at times be more specific, at this stage of the litigation Plaintiffs are required only to present *some* evidence in support of their claims.  *See Steering Comm.*, 461 F.3d at 604 n. 2. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.        Defendants' Motion to Dismiss [**R. 316**] is **GRANTED IN PART** and **DENIED IN PART**;

2.        The following Plaintiffs' personal injury claims are **DISMISSED WITH PREJUDICE** in their entirety: Latrese Barbour; Margo Caldwell; Deon Duncan; Kelvin Galbreath; Darren Hays; Gloria Lewis; Michelle (Lavonne) Morton; Chantee (Trumbo) Nolan; John Raines, Jr.; Brihana Trumbo; Demaya Trumbo; Demmontrell Trumbo; Demonte Trumbo; Dewayne Trumbo; and Dnia Trumbo; and

---

blood pressure, dizziness, numbness); John Raines, Jr. (mesothelioma); Bonita (Johnson) Ramzy (undiagnosed spots on lungs); Deborah Stevenson (cramping in hands and feet, balance disorders)

3. The following Plaintiffs' personal injury claims are not dismissed in their entirety but are **LIMITED** to the listed medical conditions/illnesses:

a. Daniel Bartelson – high blood pressure

b. Harvey Chenault – high blood pressure, prostate cancer, and dementia

c. Marthetta Clark – high blood pressure, and vertigo

d. Cesirely Coffman – vertigo, high blood pressure, degenerative bone disease, and Type 2 diabetes

e. Sonya Coffman – asthma, COPD, Type 2 diabetes, congestive heart failure, chronic bronchitis, osteoporosis, degenerative joint disease, and reflux/GERD

f. James Dollins – ADHD, high blood pressure, and Type 2 diabetes

g. Gloria Frye – breast cancer and high blood pressure

h. Chenice Ganns – vertigo

i. Ann Hawkins – arthritis and hypothyroidism

j. Josetta Hays – balance disorder

k. Ethel Hunn – high blood pressure

l. James Hunn – COPD, diabetes, and arthritis

m. Joseph Johnson – high blood pressure and localized nerve disorder

n. Rodney Johnson – bone (vertebrae) deterioration

o. Tyrone Johnson – vertigo

p. Chester Kavanaugh – high blood pressure and vertigo

q. Gloria Lewis – high blood pressure

r. Anthony Manning – social anxiety and high blood pressure

s. Barbara Manning – high blood pressure and rheumatoid arthritis

t.   Connie Mullins – dementia

u.   Bonita (Johnson) Ramzy – GERD, Lichen Planopilaris, irritable bowel syndrome,

high blood pressure, and heart murmur

v.   Anita Chenault Ross – high blood pressure and vertigo

w.   Clyde Simpson – COPD and kidney/renal failure

x.   Deborah Stevenson – breast cancer

y.   Vivian (Johnson) Troxler – high blood pressure

z.   Barbara Trumbo – high blood pressure

aa.  Dejuana Trumbo - vertigo

bb.  William Trumbo – asthma and colon cancer

cc.  Bethel Wade – diabetes, vertigo, and high blood pressure

dd.  Fannie Walker – high blood pressure and arthritis

This the 9th day of October, 2020.

Gregory F. Van Tatenhove
United States District Judge