UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| MODERN HOLDINGS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | Civil No. 5:13-cv-00405-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CORNING, INC., *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

***** ***** ***** *****

This matter is before the Court on Defendants' Motion for Summary Judgment on

Plaintiffs' property damage claims.  [R. 503.]  For the reasons set forth below, the motion will be

GRANTED IN PART and DENIED IN PART.

**I**

The Court and parties are very familiar with the factual background and procedural

history of this case.  The Plaintiffs include multiple companies and numerous individuals who

own property in close proximity to a glass manufacturing facility located on Vaksdahl Avenue in

Danville, Kentucky.  Corning, Inc. owned and operated the facility between 1952 and 1983 and

Philips North America owned and operated the facility between 1983 and 2013.[1]  [R. 211 at 2.]

The bellwether Plaintiffs in this case allege that they have suffered property damage because of

the release or dispersion of hazardous materials from the glass manufacturing facility over the

years.  Accordingly, Plaintiffs bring numerous claims, including nuisance, trespass, and

---

[1] Operations technically ceased in 2011 and Philips sold "portions of the Site, including the Facility" back to Corning
in 2013.  [R. 311 at 56.]

negligence.  *See id.* at 63–78.  Although these claims were initially brought against both Philips Electronics North America Corporation and Corning, Inc., Plaintiffs have reached a global settlement with Corning, Inc., contingent upon the Plaintiffs providing Corning with a settlement agreement executed by each Plaintiff within 120 days of December 8, 2021.  [R. 544.]

The lengthy procedural history of this action, which was originally filed in November 2013, has been discussed in detail in previously issued Court orders.  [*See, e.g.*, R. 160 at 1–2.]  Therefore, the Court will primarily focus on the pending motion for summary judgment.  In the summary judgment motion, Defendants make the following arguments: (1) Plaintiffs cannot maintain causes of action as to property damage claims arising from TCE or arsenic; (2) Plaintiffs' negligence claims (Counts I–III) should be dismissed because the Plaintiffs have failed to prove duty, breach, and causation and because Plaintiffs have not proved "actionable harm" to their properties; (3) Plaintiffs' negligence per se claims (Count IV) should be dismissed because there is a lack of evidence of any statutory violations; (4) Plaintiffs' property damage claims (Counts I–IV) are barred by the statute of limitations; (5) Plaintiffs cannot recover remediation costs as damages "under any theory" for the property damage claims (Counts I–IV); (6) Plaintiffs' fraudulent concealment claim (Count VI) should be dismissed because there is a lack of evidence; (7) Claims for battery or negligent infliction of emotion distress (Counts V and VII) should be dismissed as to these Plaintiffs because those claims are not at issue; and (8) the property damage claims of Melvin Harris, Brenda Carter, Modern Holdings, and Janet Mitchel should be dismissed.  [R. 503.]

## II

### A

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986).  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party bears the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp.*, 477 U.S. at 325.  Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute.  *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52).  In making this determination, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party.  *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

3

**B**

**1**

Corning, Inc. and Philips North America first argue that because there is insufficient evidence concerning arsenic and TCE, the "Plaintiffs may not maintain property damage claims arising from TCE or arsenic." [R. 503 at 7.] Plaintiffs do not respond or otherwise address this argument as it relates to TCE, and the Court finds that Plaintiffs' claims arising from TCE have therefore been abandoned. *Conner v. Hardee's Food Systems, Inc.*, 65 F. App'x 19, 24 (6th Cir. 2003) (finding argument abandoned where plaintiff failed to respond to issue raised in defendant's motion for summary judgment); *see also Benitez v. Tyson Fresh Meats, Inc.*, 2022 WL 58399, at *12 n.36 (M.D. Tenn. Jan. 5, 2022) (collecting cases for the proposition that courts "regularly grant summary judgment on abandoned claims"); *Morris v. City of Memphis*, 2012 WL 3727149, at *2 (W.D. Tenn. Aug. 27, 2012) (same).

However, Plaintiffs do contest Corning, Inc. and Philips North America's argument about arsenic.[2] Plaintiffs point to the expert opinion of Maurice Lloyd that arsenic was used at the facility and was "found in high concentrations in sampling conducted both inside and on the roof of the Facility." [R. 515 at 4 (citing R. 485-1 at 5).] Plaintiffs also highlight the fact that another of their experts, Dr. Michele Twilley, found that arsenic was detected on Plaintiffs' properties in a "distribution pattern of Arsenic<Lead<Zinc, indicating an environmental source outside of the home." *Id.* at 5. Finally, Plaintiffs point to the fact that Dr. Ranajit Sahu "makes multiple references to arsenic in his duty of care report." *Id.*

Viewing the evidence in the light most favorable to the Plaintiffs, the Plaintiffs' argument

---

[2] Both parties more fully briefed these issues in Defendants' Motion in Limine, Plaintiffs' Response to Defendants' Motion in Limine, and Defendants' Reply in Spport of its Motion in Limine. [R. 486; R. 515; R. 525.]

still fails.  First, the Plaintiffs' reliance on Mr. Lloyd to support their argument is misplaced.

During Mr. Lloyd's deposition, the following exchange took place:

> Q. Okay. So, Mr. Lloyd, do you have an opinion as to whether there is a pattern of decrease reflected in the data for arsenic?
>
> A. From our data, well, from Arcadis data, it appears that there is. We were focusing [more] on the lead issue than the arsenic because arsenic was just so seldomly used at the facility. It was very limited. So we focused our investigation more on the lead issue, as is reflected in all the results that we have.
>
> Q. Well, did you focus on the arsenic enough to develop an opinion about whether there was some pattern in the data that indicates the source of the arsenic?
>
> A. I have not looked at it in enough detail to even address that.

[R. 503-4 at 9.]  This exchange makes three things clear: (1) the glass facility's use of arsenic was "very limited;" (2) arsenic was not a focus of Mr. Lloyd's soil investigation; and (3) despite being given the explicit opportunity to do so, Mr. Lloyd declined to offer an opinion as to whether the glass manufacturing facility was the source of arsenic.  It is also worth noting that although Dr. Albert Westerman, the Plaintiff's toxicology expert, performed risk assessments on each of Plaintiffs' properties for lead, he "did not perform any risk assessment for arsenic."  [R. 503-5 at 5.]

Plaintiffs' reliance on Dr. Twilley's expert report is similarly misplaced.  Dr. Twilley's report summarized the findings of dust collection and analysis of five residential attics in Danville, Kentucky, wipe metals analysis from Environmental Hazards Services, and dust collection and analysis from eight Danville, Kentucky, properties.  [R. 457-5 at 1.]  While Dr. Twilley's report states that the "distribution pattern of Arsenic < Lead <Zinc indicat[es] an environmental source outside of the home," she does not conclude, or even argue, that the source is the glass manufacturing facility.  *Id.* at 2.

Finally, Dr. Sahu's duty of care report is also not persuasive.  In his report, Dr. Sahu included a brief section on the history of arsenic and its use at the glass manufacturing facility. [R. 486-5 at 23.]  Although Dr. Sahu opined on general best management practices that the facility could have engaged in, he did not indicate whether similarly situated facilities were implementing controls to reduce arsenic emissions, which goes to the element of duty.  He also did not attempt to articulate the extent to which the facility was responsible for arsenic on the Plaintiffs' properties.

