UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| MODERN HOLDINGS, LLC, *et al.*,  )   <br>  ) <br> Plaintiffs  ) <br>  ) <br> v.  ) <br>  ) <br> CORNING, INC., *et al.*,  ) <br>  ) <br> Defendants.  ) | Case No. 5:13-cv-00405-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*

This matter is before the Court on the Plaintiffs' Motion for New Trial. [R. 707.] The Plaintiffs sued Defendant Philips Electronics for nuisance and trespass, arguing that Philips's glass manufacturing facility contaminated the Plaintiffs' properties with hazardous materials. After a twelve-day trial, the jury found Philips not liable for the Plaintiffs' claims. The Plaintiffs now move for a new trial. But because they fail to show that the jury reached a seriously erroneous result, the motion is **DENIED**.

**I**

The Plaintiffs include companies and individuals who own property near a glass manufacturing facility in Danville, Kentucky. Corning, Inc. owned and operated the facility between 1952 and 1983 and Philips North America owned and operated the facility between 1983 and 2013.[1] [R. 211 at 2.] The bellwether Plaintiffs in this case alleged that they suffered property damage because of the release or dispersion of hazardous materials from the glass manufacturing facility over the years. Accordingly, the Plaintiffs brought nuisance, trespass, and

---

[1] Operations technically ceased in 2011 and Philips sold "portions of the Site, including the Facility" back to Corning in 2013. [R. 311 at 56.]

negligence claims. *See id.* at 63-78. The Plaintiffs initially brought these claims against both Philips Electronics North America Corporation and Corning, but the parties reached a settlement with Corning. [R. 544.]

The Court conducted a twelve-day trial on the Plaintiffs' claims against Philips. [R. 700.] The jury deliberated from 3:27 p.m. until 5:08 p.m. when they returned a verdict. *Id.* The jury found that the Plaintiffs knew or should have known that their properties may have been contaminated with lead dust particles emanating from the Philips facility before November 27, 2008. *Id.* The jury also found in favor of Philips on each of Plaintiffs' trespass and nuisance claims because the Plaintiffs failed to prove by a preponderance of the evidence that Philips had trespassed on their properties or that Philips' actions constituted a nuisance on their properties. *Id.* The Plaintiffs request a new trial. [R. 707.]

## II

Under Federal Rule of Civil Procedure 59, the court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Rule 59 generally allows a new trial when the jury reached a "seriously erroneous result" due to "(1) the verdict being against the [clear] weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509 (6th Cir. 2013) (internal quotation marks and citations omitted) (alteration in original).

When a party requests a new trial because the verdict is against the weight of the evidence, the Court "will uphold the jury verdict if it is one 'the jury reasonably could have reached; [the Court] cannot set it aside simply because [it] think[s] another result is more justified.'" *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (quoting

*Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014)). The Plaintiffs argue that the jury's statute of limitations finding is against the weight of the evidence, the verdict form contained errors, the jury failed to deliberate, and Philips used discriminatory preemptory challenges. [R. 707-1.]

**A**

The jury found that the Plaintiffs knew or should have known about possible lead dust contamination on their properties before November 27, 2008. [*See, e.g.*, R. 696 at 1.] Thus, the Plaintiffs' claims are barred by the statute of limitations. *See* KRS § 413.120. The Plaintiffs argue that this finding was against the weight of the evidence. [R. 707-1 at 2.]

Kentucky law provides that actions for harm to real property based on negligence, nuisance, or trespass, have a five-year statute of limitations. KRS § 413.120; *Wilhite*, 143 S.W.3d at 610 (finding that "actions for damages to real property caused by another's negligence sound in trespass, and the five-year statute of limitations applies to them"); *Hubbard v. Prestress Servs. Indus., LLC*, 2020 WL 6375187, at *4 (Ky. App. Oct. 30, 2020) ("Kentucky precedent indicates that the five-year statute of limitations in KRS 413.120 applies to nuisance claims.") (citing *Lynn Min. Co. v. Kelly*, 394 S.W.2d 755, 757 (Ky. 1965)).