The evidence and expert testimony make it clear that the focus was on harm caused by lead and not arsenic, or TCE, as addressed above.  No one disputes that arsenic is a naturally occurring element that is found in the soil.  Without evidence linking arsenic from the facility to the Plaintiffs' properties or an allegation of harm specific to arsenic, Plaintiffs cannot maintain a cause of action as to arsenic.  Accordingly, Corning, Inc. and Philips North America's motion for summary judgment as to arsenic and TCE will be granted.

**2**

Corning, Inc. and Philips North America next argue that the Plaintiffs have failed to establish the elements of negligence and trespass.  [R. 503 at 8–19, 27–30.]  Kentucky law permits recovery under trespass in three instances: "(1) the defendant was engaged in an extra-hazardous activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass."  *Mercer v. Rockwell Intern. Corp.*, 24 F. Supp. 2d 735, 740 (W.D. Ky. 1998) (citing *Randall v. Shelton*, 293 S.W.2d 559 (Ky. 1956)).[3]  For a plaintiff to

---

[3] Corning, Inc. and Philips North America categorized Plaintiffs' trespass claim (Count II) as one for negligent trespass in their motion.  [R. 503 at 7.]  In response, Plaintiffs stated that if the Court decided to construe their trespass claim as one for negligent trespass, Plaintiffs were "confident that they have proffered sufficient evidence of duty, breach, and causation…to survive Defendants' Motion for Summary Judgment."  [R. 517 at 11.]  Despite their statement to the contrary [*see* R. 519 at 2 n.1], Corning, Inc. and Philips North America only made arguments

prevail on a negligent trespass claim in Kentucky, "(1) the defendant must have breached its duty of due care (negligence); (2) the defendant caused a thing to enter the land of the plaintiff, and (3) the thing's presence causes harm to the land." *Rockwell Intern. Corp. v. Wilhite*, 143 S.W.3d 604, 620 (Ky. App. 2003). In Kentucky, to prevail on a negligence claim, "a plaintiff must prove the existence of a duty, breach of that duty, causation between the breach of duty and the plaintiffs injury and damages." *Hayes v. D.C.I. Props.-D KY, LLC*, 563 S.W.3d 619, 622 (Ky. 2018).

### a

Corning, Inc. and Philips North America first argue that Plaintiffs have failed to demonstrate a duty owed to the Plaintiffs. [R. 503 at 8.] Courts in Kentucky recognize a "universal duty of care under which every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Reeves v. Walmart, Inc.*, --- S.W.3d ----, 2021 WL 2753244, at *2 (Ky. App. July 2, 2021) (quoting *Kendall v. Godbey*, 537 S.W.3d 326, 331 (Ky. App. 2017)); *Smith v. North American Stainless, L.P.*, 158 F. App'x 699, 702 (6th Cir. 2005) (finding that "Kentucky recognizes a broad universal duty of care"). To determine foreseeability, courts "look to whether a reasonable person in a defendant's position would recognize undue risk to another, not whether a reasonable person recognized the specific risk to the injured party." *Reeves*, --- S.W.3d ----, 2021 WL 2753244, at *2 (quoting *Lee v. Farmer's Rural Elec. Co-op. Corp.*, 245 S.W.3d 209, 212–13 (Ky. App. 2007)). In Kentucky, an inquiry into the existence of a duty of care owed to the plaintiff is a pure question of law, and the inquiry is "essentially a policy determination." *James v. Meow Media, Inc.*, 300 F.3d 683, 691 (6th Cir.

---

relevant to the Plaintiffs' negligent trespass claims, and therefore the Court construes the motion as addressing Plaintiffs' negligence trespass claim only.

2002) (quoting *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992));

*Matilla v. South Kentucky Rural Elec. Co-op. Corp.*, 240 F. App'x 35, 39 (6th Cir. 2007).

Corning, Inc. and Philips North America argue that Plaintiffs failed to present evidence

of regulatory violations or failure to comply with industry standards and instead attempted to

"define alleged duties in a variety of other ways."  [R. 503 at 8.]  Specifically, Corning, Inc. and

Philips North America argue that (1) Kentucky law makes it clear that industrial facilities owe no

duty to "minimize" or "prevent" emissions (citing *Merrick v. Diageo Americas Supply, Inc.*, 5 F.

Supp. 3d 865 (W.D. Ky. 2014), *aff'd*, 805 F.3d 685 (6th Cir. 2015)); (2) the relevant duty in this

case is a duty that is established by applicable state and federal regulations (citing *Brockman v.

Barton Brands, Ltd.*, 2009 WL 4252914, at *6 (W.D. Ky. Nov. 25, 2009)); and (3) Plaintiffs'

expert Dr. Sahu's "allegations of negligence are untethered to actionable duties of care derived

either from industry standards or applicable regulations."  [R. 503 at 8–12.]  In response,

Plaintiffs argue that Corning, Inc. and Philips North America's reliance on *Merrick* is misplaced,

and that Dr. Sahu used appropriate methodology in developing his opinions on the duties owed

to the Plaintiffs.  [R. 517 at 12–16.]

Defendants point to *Merrick v. Diageo Americas Supply, Inc.* as standing for the

proposition that Kentucky law clearly states that an industrial facility has no duty to minimize or

prevent emissions.  However, this interpretation of *Merrick* is too broad.  In *Merrick*, Plaintiffs

sued Diageo, which operates a whiskey distillery in Louisville, because the distillery was

emitting ethanol onto their properties and causing the fungus *Baudoinia compniacenis*, also

known as "whiskey fungus" to grow on real and personal property.  5 F. Supp. 3d at 867.

Diageo subsequently filed a motion to dismiss Plaintiffs' First Amended Class Action

Complaint.  *Id.*  The Court denied Diageo's motion as to the Plaintiffs' temporary nuisance

claim, permanent nuisance claim, intentional trespass claim, and negligent trespass claim. *Id.* at 881. Although the court granted Diageo's motion to dismiss with respect to the negligence claim, it did so because the Plaintiffs failed to "identif[y] the source of Diageo's purported duty to minimize and prevent its ethanol emissions from entering Plaintiffs property" or to "prevent whiskey fungus from accumulating on Plaintiffs' property." *Id.* at 877. The court granted Diageo's motion not because an industrial facility has no duty to minimize or prevent emissions but rather because the Plaintiffs failed to plead facts sufficient to demonstrate that Diageo owed the Plaintiffs a duty. Therefore, the Court finds that Corning, Inc. and Philips North America fail to support their claim that an industrial facility has no duty to minimize or prevent emissions.