Although Kentucky law provides the length of the statute of limitations, "the date that the statute of limitations begins to run is established by federal law." *Martello v. Santana*, 874 F. Supp. 2d 658, 673 (E.D. Ky. 2012), *aff'd*, 713 F.3d 309 (6th Cir. 2013) (citing *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010)). Under federal law, the limitations clock starts when "the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994). Moreover, the "injured party has an affirmative duty to use diligence

in discovering the cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of this entire claim." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 64 (Ky. 2010) (quoting *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 440 (W.D. Ky. 1994)). So, the statute of limitations would bar the Plaintiffs' claims if the Plaintiffs should have known that their properties may have been contaminated with lead dust particles emanating from the Philips facility before November 27, 2008.[2]

The Plaintiffs argue that a reasonable jury could not have found that the Plaintiffs knew or should have known that their property may have been contaminated with lead dust particles emanating from the Philips facility before November 27, 2008. [R. 707-1 at 2-11.] The Plaintiffs argue that these findings were not reasonable because the Plaintiffs testified that they were not aware of the lead contamination until at least 2013 and their expert testified that the Danville community became aware of lead contamination in 2015, in part because media coverage began around 2013. [R. 707-1 at 2-3.]

However, Philips contends that the Plaintiffs' testimony shows that a reasonable member of the Danville community should have known that their property may be contaminated with lead from the facility. [R. 718 at 10.] Philips cites Plaintiffs Wanda Beasley, Brenda Carter, and Melvin Harris, who testified that they recalled seeing smoke emanate from the facility for years and were not permitted to eat the snow outside during the winter because of possible contamination. *Id.* For example, Ms. Beasley testified that she "could always" see smoke coming from the facility. [R. 701 at 26.] Similarly, Mr. Harris testified that he was not allowed

---

[2] That Plaintiff Janet Mitchel bought her property in 2017 does not excuse her from the statute of limitations because any claims based on her property were time-barred before she purchased it. *See Bowden v. City of Franklin*, 13 Fed. App'x 266, 274 (6th Cir. 2001) ("An action for trespass usually accrues when the trespass is committed."); *Bickett v. Countrymark Energy Res., LLC*, 250 F. Supp. 3d 309, 318 (W.D. Ky. 2017) (same for nuisance); *accord Ky. W. Va. Gas Co. v. Lafferty*, 174 F.2d 848, 854 (6th Cir. 1949).

4

to eat snow as a child because it had soot on it and "something had to be wrong with it." [R. 703 at 104-06.] Ms. Beasley likewise testified that she remembered seeing smoke coming from the facility and was not allowed to eat the snow outside. *Id.* 135-36. These conditions existed for decades. *See id.* Accordingly, a reasonable jury could find that a resident of the Danville area knew or should have known about possible lead contamination. *See Hazel*, 863 F. Supp. at 440.

Even if the jury's finding was against the weight of the evidence, the Plaintiffs would not be entitled to a new trial. A party requesting a new trial must show that the jury reached a seriously erroneous *result*. *Cummins*, 727 F.3d at 509. Thus, the movant must establish that an error affected the trial's conclusion. *See Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998) ("[A] new trial will not be granted unless the evidence would have caused a different outcome at trial."); *accord Cigna Ins. Co. v. Oy Saunatec*, 241 F.3d 1, 8 (1st Cir. 2001) (holding that the movant must show that the outcome is against the weight of the evidence). Here, the jury found Philips not liable for the underlying claims. [*See* R. 696.] Thus, the result would be the same even if the jury's finding relating to the statute of limitations was erroneous: Philips is not liable. Accordingly, the Plaintiffs fail to show that the jury reached a seriously erroneous result. *Cummins*, 727 F.3d at 509.

**B**

The Plaintiffs also argue that the verdict forms "contain[ed] errors and [were] confusing," requiring a new trial with corrected forms. [R. 707-1 at 11.] To preserve an error for review, a party must object to an error in an instruction given or request an instruction and object to the failure to give that instruction. Fed. R. Civ. P. 51(d)(1). The Sixth Circuit generally requires formal objections. *See Eid v. Saint-Gobain Abrasives, Inc.*, 377 Fed. App'x 438, 441 (6th Cir. 2010). The Plaintiffs do not contend that they objected to the verdict forms or that the Court had

5

reason to know of their dissatisfaction with the jury forms. Since the Plaintiffs failed to object to the verdict forms, the Court's review is discretionary and only for plain error that affected the Plaintiffs' substantial rights. *Id.* at 442; Fed. R. Civ. P. 51(d)(2).