The Court also finds that Kentucky law does not support Corning, Inc. and Philips North America's argument that the relevant duty in this case is a duty that is established by applicable state and federal regulations. Corning, Inc. and Philips North America support their proposition with an unpublished case from the Western District of Kentucky. *Brockman v. Barton Brands, Ltd.*, 2009 WL 4252914 (W.D. Ky. Nov. 25, 2009). As discussed above, the duty of care inquiry is "essentially a policy determination," *James*, 300 F.3d at 691, not one determined by state and federal regulations. Furthermore, the court found that Brockman's negligence claim failed because of a failure to demonstrate that the Defendant breach a duty, not that a duty existed at all. *Brockman*, 2009 W 4252914, at *6.[4]

Finally, the Court finds that Defendants' concerns regarding Dr. Sahu's opinions are misplaced or have already been addressed. Contrary to Corning, Inc. and Philips North

---

[4] Corning, Inc. and Philips North America's other support for their proposition is equally unavailing. *Bell v. DuPont Dow Elastomers, LLC*, 640 F. Supp. 2d 890, 897 (W.D. Ky. 2009), also fails at the breach stage, not the duty stage. And *Chicago v. Gen. Motors Corp.*, 332 F. Supp. 285, 291 (N.D. Ill. 1971), has nothing to do with negligence or trespass and is instead a products liability case.

America's assertion to the contrary, Dr. Sahu's allegations do take into account such items as industry standards and applicable regulations. [*See, e.g.*, R. 483-1 at 53, 82–83.] Also, although Dr. Sahu did not analyze the glass manufacturing plant against other glass manufacturing plants, Dr. Sahu did conduct a form of benchmarking analysis with other, similar industries. [R. 483-1 at 50–53.] To the extent that Corning, Inc. and Philips North America are concerned that Dr. Sahu relied on "aspirational perfection" in crafting his opinions pertaining to their duty to the Plaintiffs, the Court addressed this issue in the March 9, 2022, Memorandum Opinion and Order by excluding Dr. Sahu's opinions pertaining to "best available practices." [R. 503 at 11; R. 571 at 13, 62.]

The Court finds, given Kentucky's "broad universal duty of care," that Corning, Inc. and Philips North America owed the Plaintiffs a duty of care. *Smith*, 158 F. App'x at 702. Corning, Inc. and Philips North America were operating a facility that emitted harmful chemicals into the air, and they had a duty to "exercise ordinary care in [their] activities to prevent foreseeable injury." *Reeves*, --- S.W.3d ----, 2021 WL 2753244, at *2. As for the foreseeability analysis, generally "the foreseeability of the risk of harm should be a question normally left to the jury under the breach analysis." *Greer v. Kaminkow*, 401 F. Supp. 3d 762, 776 (E.D. Ky. 2019) (quoting *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 913–14 (Ky. 2013)).

**b**

Plaintiffs can also demonstrate breach. Breach is a question of fact "for the jury to decide." *Greer*, 401 F. Supp. 3d at 770. "So long as there is a genuine dispute as to a material fact concerning breach, such that a reasonable jury could find that the defendant was negligent, the Court is precluded from granting summary judgment." *Kelly v. Arrick's Bottled Gas Serv., Inc.*, 2016 WL 4925787, at *2 (E.D. Ky. Sept. 14, 2016) (citing *Pathways, Inc. v. Hammons*, 113

S.W.3d 85, 88–89 (Ky. 2003)).

Here, there is a genuine dispute as to material facts sufficient to survive summary judgment. Reviewing the facts and drawing all reasonable inferences in the Plaintiffs' favor, Corning, Inc. and Philips North America operated a glass manufacturing facility that did not install particulate air pollution controls until 1974 to manage lead glass furnace emissions. [R. 483-1 at 17.] Furthermore, the electrostatic precipitator that was installed to manage lead glass furnace emissions was not replaced until thirty-two years later, in 2006, despite evidence that the electrostatic precipitator had not been properly maintained. *Id.* at 9, 17.

Dr. Sahu opines that Corning, Inc. and Philips North America were "sophisticated in the use of raw materials and input chemicals" but still failed to exercise reasonable care to protect the local community from air pollution or investigate the potential damaging impacts of their pollution on the local community. *Id.* at 9–10. This is evidenced, Dr. Sahu argues, by the failure to install air pollution controls until 1974 and in numerous other malfunctions and failures on Corning, Inc. and Philips North America's part thereafter. *Id.* at 55. Accordingly, the Court finds that there are genuine disputes as to material facts concerning breach and will not grant summary judgment on the basis of breach.

**c**

The causation element also weighs in favor of the Plaintiffs. Causation "presents a mixed question of law and fact." *Pathways*, 113 S.W.3d at 89 (citing *Deutsch v. Shein*, 597 S.W.3d 141, 145 (Ky. 1980)). The existence of legal cause is generally a question of fact for the jury and "only becomes a question of law for the Court where the facts are undisputed and are susceptible of but one inference." *Kelly*, 2016 WL 4925787, at *6 (quoting *Baily v. N. Am. Refractories Co.*, 95 S.W.3d 868, 872 (Ky. App. 2001)).

Kentucky has adopted the "substantial factor test" for causation as set forth in § 431 of the Restatement (Second) of Torts, which states that an "actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm." *Id.* at 91–92 (citing § 431 of the Restatement (Second) of Torts).  The restatement explains the term "substantial factor" as follows:

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent ... [T]his is necessary, but is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophical sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

Restatement (Second) of Torts § 431, cmt. a.

Corning, Inc. and Philips North America argue that the Plaintiffs "cannot demonstrate that Defendants' operations were the cause in fact of the lead that was found on their properties" for two reasons: (1) Plaintiffs have not established what amounts of lead would be expected on their properties absent Corning, Inc. and Philips North America's alleged contributions; and (2) Plaintiffs have not investigated and ruled out alternate sources of lead detected on their properties.  [R. 503 at 13–15.]  Plaintiffs respond that they "have adequately established the ambient background levels for lead on their properties" and "have concluded that the facility is the source of the lead contamination on Plaintiffs' properties."  [R. 17 at 18–19.]

The Court finds that Corning, Inc. and Philips North America's arguments are without merit.  Corning, Inc. and Philips North America premise their first argument on the fact that Plaintiffs' expert Mr. Lloyd improperly relied on Kentucky Guidance for Ambient Background

12

Assessment instead of the EPA's "Guidance for Comparing Background and Chemical Concentrations in Soil for CERCLA Sites" and that Mr. Lloyd "did no testing or analysis of the actual local background conditions."[5]  [R. 503 at 15.]  However, the claims against the Defendants include nuisance, trespass, and negligence.  As the Court has previously held, these are statutory claims that are not necessarily tied to EPA or state-imposed statutory cleanup standards.  [*See* R. 571 at 5–6 (citing *Bentley v. Honeywell Intern., Inc.*, 223 F.R.D. 471, 478 n.11 (S.D. Ohio 2004) and *Smith v. Carbide and Chem. Corp.*, 507 F.3d 372, 378 (6th Cir. 2007)).]

Corning, Inc. and Philips North America also argue both that Mr. Lloyd lacked a baseline for his data regarding the level of lead on the Plaintiffs' properties and that Mr. Lloyd failed to test or analyze "the actual local background conditions."  [R. 503 at 15.]  However, the facts do not support this argument.  Mr. Lloyd's opinion based the appropriate background lead levels on the Kentucky Guidance for Ambient Background Assessment that was conducted by the Kentucky Department of Environmental Protection in 2004 and subsequently adopted into the Kentucky regulations pertaining to environmental remediation.  [R. 485-1 at 14; *see also* 401 Ky. Admin. Regs. 100:030.]  The Background Assessment document provides that the mean lead in soils throughout the Commonwealth is 30 mg/kg and the mean background concentration for "the Bluegrass Region" (in which Danville is located) is 40 ppm.[6]  [R. 510-9 at 10; R. 510-10 at 2.]