A plain error is "an obvious and prejudicial error that requires action by the reviewing court in the interests of justice." *Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999) (internal quotation marks omitted). It is a "very high standard," which the party bringing the objection bears. *Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 820 (6th Cir. 2007). Here, the Plaintiffs argue that the verdict forms were erroneous because the forms did not "inform the jury that Philips ha[d] the burden" of establishing the statute of limitations defense and the forms contained "an error regarding the steps to be taken by the jury after answering the statute of limitations question." [R. 707-1 at 12-13.]

First, the Plaintiffs argue that the verdict forms were erroneous because the forms asked whether the jurors "believe by a preponderance of the evidence" that each plaintiff "knew or should have known" about possible lead contamination within the statute of limitations period. [*See* R. 696 at 1.] The Plaintiffs argue that this fails to place the burden on Philips of proving the statute of limitations defense. [R. 707-1 at 12.] As an initial matter, the question parallels the Plaintiffs' proposed verdict forms. [*See, e.g.*, R. 604 at 25; R. 605 at 25.] Nevertheless, the Plaintiffs fail to show error.

For the statute of limitations defense to apply, a defendant must show by a preponderance of the evidence that the statute of limitations has run. *See Smith v. J.J.B. Hilliard, W.L. Lyons, LLC*, 578 Fed. App'x 556, 563 (6th Cir. 2014). Here, because the verdict forms required the jury to find that each plaintiff knew or should have known about their claim by a preponderance of the evidence, the forms still required Philips to convince the jury by a preponderance of the

6

evidence. *Cf. Vincent v. Warren Cnty.*, 629 Fed. App'x 735, 740 (6th Cir. 2015) (holding that a juror form asking whether the jurors believed that the defendant failed to exercise due care and the failure caused harm was erroneous as a compound question). The Plaintiffs do not explain how they suspect verdict forms changed the burden of proof. Moreover, the jury instructions confirmed that Philips held the burden, stating that "Philips must prove by a preponderance of the evidence that each Plaintiff did not file his or her claims within the applicable statute of limitations period." [R. 695 at 14.] The Plaintiffs thus fail to show that the verdict forms erroneously relieved Philips of its evidentiary burden.

Second, the Plaintiffs contend that the verdict forms—in effect—directed the jury to find Philips not liable for trespass and nuisance. [R. 707-1 at 13.] The Plaintiffs argue that the forms demand a verdict for Philips because the jury instructions informed the jury that the statute of limitations bars the Plaintiffs' claims and the verdict form directs the jury to continue to answer nuisance and liability questions if they find that the Plaintiffs knew or should have known about contamination before November 27, 2008. *Id.* So, the Plaintiffs argue that the jury felt compelled to answer the nuisance and trespass questions in favor of Philips once the jury knew that the claims would ultimately be barred by the statute of limitations. *Id.* But the forms ask each juror to determine whether Philips' *actions* constituted a nuisance and whether Philips *trespassed*. [*See, e.g.*, R. 696 at 1-2.] The answers to these questions do not depend on whether the jury believes Philips is ultimately liable. Indeed, Philips' actions could constitute a nuisance even if the Plaintiffs should have known about their claims before 2008. Further, no facts suggest that the forms confused the jury. Accordingly, the Plaintiffs fail to show error in the verdict forms.

## C

Next, the Plaintiffs request a new trial because "the jury failed in its duty to deliberate." [R. 701-1 at 14.] They argue that the jury failed to deliberate because the jury deliberated for a short time and some jurors slept during parts of the trial. *Id.*

First, the Plaintiffs argue that "it is clearly impossible to conclude that the jurors" adequately processed the trial and selected a fair verdict after deliberating for about an hour and a half. *Id.* at 14-15. Indeed, jurors have a duty to deliberate. *See, e.g.*, *Queen v. Logan*, No. C-1-05-529, 2007 U.S. Dist. LEXIS 108597, at *9 (S.D. Ohio Oct. 31, 2007). But a jury has no obligation to deliberate for a minimum period of time. *See id.* The Plaintiffs cite no authority indicating otherwise. In fact, the Plaintiffs identify no case where a court concluded that the jury "did not have enough time to adequately consider the evidence" and ordered a new trial, as the Plaintiffs here argue. [R. 707-1 at 15.] On the other hand, the case presented questions common to each plaintiff like whether Philips used their facility reasonably or exercise ordinary prudence. [R. 718 at 16.] As Philips argues, the jury may have found that the "case was not a close call," making a quick verdict unsurprising. *Id.* at 16. Consequently, the Plaintiffs fail to show that the jury did not deliberate by returning a verdict after an hour and a half.