---

[5] The Court is cognizant of the fact that Mr. Lloyd, the Plaintiffs' soil expert, recently passed away and that the Plaintiffs are seeking to replace him with another expert.  [R. 566.]  However, given the extensive nature of his soil sample testing, which has been extensively relied upon and discussed by experts on both sides of this litigation up to this point, the Court finds it appropriate to still address these arguments instead of denying them as moot in light of Mr. Lloyd's passing.

[6] The average ambient background of lead in soil in Boyle County specifically, where Danville is located, is 31.1 ppm. [R. 510-10 at 2.]

The purpose of the Kentucky Background Assessment is to "assist in comparing site data and background data for sites undergoing environmental assessment." [R. 510-9 at 3.] More than 800 soil samples were taken throughout the Commonwealth to determine the Background Assessment's mean background concentration of lead. *Id.* at 9. The Kentucky Background Assessment, therefore, provides an appropriate baseline against which to measure sites that are undergoing an environmental assessment, such as the Plaintiffs' properties in this case. Using the Background Assessment, Mr. Lloyd then took more than 400 soil samples in the Danville area and found that lead levels in the soil of the Plaintiffs' properties "were substantially higher than the published ambient background concentrations for lead in the 2004 Kentucky Background Assessment study." [R. 511 at 5.] The Background Assessment formed the foundation and baseline lead soil levels for Mr. Lloyd's opinions, and the Court finds that Mr. Lloyd's reliance on the Background Assessment was appropriate.

Furthermore, despite Corning, Inc. and Philips North America's argument to the contrary, Mr. Lloyd did in fact analyze potential alternative sources of lead in detail. For example, in his expert report Mr. Lloyd specifically addressed whether lead-based paint, vehicle emissions, coal ash, or fertilizers and pesticides could have affected the levels of lead on the Plaintiffs' properties. Mr. Lloyd found that such influences would not have affected the level of lead "due to their inclusion in KDEP's background data." [R. 503-1 at 12.] Mr. Lloyd also provided other, independent reasons why lead-based paint, coal ash, and fertilizers and pesticides would not have contributed significantly to the lead levels on the Plaintiffs' properties. *Id.* at 12–14. For example, with regard to the use of lead-based paint, Mr. Lloyd cited to a study conducted by the EPA that found that lead-based paint "had little influence on property soils beyond the drip line of the house" and therefore would not have impacted the collected data. *Id.* at 12. Because the

Court finds that this is not a causation situation "where the facts are undisputed and are susceptible of but one inference," *Kelly*, 2016 WL 4925787, at *6, the appropriate course of action is to permit this case to go to the jury.

### d

Corning, Inc. and Philips North America finally argue that Plaintiffs have failed to satisfy both the negligent trespass element of harm to the land and the negligence element of damages. [R. 503 at 27.] However, viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that both elements are satisfied.

Under the negligent trespass element of harm to the land, actual harm "refers to a physical injury to the property." *Wilhite*, 143 S.W.3d at 620–21. Under Kentucky law, the "mere presence of contamination" is not actionable. *Carbide and Chemicals Corp.*, 226 S.W.3d at 56. However,

> [p]roperty owners are not required to prove contamination that is an actual or verifiable *health* risk, nor are they required to wait until government action is taken. An intrusion (or encroachment) which is an unreasonable interference with the property owner's possessory *use* of his/her property is sufficient evidence of an actual injury (or damage to the property) to award actual damages.

*Id.* at 56–57. Here, the Plaintiffs have proffered evidence, that there is contamination present on the Plaintiffs' properties such that certain Plaintiffs risk suffering adverse health consequences from interacting with the soils on their land. Furthermore, Dr. Albert Westerman, one of Plaintiffs' experts, has opined that the contamination has constrained certain uses of the Plaintiffs' properties, "including maintaining vegetative ground cover, prohibiting children from playing in the yards, avoiding dermal contact with soils, and avoiding ingesting vegetables

grown on the properties."[7]  [R. 511 at 2.]

As for the issue of damages, that is primarily a question for the jury to decide.  *Cf. Radford v. DVA Renal Healthcare, Inc.*, 2010 WL 4779927, at *5 (E.D. Ky. Nov. 16, 2010) ("In examining a dispute over damages, Kentucky has long held that questions raised concerning damages are essentially questions of fact."); *Marchionda v. Embassy Suites Franchise, LLC*, 359 F. Supp. 3d 681, 704 (S.D. Iowa 2018) (finding that issues of breach, causation, and damages "remain for the jury to decide"); *Idaho v. Plum Creek Timber Co., Inc.*, 2005 WL 2415991, at *5 (D. Idaho Sept. 30, 2005) (finding that issues involving damages "raise questions of fact which must be left for the jury to decide"). Accordingly, Corning, Inc. and Philips North America's motion for summary judgment as to the negligence and trespass claims will be denied.

### 3

Corning, Inc. and Philips North America next ask the Court to dismiss the Plaintiffs' negligence per se claims (Count IV) because there is a lack of evidence as to any statutory violations.  [R. 503.]  Corning, Inc. and Philips North America first argue that Plaintiffs must base their negligence per se claim on state law and not federal law, such as the Clean Air Act. *Id.* at 20.  Corning, Inc. and Philips North America also argue that Plaintiffs cannot demonstrate any violations of Kentucky law.  *Id.* at 21–24.

Plaintiffs respond that Dr. Sahu's expert report belies the assertion that Corning, Inc. and Philips North America did not violate any state or federal laws.  [R. 517 at 35.]  Plaintiffs assert

---

[7] Plaintiffs also point to a diminution in value as evidence of harm to the property.  However, the Sixth Circuit has held that in Kentucky, "the diminution in value is a recognized measure of damages which can be used once an "actual injury…has been established."  *Smith v. Carbide and Chemicals Corp.*, 507 F.3d 372, 377 (6th Cir. 2007) (citing *Carbide and Chem. Corp.*, 226 S.W.3d at 55).  Therefore, the diminution in value itself is not proof of actual harm but is rather a recognized measure of damages.  *Id.*

that Corning, Inc. and Philips North America violated Kentucky air pollution regulation APCC-11, a number of other Kentucky regulations, and Title V of the Clean Air Act. *Id.* at 36–39.

Kentucky has codified the common law negligence per se doctrine at KRS § 446.070, which states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." In negligence per se cases, "the common-law negligence standard of ordinary care is replaced with a statutory or regulatory standard of care." *Finn v. Warren Cnty., Ky.*, 768 F.3d 441, 451 (6th Cir. 2014).

KRS § 446.070 creates a private right of action under which a damaged party may sue for a violation of a statutory standard of care, provided that three prerequisites are met: first, the statute in question must be penal in nature or provide "no inclusive civil remedy," *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky.2005); second, "the party [must be] within the class of persons the statute is intended to protect," *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2008) (citing *Hargis*, 168 S.W.3d at 40); and third, the plaintiff's injury must be of the type that the statute was designed to prevent. *Griffith v. Kuester*, 780 F.Supp.2d 536, 547 (E.D. Ky.2011) (quoting *Carman v. Dunaway Timber Co.*, 949 S.W.2d 569, 570 (Ky. 1997)). "Kentucky courts limit the common-law claim of negligence per se and decline to extend it to federal statutes and regulations." *Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 642 (W.D. Ky. 2018) (citing *Kemp v. Medtronic, Inc.*, 2001 WL 91119, at *1 (6th Cir. Jan. 26, 2001)); *see also Hayes v. Endologix, Inc.*, 449 F. Supp. 3d 676, 680–81 (E.D. Ky. 2020) ("The law of Kentucky is clear that '[v]iolations of federal laws and regulations and the law of other states do not create a cause of action based on KRS 446.070.") (quoting *Waltenburg v. St. Jude Med. Inc.*, 33 F. Supp. 3d 818, 837 (W.D. Ky. 2014)).