Second, the Plaintiffs request a new trial because some jurors slept during parts of the trial. Specifically, the Plaintiffs submit two affidavits stating that five jurors slept "at different intervals for more than fifteen minutes at a time," a sixth juror "fell asleep but less often," and a seventh juror was "sleeping frequently." [R. 707-2; R. 707-3.] However, the Plaintiffs did not object during trial that jurors were sleeping. Because they raise this argument for the first time in their motion for a new trial, it is waived. *See Blackmon v. Eaton Corp.*, No. 16-5266, 2017 U.S. App. LEXIS 20643, at *15 (6th Cir. Oct. 18, 2017) (citing *Blue v. Coca-Cola Enters., Inc.*, 43

Fed. App'x 813, 816 (6th Cir. 2002) ("The failure to object to the alleged [juror] misconduct waives the argument on review.")).

### D

The Plaintiffs also allege that they are entitled to a new trial because Philips excluded African American potential jurors from the final jury. [R. 701-1 at 16.] Certainly, the Constitution forbids striking prospective jurors for a discriminatory purpose. *See Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016). The party asserting a violation must make a prima facie showing that a peremptory challenge is based on race. *See Hines v. City of Columbus*, 676 Fed. App'x 546, 550 (6th Cir. 2017). Yet the Plaintiffs' allegation is untimely. And even if timely, the Plaintiffs fail to show that Philips struck a potential juror based on their race.

A party cannot object to an alleged discriminatory peremptory challenge if the objection is untimely. *See, e.g.*, *United States v. Reid*, 764 F.3d 528, 533 (6th Cir. 2014). Such an objection is untimely if made after the jury is sworn and trial commences. *See id.* ("[A] *Batson* challenge must be raised contemporaneously with the voir dire process or prior to the time that the venire is dismissed."); *United States v. Tomlinson*, 764 F.3d 535, 537 (6th Cir. 2014). Here, the Plaintiffs failed to raise an objection before trial. In fact, when asked whether the Plaintiffs had "any objection to impaneling the jury as called," the Plaintiffs' counsel answered that he had "none whatsoever." [R. 714 at 160.] The Plaintiffs thus cannot challenge Philips's peremptory challenges. *Reid*, 764 F.3d at 533.

Even if timely, the Plaintiffs fail to show that Philips used any peremptory challenges based on race. To make a prima facie case of discrimination in jury selection, the Plaintiffs must show that the "relevance circumstances raise an inference that the opposing party used peremptory challenges to exclude" the potential juror on account of the potential juror's race.

9

*Carter v. Carlton*, Nos. 91-5809/5810, 1992 U.S. App. LEXIS 3345, at *3 (6th Cir. Feb. 19, 1992). Here, the Plaintiffs allege that two African American jurors remained in the jury pool after good-cause exclusions. [R. 707-1 at 18.] Then, Philips exercised peremptory challenges and the Court randomly selected ten jurors. *Id.*; [R. 718 at 3.] The final jury included no African American jurors.

The Plaintiffs argue that this shows that Philips used its peremptory challenges to strike African American jurors. [R. 707-1 at 18.] But the Plaintiffs fail to even show that Philips used its peremptory challenges on those jurors. Indeed, the jurors simply may not have been selected by the Court's random draw. And if Philips did use its challenges on these jurors, the Plaintiffs provide no facts to suggest that race motivated the challenges. Accepting the Plaintiffs argument would be to find prima facie discriminatory challenges virtually any time a final jury does not contain jurors of a plaintiff's race.

### III

The Plaintiffs argue that the jury's statute of limitations finding is against the weight of the evidence, the verdict form contained errors, the jury failed to deliberate, and Philips used discriminatory preemptory challenges. [R. 707-1.] The Court finds no error. Therefore, the Court also does not find that multiple errors combined to produce a "fundamentally unfair" trial setting. *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir. 1988); [*see* R. 707-1 at 18.] Accordingly, and the Court being sufficiently advised, the Plaintiffs' Motion for New Trial [**R. 707**] is hereby **DENIED**.

This the 2d day of June, 2023.

                                              Gregory F. Van Tatenhove
                                              United States District Judge