Here, Plaintiffs are seeking to bring a negligence per se claim based on the Clean Air Act, which is a federal statute. *Reg'l Airport Auth. of Louisville and Jefferson Cnty. v. LFG, LLC*, 255, F. Supp. 2d 688 (W.D. Ky. 2003) is instructive. There, the Regional Airport Authority sought to recover under a negligence per se theory, arguing that LFG had violated a Kentucky statute that prohibited

> Any person from discharging air contaminants or other materials which:
> (1) exceed applicable emission standards established by regulation of the air pollution control board [and][e]xceeding these standards shall constitut[e] a rebuttable presumption of violation of this standard; or
> (2) cause injury, detriment, nuisance, or annoyance to any considerable number of persons of the public or which endanger the comfort, repose, health, or safety of any such persons or the public or which cause of have a natural tendency to cause injury or damage to business or property.

*Id.* at 693 (citing KRS § 77.155). Regional Airport Authority charged LFG with violating, among other regulations, the Jefferson County regulation that had adopted "in full the EPA regulations set forth in 40 CFR Part 6, Subpart M." *Id.* at 694. The EPA regulations specified in 40 CFR Part 6, Subpart M "promulgate rules under section 112 of the Clean Air Act for asbestos emissions." *Id.* The Court noted generally that the Clean Air Act's purpose "is to protect and enhance the quality of the Nation's air resources, and to encourage and promote federal, state and local governmental action consistent with pollution prevention." *Id.* (citation omitted). Upon finding that the Regional Airport Authority was seeking to recover "costs incurred in cleaning up asbestos and other environmental contamination on the Site," the Court noted that this was "not the type of harm that the statutes and regulations intended to prevent." *Id.* Specifically, the Court found that "the statutes and regulations were designed to protect the public from air contamination, not to protect property owners from incurring costs to clean up asbestos and other environmental contaminants." *Id.*

Here, the Plaintiffs are similarly attempting to recover damages for personal damage to their properties.  However, as the Court found in *Regional Airport Authority*, that is not the kind of harm the Clean Air Act was intended to prevent.  While the Clean Air Act permits "citizen suits which seek enforcement of emissions standards or limitations promulgated under the Clean Air Act…the Clean Air Act does not authorize a private cause of action for compensatory damages for alleged violations of the Act."  *Abuhouran v. Kaiserkane , Inc.* 2011 WL 6372208, at *4 (D.N.J. Dec. 19, 2011).  This means that while a citizen is permitted to sue under the Clean Air Act, they are essentially standing in the shoes of the EPA, not suing on their own behalf. *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1522 (9th Cir. 1987).

Courts around the Country have found that the Clean Air Act does not give rise to a private right of action.  *E.g.*, *Dyal v. Cardigan*, 2020 WL 1332030, at *15 (M.D. Fla. Mar. 23, 2020) (finding plaintiff did not have a private cause of action under the Clean Air Act); *Barca v. CSX Freight Railroad*, 2019 WL 9045456, at *2 (D. Mass. Mar. 1, 2019) (citing approvingly to *Abuhouran*); *Satterfield v. J.M. Huber Corp.*, 888 F. Supp. 1567, 1571 (N.D. Ga. 1995) (denying Plaintiff's negligence per se claims after finding "that the federal and Georgia Clean Air Acts do not provide for an action for private recovery") (citing *Sierra Club*, 834 F.2d at 1522). Accordingly, the Court finds that Plaintiffs cannot attempt to support their negligence per se claim with the Clean Air Act and its accompanying Kentucky regulations.

Plaintiffs, however, do not rely exclusively on the Clean Air Act for their negligence per se claim.  In their response, while Plaintiffs concede that the bellwether Plaintiffs' per se claims were "not based on violations of KRS §§ 224.46-012 to 224.46-870," Plaintiffs point to Kentucky air pollution regulation APCC-11 and the following additional regulations: 401 KAR 59:251, 401 KAR 35:120, 401 KAR 35:070, 401 KAR 38:030, and 401 KAR 35:090.  [R. 494-

20 at 82–83; 517 at 35–36.]  While negligence per se claims may be "predicated upon alleged violations of administrative regulations," they are only permitted in the "specific context of public safety." *Carr v. Lake Cumberland Reg. Hosp.*, 2017 WL 4978124, at *5 (E.D. Ky. Oct. 31, 2017) (citing *Centre College v. Trzop*, 127 S.W.3d 562, 567 (Ky. 2003)).  Negligence per se claims alleging violations of administrative regulations must meet the following two-part test: "(1) the regulation must be consistent with the enabling legislation and (2) it must apply to the safety of the citizenry." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 535 (Ky. 2011).

Plaintiffs argue that APCC-11, which went into effect in 1970, required "existing installations" such as Corning Inc.'s glass manufacturing facility, to "comply with all the provisions of this regulation within 18 months."  [R. 517-8 at 7.]  Plaintiffs argue that there is "no evidence that Corning satisfied this 18-month deadline."  [R. 517 at 35.]

However, a lack of evidence is not evidence, and here Plaintiffs provide no evidence that Corning, Inc. failed to comply with APCC-11.  Plaintiffs also left out the portion of the regulation that states that existing installations shall comply within 18 months "unless a time schedule of compliance requiring additional time has been approved by the Commission pursuant to the provisions of KRS 224.410.  [R. 517-8 at 7.]  Plaintiffs admit that Corning, Inc. did install pollution control devices, and Plaintiffs fail to provide any evidence that Corning, Inc. failed to receive additional time under KRS 224.410 in which to comply with the statute. Therefore, Plaintiffs have not demonstrated that Corning, Inc. violated APCC-11 in the first place.

For the remaining Kentucky Administrative Regulations above, which have all been repealed, the Plaintiffs have failed to demonstrate that they are within the class of persons the statutes were intended to protect or that the injuries alleged are the type that the statute was

intended to prevent.  Plaintiff's expert Dr. Sahu lists the following alleged violations of 401 KAR 35 and 38 in Table 6 of his expert report:

- Firm failed to demonstrate that it maintains sudden liability insurance in violation of 401 KAR 35:120;
- Firm failed to demonstrate it maintains a closure plan including the surface impoundment recently constructed at its facility in compliance with 401 KAR 35:070 and Section 1 of 401 KAR 38:030;
- Firm failed to submit an updated closure cost estimate including the surface impoundment in violation of Section 1 of 401 KAR 35:090; and
- Firm failed to demonstrate adequate financial assurance of closure including the surface impoundment in violation of 401 KAR 35:090.

[R. 494-20 at 82–83.]  A review of Corning, Inc. and Philips North America's alleged violations makes it clear that the alleged injuries are not the type that these statutes were intended to prevent.  For example, the fact that Corning, Inc. failed to maintain liability insurance or provide a closure cost estimate cannot reasonably be attached to Plaintiff's alleged property harms. Chapter 35 of KAR 401 pertained to the standards owners and operators of hazardous waste treatment, storage, and disposal facilities must follow and Chapter 38 involved the permitting process for hazardous waste.  Plaintiffs have failed to show how these regulations, which were intended to govern the logistical and practical works of the facilities, created a cause of action for personal property damage.

Furthermore, the Court is skeptical that these regulations apply to the safety of the citizenry as required.  "A public-safety statute or regulation is one that imposes upon a defendant a specific duty for the protection of others."  *Richardson v. United States*, 2011 WL 2133652, at *4 (E.D. N.C. May 26, 2011) (citing *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 266 (N.C. 2006).  The Plaintiffs would be hard pressed to demonstrate that a failure by Corning, Inc. and Philips North America to update their closure cost estimate or show adequate financial

assurance violated a duty to protect the public.  Accordingly, the Court will grant Corning, Inc.

and Philips North America summary judgment on Plaintiffs' negligence per se claims.[8]

**4**

Corning, Inc. and Philips North America argue that all of the Plaintiffs' property damage

claims are barred by the statute of limitations.  [R. 503 at 24.]  Kentucky law establishes that

actions for harm to real property based on negligence, nuisance, or trespass, have a five-year

statute of limitations.  KRS § 413.120; *Wilhite*, 143 S.W.3d at 610 (finding that "actions for

damages to real property caused by another's negligence sound in trespass, and the five-year

statute of limitations applies to them"); *Hubbard v. Prestress Servs. Indus., LLC*, 2020 WL

6375187, at *4 (Ky. App. Oct. 30, 2020) ("Kentucky precedent indicates that the five-year

statute of limitations in KRS 413.120 applies to nuisance claims.") (citing *Lynn Min. Co. v.

Kelly*, 394 S.W.2d 755, 757 (Ky. 1965)).

"Although Kentucky law sets the length of the statute of limitations, the date that the

statute of limitations begins to run is established by federal law."  *Martello v. Santana*, 874 F.

Supp. 2d 658, 673 (E.D. Ky. 2012), *aff'd*, 713 F.3d 309 (6th Cir. 2013) (citing *Winnett v.

Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010)).  "Under federal law, as under most laws,

the limitations clock starts ticking 'when the claimant discovers, or in the exercise of reasonable

---

[8] Plaintiffs' passing reference to 401 KAR 59:251 is likewise unavailing.  The regulation is referenced in a letter from the Kentucky Air Quality Division that Dr. Sahu quotes in his report, and Plaintiffs briefly cite to Dr. Sahu's report in their response brief.  [R. 517 at 36.]  The statute merely promulgates performance standards for glass manufacturing plants, and this means the arguments stated above in relation to 401 KAR 35 and 38 apply here as well.  Furthermore, Plaintiffs fail to support their one-paragraph argument with analysis or caselaw or even demonstrated that this is a statute under which they may sue.  Without more, the Court is left with too many questions and will not develop arguments on the Plaintiffs' behalf.  As the Sixth Circuit has held, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."  *Navarro v. Proctor & Gamble Co.*, 515 F. Supp. 3d 718, 778 (S.D. Ohio 2021) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

diligence should have discovered, the acts constituting the alleged violation.'" *Id.* (quoting *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994)).  The Kentucky Supreme Court has indicated that "[a]n injured party has an affirmative duty to use diligence in discovering the cause of action within the limitations period.  Any fact that should excite his suspicion is the same as actual knowledge of this entire claim." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 64 (Ky. 2010) (quoting *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 440 (W.D. Ky. 1994)).

Corning, Inc. and Philips North America argue that the Plaintiffs' allegations and proffered expert testimony "demonstrate that Plaintiffs should have been on notice for decades if any of the harm they allege in this case actually existed." [R. 503 at 25.]  Corning, Inc. and Philips North America point to numerous examples of Plaintiffs testifying about their memories of seeing plumes of smoke and ash fallout.  *Id.*  In response, Plaintiffs argue that seeing plumes of smoke does not equate to being put on notice of property contamination.  [R. 517 at 29–30.]  Plaintiffs also argue that Corning, Inc. and Philips North America failed to proffer evidence supporting a conclusion that the Plaintiffs had constructive notice "that the soils of their properties may have been contaminated with lead dust particles emanating from the Facility more than five years prior to filing suit." *Id.* at 31.

Here, viewing all evidence in the light most favorable to the Plaintiffs, there is a genuine issue of material fact as to the statute of limitations issue.  First, Corning, Inc. and Philips North America have proffered no binding caselaw, and the Court is not aware of any, that stands for the proposition that the mere presence of smoke, even combined with falling dust particles, is sufficient to put parties on notice and begin the statute of limitations period.

Furthermore, the cases relied on by Corning, Inc. and Philips North America are

distinguishable.  In *Ball v. Union Carbide Corp.*, individuals living near Oak Ridge, Tennessee, who had cancer, or were at an increased risk of acquiring cancer, sued the parties responsible for manufacturing nuclear weapons at Oak Ridge.  385 F.3d 713, 717 (6th Cir. 2004).  The district court granted summary judgment to the defendant manufacturers and the Sixth Circuit affirmed the court's decision.  *Id.*  Of particular interest, the Sixth Circuit affirmed the district court's finding that, for the plaintiffs' personal injury claims, the one-year statute of limitations period had run because "local and national news media repeatedly covered the issue" for years before the parties filed suit.  *Id.* at 722.  In this case, however, the record does not indicate such robust local and national news coverage.  In fact, the Plaintiffs' depositions indicate that they did not know about the contamination until after the litigation was filed.  [*See, e.g.*, R. 517-1 at 9; R. 517-2 at 13; R. 517-3 at 15–16; R. 517-4 at 6; R. 517-5 at 6; R. 517-6 at 7; R. 517-7 at 6.]

*Newberry v. Serv. Experts Heating & Air Conditioning, LLC*, 806 F. App'x 348 (6th Cir. 2020), is also distinguishable.  In *Newberry*, the plaintiff sued the defendant over the "malfunction of, and failure to fix, water filtration[] systems installed by defendant in plaintiffs' home."  *Id.* at 351.  The district court granted summary judgment on the plaintiffs' negligence claim because the one-year statute of limitations had run.  *Id.* at 356.  The Sixth Circuit affirmed, finding that the presence of "blackish brown material" in the water in December 2011 gave the plaintiffs constructive knowledge and commenced the one-year statute of limitations, which had expired by 2013 when the plaintiffs filed suit.  *Id.* at 351, 359.  Blackish brown material in drinking water is much more extreme than the situation in this case.  Here, the parties did not notice similar suspicious substances on their properties that would have put them on notice. Because Corning, Inc. and Philips North America have pointed to no facts that demonstrate that the statute of limitations period has passed, the Court will deny Corning, Inc. and Philips North

America's motion for summary judgment on the statute of limitations issue.

**5**

Corning, Inc. and Philips North America next argue that the Plaintiffs cannot recover remediation costs as damages under any theory in this case.  [R. 503.]  Plaintiffs may have seen this argument coming because, in a footnote, they responded that although restoration costs would "exceed[] the amount by which the injury decreased the property's value," they obtained expert reports regarding the estimated costs of remediation "out of an abundance of caution."  [R. 517 at 21 n.10.]

As the Court has already held, Kentucky law does not permit Plaintiffs to recover remediation costs that are in excess of a property's decrease in value.  [R. 571 at 23.]  Kentucky law provides that "the amount by which the injury to the property diminishes its total value operates as an upper limit on any damage recovery." *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66, 70 (2000).  "The effect of *Ellison* is to prevent a claimant from seeking cost of repair damages that exceed the diminution in fair market value" *Mountain Water Dist. v. Smith*, 314 S.W.3d 312, 315 (Ky. App. 2010).  Here, the Plaintiffs have admitted that the costs to remediate the Plaintiffs' properties would "exceed[] the amount by which the injury decreased the property's value."  [R. 517 at 21 n.10.]  Accordingly, Corning, Inc. and Philips North America's motion for summary judgment as to the remediation costs issue is granted.

**6**

Next, Corning, Inc. and Philips North America argue that Plaintiffs' fraudulent concealment claim (Count VI) should be dismissed for lack of evidence.  [R. 503 at 31.]  To state a claim for fraudulent concealment, also known as fraud by omission, a plaintiff must demonstrate that: "(1) the defendant had a duty to disclose the material fact at issue; (2) the

defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact

induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence."

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (citing

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. App. 2003)).

Although Kentucky recognizes the duty to disclose in four circumstances,[9] the only circumstance

at issue in this case is whether Corning, Inc. and Philips North America "partially disclosed

material facts to the plaintiff but created the impression of full disclosure." *Id.* (quoting

*Rivermont Inn*, 113 S.W.3d at 641).

Defendants argue that they are entitled to summary judgment as to the fraudulent

concealment claim for several reasons: (1) Plaintiffs failed to depose anyone "to develop proof in

support of their failure to disclose allegations;" (2) Plaintiffs have failed to present evidence that

Corning, Inc. and Philips North America violated any regulatory or common law requirements

for disclosing information or lawfully withheld information from the public; (3) evidence that the

facility was under constant supervision through the years cuts against the argument that Corning,

Inc. and Philips North America failed to disclose information they were required to disclose; and

(4) Plaintiffs failed to identify specific information that Corning, Inc. and Philips North America

should have disclosed and did not. [R. 503 at 32–33.] In a one-paragraph response, Plaintiffs

argue that Corning, Inc. and Philips "only partially disclosed material facts to public agencies

regarding the emissions from the Facility and created the impression of full disclosure in doing

so." [R. 517 at 25.] Plaintiffs also cite to this Court's previous Memorandum Opinion and Order

---

[9] Kentucky law recognizes the duty to disclose when (1) the duty arises from a confidential or fiduciary relationship; (2) the duty arises from a statutorily imposed duty; (3) "when a defendant partially disclosed material facts to the plaintiff but created the impression of full disclosure;" and (4) "where one party to a contract has superior knowledge and is relied upon to disclose same." *Giddings & Lewis, Inc.*, 348 S.W.3d at 747–48.

in which the fraudulent concealment claim was not dismissed at the motion to dismiss stage. [*See* R. 110 at 26.]

However, success at the motion to dismiss stage does not equate to success at the motion for summary judgment stage. *See, e.g.*, *Betty, Inc. v. PepsiCo, Inc.*, 2020 WL 871509, at *1 (S.D.N.Y. Feb. 21, 2020) (finding that survival of motion to dismiss does not equate to survival at motion for summary judgment stage because the motions apply completely different standards of review); *Sherman v. Fin. Credit, LLC.*, 2003 WL 1732601, at *2 n.2 (N.D. Ill. Apr. 1, 2003) (finding that "simply because Plaintiff has survived this motion to dismiss does not mean that Plaintiff will automatically prevail on a motion for summary judgment or at trial"). At the summary judgment stage, unlike when considering a motion to dismiss, "the Court considers facts adduced through discovery and then makes its determination." *Betty, Inc.*, 2020 WL 871509, at *1.

Here, although the Plaintiffs satisfied the plausibility standard necessary to survive a motion to dismiss in March of 2015, the claim cannot survive summary judgment. Plaintiffs had more than six years to develop the record and show that Corning, Inc. and Philips North America engaged in fraudulent concealment, and instead they simply rely on two points in their response: (1) "Plaintiffs have plausibly ple[]d that Defendants had only partially disclosed material facts to public agencies regarding the emissions from the Facility, and created the impression of full disclosure in doing so," and (2) Plaintiffs have presented evidence that would allow a reasonably jury to find that Defendants were less than completely forthcoming with regulatory agencies regarding the emissions from the Facility, and that Plaintiffs suffered damages as a result." [R. 517 at 25.] However, Plaintiffs failed to provide a single example in their response of Corning, Inc. or Philips North America being "less than completely forthcoming," instead assuming that

the Court would search through the record and find this evidence on their behalf. This the Court will not do. *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) ("It is not the district court's…duty to search through the record to develop a party's claims; the litigant must direct the court to evidence in support of its arguments before the court."); *see also Thomas v. Abercrombie & Fitch Co.*, 301 F. Supp. 3d 749, 754 (E.D. Mich. 2018) ("The Court has no duty to scour the record to find factual support for a party's claims.") (citing *Magnum Towing & Recovery*, 287 F. App'x at 449); *BAC Homes Loans Serv, L.P. v. Fall Oaks Farm LLC*, 2013 WL 139887, at *2 (S.D. Ohio Jan. 10, 2013) (finding that the district court "has no duty when deciding a motion for summary judgment to scour the record for evidence to support a [party's] claims") (citing *AbdulSalaam v. Franklin Cnty. Bd. Of Commrs.*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009)).

Furthermore, Plaintiffs failed to respond or dispute Corning, Inc. and Philips North America's arguments that (1) Plaintiffs failed to depose anyone to develop proof to support the failure to disclose claim, (2) Plaintiffs failed to proffer evidence that Corning, Inc. and Philips North America violated any regulatory or common law requirements for disclosing information, (3) Plaintiffs failed to refute evidence from their own experts that the glass manufacturing facility was under constant supervision, at least since 1987, and (4) Plaintiffs failed to identify what information Corning, Inc. and Philips North America should have disclosed and did not. Give this uncontested evidence, even viewed in the light most favorable to the Plaintiffs, the Court will grant the motion for summary judgment as to the fraudulent concealment claim.

**7**

Corning, Inc. and Philips North America also argue that because the focus of this first bellwether trial is on "property damage only" Plaintiffs, claims for battery or negligent infliction

of emotional distress should be dismissed. [R. 503 at 33–34.] In response, Plaintiffs agree that these bellwether Plaintiffs "are not pursuing claims for battery or negligent infliction of emotional distress" because they have only asserted property damage claims. [R. 517 at 2 n.1.] Ultimately, there is no disagreement over the fact that these bellwether Plaintiffs are not pursuing battery or negligent infliction of emotional distress claims. Accordingly, because there is no disagreement over Corning, Inc. and Philips North America's request, the Court will grant the request insofar as it applies to the bellwether Plaintiffs.

## 8

Finally, Corning, Inc. and Philips North America argue that the nuisance and trespass claims of certain individual bellwether Plaintiffs, specifically Melvin Harris, Brenda Carter, Modern Holdings, and Janet Mitchel should be dismissed. [R. 503 at 34–38.] For the following reasons, the claims of the individual Plaintiffs will not be dismissed.

Corning, Inc. and Philips North America argue that Melvin Harris, Brenda Carter, and Modern Holdings all lack a "viable claim that their properties have actually been damaged" because the "use of the properties has not been disrupted by the below-regulatory level of lead detected on them." [R. 503 at 36.] The Plaintiffs respond that an examination of the record indicates a different conclusion. [R. 517 at 31–33.]

Under Kentucky law, "[a] permanent nuisance shall exist if and only if a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property, and thereby causes the fair market value of the claimant's property to be materially reduced." KRS § 411.530(2). In a temporary nuisance case in which "the property is occupied by the owner the measure of damages…is the diminution in the value of the use of the property during the

continuance of the nuisance, and if the property is not occupied by the owner it is the reduction

in the rental value during that period." *Adams Const. Co. v. Bentley*, 335 S.W.2d 912, 913 (Ky.

App. 1960).[10]  For both negligent and intentional trespass, a plaintiff must show "an

unreasonable interference with the property owner's possessory use of his/her property."

*Cantrell v. Ashland Oil, Inc.*, 2010 WL 1006391, at *4 (Ky. 2010) (citing *Smith v. Carbide and

Chemical Corp.*, 226 S.W.3d 52, 56–57 (Ky. 2007)).

Here, Modern Holdings owner Bob Allen testified that when he sells his property, which

he intends to do in the future, he will have to disclose the contamination.  [R. 517-1 at 15.]  The

implication is that disclosure of the contamination will result in a reduction in the fair market

value.  Furthermore, Mr. Allen was informed that the use  of the grassy areas on his property

should be restricted and that nothing should be grown on that area and that ground cover should

be maintained.  *Id.*  This arguably constitutes an interference with the use and enjoyment of the

property.  Melvin Harris and Brenda Carter similarly testified to impacted property values and

affected use and enjoyment of the property.  Mr. Harris testified that he had been instructed not

to grow vegetables on his properties, to maintain ground cover and to no allow children to play

in the yards of his properties.  [R. 517-6 at 10–11.]  Mr. Harris further testified that he is

attempting to renovate one property to rent and to sell another, but that both values have been

hindered by contamination.  *Id.* at 10.  Ms. Carter also testified that the Plaintiffs' environmental

experts told her to refrain from interacting with the soils on her property, which required her to

stop such home improvement projects as installing new fencing, landscaping, and replacing the

---

[10] This case directly cuts against Corning, Inc. and Philips North America's argument that nuisance claims require the owner of the property to also be the occupant.  [R. 503 at 35.]  The statute makes no such distinction.

patio on her home.[11]  [R. 517-7 at 15–17.]  This testimony, in addition to the expert reports of Dr. Westerman and Dr. Kilpatrick, demonstrates a genuine issue of material fact, and Modern Holdings, Melvin Harris, and Brenda Carter will not be dismissed from the litigation.

Janet Mitchel is a closer question.  Ms. Mitchel purchased her property in April 2017, approximately three and a half years after this litigation commenced.  [R. 517-4 at 6.]  By this time, the local news had reported on the issue.  [R. 311 at 85.]  In fact, Dr. Kilpatrick, one of Plaintiffs' experts, opined that by August 30, 2015, it is likely that "buyers of property in the Affected Area will be or have been aware of the ongoing risk of soil and groundwater contamination since the local media reported on the contamination following the filing of the lawsuit."  [R. 503-14 at 9.]

"[P]urchasers of land who have knowledge of the existence of damaging permanent structures will not hereafter be allowed to recover for any damages to the land since they are presumed to have obtained the benefit of reduced value by the amount the prior owner could have recovered."  *Ky. W. Va. Gas Co. v. Lafferty*, 174 F.2d 848, 854 (6th Cir. 1949); *see also Norton Coal Mining Co. v. Wilkie*, 5 S.W.2d 1058, 1060 (Ky. App. 1928) ("Appellees cannot recover for any damages growing out of conditions which existed at the time they purchased the farm, and which conditions were known, or might, by the exercise of ordinary prudence, have been known, by them.").

Knowledge is key to this inquiry, and Ms. Mitchel testified that although she purchased her house in 2017, she did not learn about the lawsuit or possible contamination on her property

---

[11] Furthermore, to the extent that Ms. Carter permits her brothers to live on her property rent free, "the value of the 'use' of property is not necessarily restricted to its rental value…it is possible for property which is not rentable to have some use value to the occupant."  *Bentley*, 335 S.W.2d at 914.

until 2019.  [R. 517-4 at 6.]  Furthermore, she testified that her property was inspected prior to her purchasing it, and "the presence of lead in the soils of her property was not disclosed to her." [R. 517 at 34 (citing 517-4 at 6).]  Although Dr. Kilpatrick opined that buyers would likely be aware of the contamination by August 30, 2015, he also stated that market knowledge about the alleged contamination was delayed, which supports Ms. Mitchel's testimony that she did not learn of the property's alleged contamination until 2019.  [R. 517 at 34 (citing R. 513-4 at 12).]

In further support of Ms. Mitchel, Corning, Inc. and Philips North America's own expert C.W. Wilson opined that even for home sales occurring after the lawsuit was filed, market participants in Danville were still not disclosing the possible contamination of properties near the glass manufacturing facility.  [R. 492-2 at 25.]  Mr. Wilson further opined that although news coverage about the lawsuit "was significant" in 2013 when the lawsuit was filed, "there is no visible or on-going evidence of reporting on the alleged problem in the impacted area or the related media which provides new[s] coverage for Danville, including the Lexington media outlets."  *Id.*  These facts support a finding that Ms. Mitchel, even exercising ordinary prudence, could still lack knowledge about the alleged contamination until after she purchased her house. After review, the Court finds that a genuine issue of material fact exists on this issue and will permit Ms. Mitchel's claim to proceed.

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Corning, Inc. and Philips North America's Motion for Summary Judgment **[R. 503]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion as to property damage claims arising from TCE or arsenic is **GRANTED**;

2. The motion as to Plaintiffs' negligence claims, including that Plaintiffs have failed to

prove "actionable harm" to their properties (Counts I–III) is **DENIED**;

3. The motion as to Plaintiffs' negligence per se claims (Count IV) is **GRANTED**;

4. Corning, Inc. and Philips North America's request that Counts I–IV be barred on statute of limitations grounds is **DENIED**;

5. Corning, Inc. and Philips North America's request that Plaintiffs' not be permitted to recover remediation costs as damages for the property damage claims (Counts I–IV) is **GRANTED**;

6. The motion as to Plaintiffs' fraudulent concealment claim (Count VI) is **GRANTED**;

7. The motion as to Plaintiffs' claims for battery or negligent infliction of emotion distress (Counts V and VII) are **GRANTED** as to the bellwether Plaintiffs; and

8. The motion as to the individual plaintiffs Melvin Harris, Brenda Carter, Modern Holdings, and Janet Mitchel is **DENIED**.

This the 28th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge